**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CORE WIRELESS LICENSING S.A.R.L,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO.  6:12-CV-100** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **APPLE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |


**CORE WIRELESS LICENSING'S OPPOSITION TO APPLE'S**

**MOTION TO TRANSFER**

# TABLE OF CONTENTS

PAGE NO.

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND .............................................................................................1

    A.   Dallas, Texas and the Plano Region...................................................................1

    B.   Core Wireless' Plano Presence ..........................................................................2

    C.   Location of Relevant Documents and Witnesses ................................................3

III. LEGAL ARGUMENT.........................................................................................................5

    A.   Legal Standard ....................................................................................................5

    B.   Based on its Admissions, Apple Cannot Meet its Burden ..................................6

    C.   Core Wireless' Presence in this District is Substantial and
        Ongoing................................................................................................................7

    D.   The Northern District of California Is Not "Clearly More
        Convenient" than the Eastern District of Texas..................................................9

        1.   Private Interest Factors Do Not Support Transfer ...................................9

        2.   Public Interest Factors Do Not Support Transfer ..................................14

IV. CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

PAGE NO.

## CASES

*Aloft Media, LLC v. Yahoo!, Inc.,*
   No. 6:08-CV-509, 2009 U.S. Dist. LEXIS 48716 (E.D. Tex. June
   10, 2009) .................................................................................................. 6

*Bank of Am., N.A. v. Malibu Canyon Investors, LLC,*
   No. 2:10-cv-00396, 2012 U.S. Dist. LEXIS 4627 (D. Nev. Jan. 12,
   2012) ....................................................................................................... 6

*Eolas Tech. Inc. v. Adobe Systems, Inc., et al.,*
   2010 U.S. Dist. LEXIS 104125, Case No. 9-cv-44, (E.D. Tex. Sept.
   28, 2010) (Davis, J.)................................................................... 7, 8, 14

*In re Apple Inc.,*
   456 Fed. Appx. 907 (Fed. Cir. 2012) ................................................... 8

*In re Genentech,*
   566 F.3d 1338 (Fed. Cir. 2010)........................................................... 13

*In re Hoffman-La Roche Inc.,*
   587 F.3d 1333 (Fed. Cir. 2009)........................................................... 10

*In re Volkswagen of Am., Inc. (Volkswagen II),*
   545 F.3d 304 (5th Cir. 2008) (en banc) .......................................... 5, 6

*Internet Machs. LLC v. Alienware Corp.,*
   No. 6:10-cv-023, 2011 U.S. Dist. LEXIS 66207 (E.D. Tex. June 7,
   2011) ..................................................................................................... 11

*Lonestar Inventions, L.P. v. Sony Elecs. Inc.,*
   No. 6:10-CV-588, 2011 U.S. Dist. LEXIS 96828 (E.D. Tex. Aug.
   29, 2011) ..................................................................................... 9, 11, 14

*Norman IP Holdings, LLC v. Casio Computer Co.,*
   NO. 6:09-cv-270, 2010 U.S. Dist. LEXIS 114408 (E.D. Tex. Oct.
   27, 2010) ............................................................................................... 11

*Novelpoint Learning v. Leapfrog Enter.,*
   No 6:10-cv-229, 2010 U.S. Dist. LEXIS 128906 (E.D.Tex Dec. 6,
   2010) ............................................................................................. passim

*RMail Ltd. et al., v. DocuSign, Inc.,*
    No. 11-cv-299-JRG, 2012 U.S. Dist. LEXIS 57559 (E.D. Tex. April
    24, 2012) ...................................................................................................... 8, 13

*Robocast, Inc. v. Apple, Inc.,*
    No. 11-235-RGA, 2012 U.S. Dist. LEXIS 24879 (D. Del. Feb. 24,
    2012) ......................................................................................................... 13, 15

*Symbol Techs. v. Metrologic Instruments, Inc.,*
    450 F. Supp. 2d 676 (E.D. Tex. 2006) (Davis, J.) ......................................... 12

*Wi-Lan Inc. v. Alcatel-Lucent U.S.A. Inc.,*
    No. 6:10-CV-521, 2011 U.S. Dist. LEXIS 141041 (E.D. Tex. Sept.
    30, 2011) ...................................................................................................... 9, 13

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000)......................................................................... 13

## **STATUTES**

28 U.S.C. § 1404(a) ................................................................................................. 5

## I.      INTRODUCTION

Defendant Apple Inc. ("Apple") has failed to meet its burden to show that the Northern District of California is a "clearly more convenient" venue than the Eastern District of Texas:

- Apple fails to identify a single witness or any technical documents located in California. Instead, Apple's motion is based entirely on general, unsubstantiated statements about its California presence that do not meet Apple's burden.

