IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CORE WIRELESS<br>LICENSING, S.A.R.L<br><br>*Plaintiff,*<br><br>V.<br><br>APPLE, INC.<br><br>*Defendant.* | § § § § § § § § § § § § § | <br><br><br><br>CIVIL ACTION NO. 6:12-CV-100<br>LED-JDL<br><br>JURY TRIAL DEMANDED |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Apple Inc.'s ("Apple") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404 (a) (Doc. No. 33) ("MOTION"). Plaintiff Core Wireless Licensing S.a.r.l ("Core Wireless") filed a response (Doc. No. 39) ("RESPONSE") to which Apple replied (Doc. No. 41) ("REPLY") and Core Wireless filed a Sur-Reply (Doc. No. 43) ("SUR-REPLY"). After considering the parties' arguments, the Court **DENIES** Apple's Motion to Transfer Venue.

Apple further requested an oral hearing on its Transfer Motion (Doc. No. 33). Because the Court has made a determination on the submissions, the Motion for Oral Hearing is **DENIED**.

### BACKGROUND

On February 29, 2012, Core Wireless filed the instant action against Apple, alleging infringement of the following U.S. Patents: United States Patent No. 6,792,277 ("the '277 Patent"), United States Patent No. 7,606,910 ("the '910 Patent"), United States Patent No. 6,697,347 ("the '347 Patent"), United States Patent No. 7,447,181 ("the '181 Patent"), United

States Patent No. 6,788,959 ("the '959 Patent"), United States Patent No. 7,529,271 ("the 271 Patent"), United States Patent No. 6,266,321 ("the '321 Patent"), and United States Patent No. 6,978,143 ("the '143 Patent").[1] COMPLAINT at 4–117. On June 6, 2012, Apple filed the instant motion requesting to transfer venue to the Northern District of California ("NDCA") (Doc. No. 33).

Core Wireless is a corporation duly organized and existing under the laws of the Grand Duchy of Luxembourg, with a principal place of business at 16, Avenue Pasteur L-2310 Luxembourg. *See* COMPLAINT at ¶ 1. Core Wireless is a wholly-owned subsidiary of MOSAID Tech, a Candian corporation. Ex. 1 to RESPONSE, DECLARATION OF JIRI SMETANA (Doc. No. 39-1) ("SMETANA DECL."), at ¶¶ 2,4. Core Wireless maintains a wholly-owned subsidiary, Core Wireless Licensing Ltd. ("Core Wireless USA"), a Texas corporation with a principal place of business at 5700 Granite Parkway, Suite 960, Plano, TX 75024. *Id.* at ¶ 4. Core Wireless USA became a subsidiary of Core Wireless in September 2011, when MOSAID Tech. acquired Core Wireless upon Nokia's transfer of over 2,000 U.S. Patents to Core Wireless. Ex. 1 to RESPONSE, DECLARATION OF JIRI SMETANA (Doc. No. 39-1) ("SMETANA DECL."), at ¶ 6. Core Wireless USA has 6 employees who live in or near Plano, TX, and its Director Jerry Mills lives full time in Dallas, TX. *Id.* at ¶¶ 8, 17. Core Wireless USA maintains records totaling 54.02 GB related to the patents-in-suit in Plano, TX. *Id.* at ¶ 16.

Apple is a California corporation with a principal place of business at 1 Infinite Loop, Cupertino, CA 95014. (Doc. No. 71) ("ANSWER"). The accused infringing products, the Apple