- Apple's position is also contradicted by allegations in its Answer – it repeatedly alleged that it lacked information or knowledge about the function of the accused products.  Now, it claims third-party chip vendors are the correct sources of such information.  Publicly available information suggests that vendor documents and witnesses alleged to be relevant by Apple are more likely to be located in Germany than in California.

- Core Wireless and its parent MOSAID conduct substantial business in Plano, Texas, where they employ 14 full-time individuals and occupy almost 5,000 square feet of office space.  Indeed, MOSAID had employees, a facility, and was doing business in the Eastern District of Texas *before* it even contemplated the acquisition of the asserted patents, and Core Wireless' business ties to the Eastern District pre-date and encompass more than this litigation.

- Core Wireless and MOSAID employees in Texas are responsible for patent prosecution, engineering analysis, litigation management, patent acquisition support and patent assertion management for the Core Wireless portfolio, as well as other patent portfolios.

- Numerous relevant Core Wireless documents, including file histories, invention related documents, and disclosure related documents are located and used daily in the Eastern District of Texas in Core Wireless's facility in Plano.

Thus, the Eastern District of Texas is the proper venue for this dispute.  The Court should deny Apple's motion to transfer.

## II.      FACTUAL BACKGROUND

### A.      Dallas, Texas and the Plano Region

There is no shortage of reasons for a business to open its doors in Texas.  In the last five years, CNBC has consistently ranked Texas as one of the top states in America for business. (Declaration of Robin K. Curtis ("Curtis Decl.") ¶ 2)  Over the last few years the Texas economy has grown substantially; in 2011, it was noted that if Texas were a nation, "it would be the world's eleventh-largest economy." (*Id.* ¶ 3)  Within the state, the Northern Dallas region has

long been recognized as a technological mecca, offering employers a rich talent pool of highly

qualified, tech-savvy individuals. (*Id.*) For example, the Telecom Corridor, centered in

Richardson, Texas, and lying in both the Eastern and Northern Districts of Texas, is home to a

large number of telecommunications companies, including MetroPCS, Verizon Wireless, Fujitsu,

AT&T, Ericsson and Samsung, that recognize the importance of this talent base. (*Id.* ¶¶ 4-7)

AT&T, Ericsson and Samsung's offices also span into the neighboring city of Plano, Texas, (*Id.*

¶ 7) a city recently named by Forbes as the safest city in America. (*Id.* ¶8) The economic growth,

unique talent pool, quality of life, and favorable corporate tax rates, continue to drive businesses

to the Eastern District of Texas. (*Id.* ¶¶ 9-10)  It is a highly desirable place to work and live.

### B.     Core Wireless' Plano Presence

Core Wireless Licensing S.a.r.l.'s ("Core Wireless S.a.r.l") parent company, MOSAID

Technologies Inc. ("MOSAID Tech."), is a Canadian corporation headquartered in Ontario,

Canada.  (Declaration of Jiri Smetana ("Smetana Decl.") ¶ 2)  In 2009, MOSAID hired its first

Texas based employee. (*Id.* ¶ 13) In February 2011, it formed a wholly owned subsidiary,

MOSAID Corporation Ltd. ("MOSAID TX"), in Plano, Texas, to further take advantage of the

technical talent in the region. (*Id.* ¶ 3) Since opening its office, MOSAID has invested well over

$300,000 to build out its office space, which covers almost 5,000 square feet. (*Id.* ¶ 12) The

Plano facility currently employs individuals responsible for patent prosecution, engineering

analysis, licensing support, litigation management, patent acquisition support, and patent

assertion management. (*Id.* ¶ 7)  All of these activities are within MOSAID's normal course of

business. (*Id.*)

In March 2011, *after* MOSAID had established its Texas subsidiary, MOSAID Tech. was

initially contacted by and began negotiations with Nokia for the acquisition of a patent portfolio.