---

[1] Presently, Core Wireless alleges infringement of U.S. Patent Nos. 6,792,277 ("the '277 patent"); 6,697,347 ("the '347 patent"); 7,447,181 ("the '181 patent"); 7,529,271 ("the '271 patent"); 6,788,959 ("the '959 patent"); 6,266,321 ("the '321 patent"); 6,978,143 ("the '143 patent"); 7,804,850 ("the '850 patent"); 7,817,679 ("the '679 patent"); 7,415,045 ("the '045 patent"); 7,415,045 ("the '045 patent"); 7,383,022 ("the '022 patent"); 7,599,664 ("the '664 patent"); and 8,259,689 ("the '689 patent) (collectively the "patents-in-suit"). (Doc. No. 61) ("AMENDED COMPLAINT")

iPad, iPad2, new iPad, iPhone 3G, iPhone 3GS, iPhone 4, and iPhone 4S (collectively "Accused Products"), were designed and developed at Apple's facilities in Cupertino, CA. Ex. A to MOTION, DECLARATION OF MARK BUCKLEY (Doc. No. 33-2) ("BUCKLEY DECL."), at ¶ 4. Apple maintains business documents and records relating to research, design, development, marketing and product revenue in the Cupertino California area. *Id.* Apple's employees involved in the design and manufacture of the accused products reside in and around Cupertino, CA. *Id.* The accused products also contain "baseband processor chips" that are supplied by Qualcomm Incorporated, a company based in San Diego, CA, and Intel Corporation, a company based in Santa Clara, CA. BUCKLEY DECL. at ¶ 7.

The parties have not identified any specific third party witnesses, and the patents-in-suit list many named inventors, all of whom supposedly reside abroad. MOTION at 11.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en

banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.* The clearly more convenient standard "places a significant burden on [Defendants] to show good cause for transfer;" a burden that this Court does not take lightly. *Id.* at 314 n. 10; *Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012); *Texas Data Co., LLC v. Target Brands, Inc.,* 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Core

Wireless does not contest that Apple conducts business within the Northern District of California and transfer is permissible under § 1404. As to the convenience factors, the Court finds that Apple has not met its burden of establishing that the Northern District of California is "clearly more convenient."

I. **The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Apple must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–cv–113, 2009 WL 331889, at *3, (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Apple states that the alleged infringing products were designed and developed in Cupertino, CA and the employees responsible for that development are based in the Cupertino area. BUCKLEY DECL. at ¶ 4. As to its documents, Apple makes only the

following statement: "virtually all Apple business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused Products are located in or near Cupertino." *Id.* Moreover, Apple raises the importance of particular baseband processors used to enable cellular communications in the accused products that are developed by Intel and Qualcomm. BUCKLEY DECL. at ¶ 7. The relevant sources related to those baseband processors appear to be largely unknown and/or disputed by the parties. REPLY at 2. Apple states only that documents related to the financing and licensing of those processors could be relevant and would be located with Apple in the Cupertino area. Given Apple's vague assertions and seemingly unknown relevance and location of potential sources, the weighing of this factor would be merely speculative.[2] The Court declines to speculate as to the location of sources of proof.

*(b) The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

---

[2] The Court finds a comparative analysis as to the information Core Wireless has provided regarding the location of its relevant sources of proof would be purely speculative given the largely uncertain nature of relevant sources Apple has provided. Further, it is worth noting that while this Court has conducted extensive analysis on the recent and ephemeral nature of non-practicing entities filing suit in this District (*see, e.g., NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, No. 6:10–cv–229, 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010)), at least one court in the Third Circuit has declined to engage in that analysis. *See Cradle IP, LLC v. Texas Instruments Inc.*, No. 1:11-cv-1254, 2013 WL 548454, at *4 (D. Del. Feb. 13, 2013) ("[t]he court declines to treat such non-practicing entities as anything less than holders of constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office. Therefore, the fact that a plaintiff is characterized as a 'litigation vehicle' does not detract from the weight accorded a plaintiff's choice of forum.").