(*Id.* ¶ 5) On September 1, 2011, Nokia transferred a number of patents to MOSAID Tech. via its

new subsidiary, Core Wireless S.a.r.l. (*Id. ¶ 6*) When considering where to base its U.S.

operations, logically, Core Wireless S.a.r.l. decided to utilize the large MOSAID TX office space

in Plano, Texas. (*Id. ¶*15)  On September 13, 2011, Core Wireless Licensing Ltd. ("Core

Wireless TX") became a wholly owned subsidiary of Core Wireless S.a.r.l., and was organized

under the laws of the State of Texas. (*Id.*) Its principal place of business is at 5700 Granite

Parkway, Suite 960, Plano, TX 75024, which is located within the Eastern District of Texas. (*Id.*

*¶ 4*).

 With one Luxembourg employee, Core Wireless S.a.r.l.'s business operations are carried

out primarily by its affiliates in Plano, Texas. (*Id. ¶ 6*)  Currently, Core Wireless TX has six full-

time employees in Plano consisting of three patent administrators and three registered patent

attorneys, and it works closely with MOSAID TX, which employs eight full-time individuals in

Plano.[1] (*Id. ¶¶ 7-8*)  All of these employees live in the surrounding region. (*Id.*) They are

responsible for patent prosecution, engineering analysis, and due diligence activities related to

the patents-in-suit and the Core Wireless portfolio generally.  (*Id.*)  All of these activities are

within Core Wireless TX's normal course of business. (*Id. ¶ 8*) Further, Core Wireless TX has a

director who lives full time in Dallas, Texas, close to the Plano office, and it maintains bank

accounts and other corporate records in the Eastern District of Texas.  (*Id*. ¶¶ 17-18)

### C. Location of Relevant Documents and Witnesses

 Core Wireless S.a.r.l. keeps the documents related to this litigation and the patent

portfolio in the possession of its U.S. subsidiary Core Wireless TX in Plano, Texas.  (*Id. ¶*16)

Those documents include over 50 gigabytes of documents (corresponding to at least tens of

---

[1] While Core Wireless employees do not work on other MOSAID matters, certain MOSAID TX individuals in Plano assist in managing the Core Wireless patent portfolio.  (Smetana Decl. ¶ 9-10) Accordingly, their Texas presence is relevant.

thousands of pages) related to the Core Wireless patent portfolio  (*Id.*) Witnesses who may testify on behalf of Core Wireless also reside in the Plano and Dallas areas. (*Id.* ¶¶ 7-8,10-11)

In contrast, Apple has failed to identify a single witness or even a category of witnesses with relevant information located in the Northern District of California.  This is consistent with the position Apple takes in its Answer.  Apple was unable to answer *even one* of the more than fifteen hundred explicit allegations in the complaint relating to the design, operation and functioning of the accused products.  Apple repeatedly stated that it "lacks knowledge or information" about each of the allegations.  Thus, according to the Answer, Apple apparently does not know where relevant documents or witnesses reside.

Instead, Apple alleges its baseband processor chip suppliers, Intel and Qualcomm, have the relevant information. Most of the Accused Products, including the iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPad, and iPad 2 (AT&T version), incorporate a baseband processor developed by Infineon Technologies AG, a Neubiberg, Germany company that was acquired by Intel in January 2011. (Curtis Decl. ¶¶ 11-14, 16-17, 19-20) The new company, Intel Mobile Communications (IMC) GmbH, became a German subsidiary of Intel, but continues to operate as a standalone business entity. (*Id.* ¶ 21) IMC GmbH is registered to do business at Am Campeon 10-12, 85579 Neubiberg Germany - the same address where Infineon AG operated. (*Id.* ¶ 22-23) IMC GmbH continues to employ 1,200 people at its Neubiberg headquarters.  (*Id.* ¶ 24)  The only IMC GmbH office in the United States appears to be a remote center in Allentown, Pennsylvania.  (*Id.* ¶ 25)  Research and development documents, design related documents and witnesses with information relevant to the Infineon baseband processors incorporated into Apple's Accused Products most likely reside in Germany, at IMC GmbH's headquarters, or other remote locations around the globe, not at Intel's headquarters in Santa Clara.

After Intel acquired Infineon, it appears Apple began using Qualcomm baseband processors with CDMA capability in the iPhone 4S, iPad 2 (Verizon edition) and new iPad. (*Id.* ¶¶ 13, 18) Apple does not provide any evidence about where relevant Qualcomm design related documents or witnesses reside. Although Qualcomm is headquartered in San Diego, California, it conducts its research, development and design work around the globe.  Its Raleigh North Carolina facility's "focus is on processor architecture," and its Nuremburg, Germany facility focuses on research related to developing systems for "further evolution of 3GPP LTE/EPS standards." (*Id.* ¶¶ 27-28) The United Kingdom facility, "Qualcomm U.K. Ltd. in Farnborough, plays a pivotal role as an engineering design center for Qualcomm's CDMA Technologies (QCT) division." (*Id.* ¶ 26) There, Qualcomm employs individuals whose tasks require they "become conversant with the 3GPP technical specifications to which Qualcomm's products conform." (*Id.* ¶ 29)  Qualcomm has "the largest CDMA engineering team in the wireless industry." (*Id.* ¶ 30) Accordingly, Qualcomm's research, development and design related documents and witnesses are likely to be located throughout the world, not primarily in the state of California.

## III.    LEGAL ARGUMENT

### A.    Legal Standard

The transfer analysis is two-fold.  The defendant first must establish that the matter "might have been brought" in the district to which transfer is sought.  28 U.S.C. § 1404(a).  If the first prong is satisfied the district court may balance a number of private and public interest factors to determine whether transfer is warranted.  *See In re Volkswagen of Am., Inc. (Volkswagen II),* 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Id.*  "Public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law."  *Id.*

Though a plaintiff's choice of forum is not weighed in the balancing test, it "places a significant burden on the movant to show good cause for the transfer."  *Id.* at 315 n.10.  If the moving party does not show that the transferee venue is "clearly more convenient," the "plaintiff's choice of venue must be respected."  *See, e.g., Aloft Media, LLC v. Yahoo!, Inc.,* No. 6:08-CV-509, 2009 U.S. Dist. LEXIS 48716, *4-5 (E.D. Tex. June 10, 2009).

### B.   Based on its Admissions, Apple Cannot Meet its Burden

Apple's pro forma motion to transfer gives little more than a hand wave to the important facts.  Its generalized statements and half-truths are insufficient to satisfy its significant burden of proving that the Northern District of California is "clearly more convenient" than this district. Apple does not identify *a single* potential witness with knowledge.  Though it attempts to impress the Court with the "12,200 people at its facilities" near the district (perhaps including retail employees at its more than 15 stores in the Northern California region), none of these employees apparently have knowledge relevant to this case.  Apple has admitted that it "lacks knowledge or information sufficient" to answer *any* of the more than fifteen hundred technical allegations set forth in Core Wireless' Second Amended Complaint.  *See* Answer.  The Court must assume that Apple made a reasonable inquiry before filing its Answer.[2]  Because Apple

---

[2] *See, e.g., Bank of Am., N.A. v. Malibu Canyon Investors, LLC,* No. 2:10-cv-00396, 2012 U.S. Dist. LEXIS 4627, *7 (D. Nev. Jan. 12, 2012) ("Rule 11 unquestionably requires a party and a lawyer to make a reasonable inquiry before denying factual contentions on an asserted belief or lack of information").

"lacks knowledge or information" about the functionality of its products, it cannot now claim that its witnesses with knowledge or documents with information are in California.

Apparently Apple could not answer the allegations in the Complaint because it believes its baseband chip suppliers, Intel and Qualcomm, have the relevant sources of proof.  Because these "suppliers are headquartered in California," Apple summarily concludes that this supports transfer.  Yet, Apple makes *no mention* of whether relevant witnesses or documents might actually be found in California, let alone the Northern District.  Apple also makes no mention of where relevant *design and manufacturing* work for these companies takes place.  With its casual arguments and unsupported conclusions Apple fails to meet its substantial burden that the Northern District of California is clearly more convenient.

### C.    Core Wireless' Presence in this District is Substantial and Ongoing

In its motion Apple contends that Core Wireless' presence in this district is too recent to be given any weight and hypothesizes that its decision to establish a presence in Texas was "manifestly designed to create a 'hook' for asserting claims in the Eastern District of Texas," rather than for a legitimate business purpose. Mot. at 7.  That is simply not true. Core Wireless established its facility in Plano because of the availability of highly trained experts in telecommunications technology and patent law, and because its sister corporation, MOSAID TX, had an existing United States facility in Plano – a facility that was established *before* the Core Wireless portfolio acquisition was *even contemplated*.  (Smetana Decl. ¶¶ 3, 5)

There is no "time-based litmus test for how long a plaintiff must reside in this District before bringing suit here."  *Eolas Tech. Inc. v. Adobe Systems, Inc., et al.,* 2010 U.S. Dist. LEXIS 104125, *21-22, Case No. 9-cv-44, (E.D. Tex. Sept. 28, 2010) (Davis, J.) (mandamus denied at Fed. Appx. 295, 297 (Fed. Cir. 2011)).  Core Wireless incorporated in this District nearly half a year before this case was filed, and its sister entity began conducting business

unrelated to the Core Wireless patents more than six months before that.  This Court has justifiably declined to discount a plaintiff's presence in this district even where the time between incorporation and filing was considerably shorter than the timeframe here.  *See, e.g., In re Apple Inc.,* 456 Fed. Appx. 907, 909 (Fed. Cir. 2012) (District Court did not err in refusing to discount plaintiff's recent incorporation one month before filing suit) (unpublished); *see also RMail Ltd. et al., v. DocuSign, Inc.,* No. 11-cv-299-JRG, 2012 U.S. Dist. LEXIS 57559, *6 (E.D. Tex. April 24, 2012) (local entity established four months prior to initiation of litigation not established for venue purposes).

More important, where, as here, an entity has "(1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum," the entity is not "ephemeral" and its presence should not be discounted. *See Novelpoint Learning v. Leapfrog Enter.,* No 6:10-cv-229, 2010 U.S. Dist. LEXIS 128906, at *13 (E.D.Tex Dec. 6, 2010).  Since its incorporation, Core Wireless TX has hired six full-time employees and it continues to grow.  These employees are responsible for conducting engineering analysis, prosecuting U.S. and foreign patents, and maintaining the newly acquired portfolio.  MOSAID TX employees in Plano, Texas also assist in licensing support, patent prosecution and litigation management for the Core Wireless portfolio.  Because Core Wireless TX is a legitimate company operating in Plano, Texas, the Court should "not ignore [Core Wireless'] location simply because it is unfavorable to [Apple's] transfer argument." *Eolas,* 2010 U.S. Dist. LEXIS 104125, at *22.

**D.     The Northern District of California Is Not "Clearly More Convenient" than the Eastern District of Texas**

On balance, the private and public interest factors do not favor transfer in this case. Because Apple has failed to meet its burden that transfer would be "clearly more convenient" its motion should be denied.

**1.     Private Interest Factors Do Not Support Transfer**

**a.     Access to Known Sources of Proof Weighs Against Transfer**

The first private interest factor "will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Wi-Lan Inc. v. Alcatel-Lucent U.S.A. Inc.*, No. 6:10-CV-521, 2011 U.S. Dist. LEXIS 141041, *12 (E.D. Tex. Sept. 30, 2011) (citations omitted).  Where, as here, the accused infringer claims no knowledge of infringing activity, fails to identify any evidence concerning the location of documents and witnesses, and relies only on general speculation about the location of third-party documents, this factor weighs against transfer.  *Lonestar Inventions, L.P. v. Sony Elecs. Inc.*, No. 6:10-CV-588, 2011 U.S. Dist. LEXIS 96828, *6-8 (E.D. Tex. Aug. 29, 2011).

As discussed above, Core Wireless S.a.r.l. has a substantial number of relevant documents in the Eastern District of Texas in the possession of its U.S. subsidiary Core Wireless TX, and Apple has failed to demonstrate that it possesses a greater volume of documents that would be more easily accessed from the Northern District of California. In its motion, Apple makes the perfunctory allegation that there are documents relevant to the accused products at its facilities in Cupertino, California.  Mot. at 4.  But, again, this assertion is undercut by Apple's Answer, wherein it admits that it "lacks knowledge or information sufficient" to admit or deny *any* technical allegations related to the accused devices.  In light of Apple's admissions, the

Court cannot assume that documents relevant to infringement are in Apple's possession at all, let alone in the Northern District of California.

Instead, Apple argues in its motion that the baseband processor chips of the accused products "contain functionality apparently accused by Core Wireless."  Mot. at 8.  Apple states that these chips are supplied by Intel and Qualcomm, two companies headquartered in California.  But Apple provides no evidence that the documents related to these chips, particularly the *design* of these chips, are actually located in California.  Its assertions should be entitled to no weight for that reason alone.  Both Intel and Qualcomm are global companies with facilities for research, development, and manufacturing all over the world, not just in California.  There is no reason to believe that all, or even some, of the documents Apple believes will be relevant to the infringement analysis are actually located anywhere in California, let alone the Northern District of California, and publicly available evidence suggests otherwise.

The Infineon baseband processors in the iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPad and iPad 2 were most likely designed in Germany, and design documents likely reside in the IMC GmbH headquarters at Neubiberg, Germany.  Documents relevant to the Qualcomm processors could be located throughout the world, in North Carolina, the U.K. or Germany, for example.  On the other hand, inventor and patent related documents, including evidence of conception and reduction to practice, prosecution of the patents, and disclosures made to the U.S. Patent and Trademark Office are located at Core Wireless TX's office, which is located within this district.[3]  "In sum, given that [Apple] bears the burden of proof, the substantial uncertainty

---

[3] Unlike *In re Hoffman-La Roche Inc.,* 587 F.3d 1333, 1336-38 (Fed. Cir. 2009), (cited by Apple in its brief), these documents are not present in this district simply for litigation purposes or to manipulate venue and should not be discounted.  *See Novelpoint Learning,* 2010 U.S. Dist. LEXIS 128906, at *16 (distinguishing *In re Hoffman-La Roche* and holding that documents

(Continued...)

regarding the current location of sources of proof and [Apple's] failure to dispel that uncertainty weighs against transfer to the Northern District of California." *Lonestar,* 2011 U.S. Dist. LEXIS 96828, *8.

### b.    The Location of Witnesses Does Not Favor Transfer

Apple fails to identify a single Apple or third-party witness with potentially relevant information.  On this basis alone, the second and third private interest factors weigh against transfer.  *See, e.g., Internet Machs. LLC v. Alienware Corp.,* No. 6:10-cv-023, 2011 U.S. Dist. LEXIS 66207, *22 (E.D. Tex. June 7, 2011) (Defendants who did not provide the specific names and locations of witnesses, but simply referred to names of companies and their headquarters made an "inadequate [showing] because they [did] not specifically identify the witnesses or state where those witnesses [were] located."); *Novelpoint Learning*, 2010 U.S. Dist. LEXIS 128906 at *6; *Norman IP Holdings, LLC v. Casio Computer Co.,* NO. 6:09-cv-270, 2010 U.S. Dist. LEXIS 114408, *15 (E.D. Tex. Oct. 27, 2010).

### (1)    Availability of Compulsory Process Does Not Favor Transfer

Without identifying a single individual, Apple generally argues that availability of compulsory process favors transfer because Nokia has a regional office in California and its chip suppliers, Intel and Qualcomm, are headquartered in California.  Mot. at 11.  Such "general statements about the location of personnel or employees are inadequate." *Norman IP Holdings,*

---

(...Continued)

located in the transferor venue to aid in the normal business functions of a bona fide citizen of the transferor district are entitled to weight in determining venue, regardless of whether some of the documents originated elsewhere).  Core Wireless has only one corporate office in the United States – in Plano, Texas.  Relevant documents are located in this District for legitimate ongoing business purposes to allow Core Wireless TX to maintain the patent portfolio.

2010 U.S. Dist. LEXIS 114408, at *15.  Here, no identified third-party witnesses reside in the Northern District of California and none are subject to the court's absolute subpoena power.[4] Because "the Court will not base its conclusion on unidentified witnesses," *Novelpoint Learning,* 2010 U.S. Dist. LEXIS 128906, at *6, this factor does not favor transfer.  Nokia's regional office has nothing to do with this litigation, and Apple does not identify any likely witnesses who reside in that office.  Further, from the information available in the public record, third party witnesses for Intel are more likely to reside in Germany or Pennsylvania than in California, and Apple provides no evidence that any relevant witnesses for Qualcomm are in California.

Additionally, it is likely that the only evidence needed from third-party manufacturers such as Intel (Infineon) and Qualcomm will be documentary evidence.  Core Wireless currently sees no need to subpoena Qualcomm or Intel witnesses for trial, and Apple likewise does not articulate any need.  If that need arises, however, and "[i]f this Court cannot compel a witness's attendance at trial, neither party is prevented from using the witness's video-taped deposition at trial."  *Symbol Techs. v. Metrologic Instruments, Inc.,* 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006) (Davis, J.).  Accordingly, this factor does not favor transfer.

### (2) Cost of Attendance for Willing Witnesses Weighs Against Transfer

Core Wireless TX has six employees, and its sister company MOSAID TX has eight employees in Plano, Texas, including the person who manages the Core Wireless litigation (Jiri Smetana) and the person who manages the Core Wireless patent portfolio (Abdul Zindani).  One or more of the fourteen Plano employees may be needed to testify as a corporate representative

---

[4] Apple also does not state that Qualcomm or Intel witnesses would be unwilling to attend trial. If the parties have an indemnity agreement or other cooperation agreement, the Court's subpoena power over these witnesses is irrelevant.

of Core Wireless for deposition or trial.  Travel to Tyler would be significantly more convenient

for these witnesses than travel to California.  The original prosecuting attorneys for the patents

asserted in this case apparently reside on the east coast of the United States (Curtis Decl. ¶ 31)

and as Apple notes, the majority of the inventors seem to reside overseas.  Some of these

witnesses will have to travel great distances and incur costs regardless of whether they travel to

Texas or California, but travel to California is no more convenient.[5]  Further, when comparing

the resources of Apple, "a large and powerful corporation," to a small company such as Core

Wireless, Apple's financial strength and ability to litigate in any district "significantly disfavors

transfer."  *Robocast, Inc. v. Apple, Inc.,* No. 11-235-RGA, 2012 U.S. Dist. LEXIS 24879, *7 (D.

Del. Feb. 24, 2012).

> **c.     Trial in this District Would be Easier, More Expeditious and
>         Less Expensive**

Finally, the Court may consider "other practical problems that make trial of a case easy,

expeditious and inexpensive."  *Wi-Lan Inc.,* 2011 U.S. Dist. LEXIS 141041 at *10.  Apple

appears to be making the argument that filing an early transfer motion makes the California

forum more convenient.  Mot. at 11.  Yet, an early motion is no indication that trial in the

transferee forum would be easier, more expeditious or inexpensive, and nothing in Apple's cited

case supports this argument.  In this case, quite the opposite is true since the length of a patent

---

[5] Unlike the situation in *In re Genentech,* 566 F.3d 1338,1348 (Fed. Cir. 2010), where, no
witnesses, documents or parties resided in the district, here, witnesses and documents do reside
in this district, and convenience for all out-of-state witnesses should be considered.  *See, e.g.,*
*Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) ("With parties,
witnesses, and attorneys coming from such varied locations, several of which are closer to
Washington D.C. [the transferor venue] than California [the proposed venue], it could not easily
be said that it would be more convenient to try the case in the Central District of California.");
*RMail,* 2012 U.S. Dist. LEXIS 57559 *10-11 ("Many witnesses will travel from states such as
California, Illinois, and from the Eastern Seaboard. All are equally as convenient to Texas as
Washington or more convenient to Texas and this district.").

trial in this district will likely be shorter and less burdensome than in the Northern District of California. *Eolas*, 2010 U.S. Dist. LEXIS 104125 *27 ("trials in the Northern District of California are typically longer than trials in the Eastern District of Texas, increasing the expense for both parties and witnesses").  Accordingly, "[t]his factor does not favor transfer." *Id.*

        **2.**       **Public Interest Factors Do Not Support Transfer**

           **a.**       **The Northern District of California is More Congested; This Factor Does Not Favor Transfer**

The Eastern District of Texas remains a more efficient and less congested Court than the Northern District of California for the trial of patent cases.  Apple's argument that the time to trial is equal in the two districts is flawed because Apple is citing to the median time to trial for *all* types of cases, not just patent cases.  "[I]n patent cases, the average time to reach trial is significantly shorter in the Eastern District of Texas." *Lonestar,* 2011 U.S. Dist. LEXIS 96828 *18.  The average time to trial for patent cases in the Eastern District of Texas is about 25.7 months; in the Northern District of California it is about 33.5 months.  (Curtis Decl. ¶ 32)  Further, under the current schedule, Core Wireless will serve its infringement contentions on July 27, 2012, and an initial case management conference has been scheduled for August 6, 2012, indicating the Court's intention to move this case in a timely fashion.  Transferring this case to California would derail the progress of this case until the Northern District is able to schedule its own case management conference, which is unlikely to occur until well after August 6, 2012.  Because this Court will likely conduct a quicker, more efficient disposition of the case, this factor does not support transfer.

           **b.**       **Both Districts have Localized Interests; This Factor Does Not Support Transfer**

Core Wireless has had a substantial business presence in Plano, Texas and this district for more than nine months, and its parent company, MOSAID Tech., has maintained a U.S.

subsidiary here for more than a year.  Thus "the Eastern District of Texas has a local interest in the outcome of the case given that [Core Wireless'] connections to Texas are not "recent" and "ephemeral" under Federal Circuit precedent." *NovelPoint Learning,* 2010 U.S. Dist. LEXIS 128906 at *23-24

Apple argues that this case calls into question the work and reputation of individuals located in the Northern District of California.  Mot. at 12.  Yet, Apple suggests that the baseband chips are likely to be responsible for the infringing functionality and admits that its employees are not responsible for designing those chips.  Because the individuals responsible for designing the chips are not likely located in the Northern District of California, that district has no greater local interest in deciding this matter.  *NovelPoint Learning,* 2010 U.S. Dist. LEXIS 128906 at *23-24 (Where "the design of [defendant's] accused products occurred in Hong Kong and China[, w]ith respect to those accused products, California has no greater interest in the reputation of [those design] engineers than does the Eastern District of Texas.").  Although "Apple is a major employer in the Northern District of California," it does not make "the claim that Apple is infringing the patent … a local controversy." *Robocast,* 2012 U.S. Dist. LEXIS 24879, *12 ("'local controversy' is inapplicable here").  Accordingly, Apple has failed to meet its burden of proving that this factor favors transfer.[6]

IV.    **CONCLUSION**

Apple has failed to meet its burden to show that the Northern District of California is a "clearly more convenient" forum for this dispute.  Accordingly, and for the reasons set forth above, the Court should deny the motion to transfer.

---

[6] Both Districts have extensive experience with patent cases, and the avoidance of conflict of laws does not favor either district.  Accordingly, the remaining factors do not favor transfer.

Dated:  June 25, 2012                Respectfully Submitted,

By:     /s/ Craig Y. Allison                      
     Henry Bunsow – Lead Attorney
     California State Bar # 60707
     Denise M. De Mory
     California State Bar # 168076
     Brian A.E. Smith
     California State Bar # 188147
     Craig Y. Allison
     California State Bar # 161175
     BUNSOW, DE MORY, SMITH & ALLISON LLP
     55 Francisco Street, 6th Floor
     San Francisco, CA  94133
     Tel:  (415) 675-8889
     Facsimile:  (415) 675-8892
     Email:  hbunsow@bdiplaw.com
     Email: ddemory@bdiplaw.com
     Email:  bsmith@bdiplaw.com
     Email: callison@bdiplaw.com

     T. John Ward, Jr.
     Tex. Bar No. 00794818
     jw@wsfirm.com
     Wesley Hill
     Tex. Bar No. 24032294
     wh@wsfirm.com
     WARD & SMITH LAW FIRM
     111 W. Tyler Street
     Longview, Texas 75601
     (903) 757-6400 (telephone)
     (903) 757-2323 (facsimile)

     **ATTORNEYS FOR PLAINTIFF**
     **CORE WIRELESS LICENSING S.A.R.L.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail.

Dated:  June 25, 2012

*/s/ Craig Y. Allison*

Craig Y. Allison