Apple fails to identify a single third party witness and states only that "relevant third party witnesses are located in California." MOTION at 10. Essentially, Apple does not identify any individuals who might have relevant information. *Id.* To the extent there are individuals who might be needed as unwilling third party witnesses, those individuals have not been named and their domiciles have not been established. On these vague grounds, the Court cannot weigh to what degree both the transferee district and this District would have subpoena power over necessary third party witnesses.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

Again, Apple has failed to identify any willing witnesses and states only that "Apple's likely witnesses are located in the Northern District of California." MOTION at 9, BUCKLEY DECL. at ¶ 4. Apple fails to identify employees with knowledge of the accused systems, the accused system's marketing, or the accused system's financial details.[3] Without naming any persons, their interest in the litigation, and where they reside, the Court can only speculate as to the difficulty and cost of travel. The Court cannot take Apple's generalizations to assume all willing witnesses would be in the Cupertino Area. As it stands, it has been presented that there

---

[3] Apple only states there are 12,200 employees who work and live near its headquarters in Cupertino, CA. BUCKLEY DECL. at ¶ 3.

may be witnesses related to Intel and Qualcomm, and their willingness and location is presently unknown to the Court. While the Court acknowledges that Apple's unknown witnesses who are claimed to be in the Cupertino area would have to travel to attend trial in this District, it cannot weigh this factor without identification of those individuals.

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a "paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen II*, 565 F.2d at 1351. Apple contends that judicial economy weighs in favor of transfer because the case is in the early stages of litigation and this Court has not yet ruled on any substantive matters. MOTION at 11. Put simply, however, the filing of a transfer motion at an early stage carries little weight if the motion wholly fails to satisfy the requisite burden. Accordingly, there are no practical problems that weigh for or against transfer.

**II. The Public Interest Factors**

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Core Wireless cites to a 2011 study stating that the median time to trial for civil cases in this District was 25.7 months and 33.5 months in the Northern District of California. RESPONSE at 14. Apple also cites to a 2011 study that stated the median time to trial in this District was 27.1 months and 25.4 months in the Northern District of California. Ex. H to WOLIN DECL. As the Court has repeatedly found in the past, the parties' reliance on general civil

statistics provides the Court with little guidance as to the speed with which patent cases reach trial. *See West Coast Trends, Inc.,* 2011 WL 5117850, at *4 ("[a]s is common with this factor, the parties cite to incongruous statistics which prevents the Court from drawing a meaningful conclusion as to court congestion."). Accordingly, due to its speculative nature, the Court finds this factor neutral.

*(b) The Local Interest in Having Localized Interests Decided at Home*

As stated above, although it may be unclear as to what extent, the development of Apple's accused products occurred in California and Apple's employees who were involved in the research and development of the accused products live and work in the Northern District of California. Accordingly, the Court finds that the Northern District of California has a local interest in the outcome of the litigation, and thus this factor weighs slightly in favor of transfer. *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012); *see In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.").

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

**CONCLUSION**

For the aforementioned reasons, the Court cannot find that the Northern District of California is a clearly more convenient forum. Because Apple has failed to identify any willing

witnesses who would need to travel, or any third party witnesses not subject to the compulsory process in this District, the convenience of witnesses could not be evaluated in the Court's analysis. Additionally, Apple could state only generalities as to relevant documents, and the importance and location of documents from Intel and Qualcomm remain unknown. The local interest of the Northern District of California is not enough to establish it is a clearly more convenient forum on its own. Ultimately, Apple has failed to meet its burden to establish that transfer is clearly more convenient. *In re Apple Inc.*, 456 Fed. Appx. 907, 909 (Fed. Cir. 2012) ("Although in Apple's papers much is made of SimpleAir's recent and ephemeral connections to the Eastern District of Texas—SimpleAir incorporated in Texas and established an office one month before filing this suit—the district court gave that consideration no weight in its analysis. What is more, measured against cases like *Volkswagen*, *TS Tech*, *Genentech,* and *Acer,* there is a plausible argument that Apple did not meet its burden of demonstrating below that the transferee venue is "clearly more convenient."). Accordingly, the Court **DENIES** Apple's Motion to Transfer.  In addition, Apple's Motion for Oral Hearing is **DENIED**.

   **So ORDERED and SIGNED this 22nd day of February, 2013.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE