**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CORE WIRELESS LICENSING S.A.R.L.,** | ) | **CIVIL ACTION NO.  6:12-CV-100** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **vs.** | ) | |
| | ) | |
| **APPLE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**CORE WIRELESS LICENSING S.A.R.L.'S OPPOSITION TO APPLE INC.'S**

**MOTION TO DISMISS OR STRIKE CORE WIRELESS'S**

**COUNTERCLAIMS**

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD............................................................................................2

III.  LEGAL ARGUMENT............................................................................................3

      A.    The Core Wireless Counterclaims Are Procedurally Proper ...................................3

            1.    Apple's Breach of Contract Cause of Action Is a
                  Permissive Counterclaim .................................................................4

            2.    The Core Wireless Counterclaims Are Properly
                  Asserted in Response to Apple's Breach of Contract
                  Counterclaim................................................................................5

            3.    In the Alternative, Core Wireless Requests Leave To
                  Amend its Complaint ......................................................................6

      B.    The Core Wireless Counterclaims Meet The Pleading
            Threshold ......................................................................................7

            1.    Core Wireless Properly States a Claim for Breach of
                  Contract........................................................................................7

            2.    Apple Is Incorrectly Asserting That Core Wireless
                  Has To Prove Infringement, Validity and
                  Enforceability for Each Patent in its Portfolio..........................................10

            3.    Apple Has Not Addressed All of Core Wireless's
                  Forms of Relief in its Motion.....................................................13

      C.    Core Wireless States A Claim For Unjust Enrichment.........................................13

IV.   CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
No. 11-1846 (N.D. Cal. Nov. 8, 2011) ........................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 2

*Ericsson Inc. v. D-Link Sys.*,
CASE NO. 6:10-CV-473, 2013 U.S. Dist. LEXIS 110585 (E.D. Tex.
Aug. 6, 2013) ...................................................................................... 1, 8, 10, 12

*Feed Mgmt. Sys. v. Brill*,
518 F. Supp. 2d 1094 (D. Minn. 2007) ....................................................................... 3, 5

*Gregson v. Zurich Am. Ins. Co.*,
322 F.3d 883 (5th Cir. 2003) ........................................................................................... 2

*Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*,
50 F.R.D. 415 (D. Del. 1970) .......................................................................................... 3

*Mayo v. Hartford Life Ins. Co.*,
354 F.3d 400, 403-405 (5th Cir. 2004) ......................................................................... 15

*Microsoft Corp. v. Motorola, Inc.*,
CASE NO. C10-1823 JLR, 2013 U.S. Dist. LEXIS 60233 (W.D.
Wash. Apr. 25, 2013) ..................................................................................................... 10

*Microsoft Corp. v. Motorola, Inc.*,
No. C10-1823 JLR, 2011 U.S. Dist. LEXIS 73827 (W.D. Wash.
May 31, 2011) ................................................................................................................... 5

*Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*,
436 Fed. Appx. 297 (5th Cir. 2011) ................................................................................ 4

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ........................................................................................... 3

*Southeastern Industrial Tire Co. v. Duraprene Corp.*,
70 F.R.D. 585 (E.D. Pa. 1976) ........................................................................................ 3

*T. J. Stevenson & Co. v. 81,193 Bags of Flour,*
    629 F.2d 338 (5th Cir. 1980) ...................................................................... 5, 6

*Taylor v. Cmty. Bankers Sec., LLC,*
    CIVIL ACTION H-12-02088, 2013 U.S. Dist. LEXIS 86485 (S.D.
    Tex. June 20, 2013)............................................................................................ 15

*Underwriters at Interest on Cover Note v. Nautronix, Ltd.,*
    79 F.3d 480 (5th Cir. 1996) ............................................................................. 7

*United States v. Coney,*
    689 F.3d 365 (5th Cir. 2012) ........................................................................... 6

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.,*
    342 F.3d 1298 (Fed. Cir. 2003).................................................................. 13, 14

*Wolcott v. Sebelius,*
    635 F.3d 757 (5th Cir. 2011) ........................................................................... 2

## **RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 2

Fed. R. Civ. P. 13(a) ............................................................................................... 4

Fed. R. Civ. P. 15(a)(2)........................................................................................... 8

I.     **INTRODUCTION**

The Core Wireless counterclaims are based on Apple's breach of its obligation to negotiate a FRAND royalty in good faith by refusing to negotiate with Core Wireless and by failing to respond to Core Wireless's offer to license its standard essential patents on fair, reasonable, and non-discriminatory (FRAND) terms.  *See Ericsson Inc. v. D-Link Sys.,* CASE NO. 6:10-CV-473, 2013 U.S. Dist. LEXIS 110585, at *87 (E.D. Tex. Aug. 6, 2013) (Davis, J.) ("RAND licensing also includes an obligation to negotiate in good faith. This obligation is a two-way street.").  The Core Wireless counterclaims are asserted in response to Apple's counterclaim of breach of contract which broadens the scope of this litigation to require adjudication of these licensing issues.

Core Wireless filed its most recent amended complaint on November 12, 2012 (Third Amended Complaint (Dkt. No. 61)).  The complaint alleges that various models of Apple iPhones and iPads practice the 3GPP telecommunications standards and therefore infringe Core Wireless's standard-essential patents.  More than seven months after the amended complaint was filed, and in the final three hours before the deadline to amend pleadings without leave of court, Apple amended its answer to assert a permissive counterclaim for breach of contract, alleging that Core Wireless breached its obligations to the 3GPP standards organization, ETSI, by purportedly failing to offer Apple a license to the asserted patents under FRAND terms.

Core Wireless will show that Apple's allegations are without merit, and that Core Wireless has repeatedly attempted, without success, to get Apple's agreement to a FRAND license. Nevertheless, Apple's counterclaim substantially expands the scope of the case and will require the Court to interpret ETSI licensing policies, consider the dealings of Core Wireless and Nokia (Core Wireless's predecessor in interest) with the ETSI and/or 3GPP standards setting bodies, and evaluate Core Wireless's licensing and enforcement practices.  In response to Apple's permissive counterclaim, Core Wireless timely brought counterclaims for breach of contract and unjust enrichment which are compulsory in nature because they arise out of the same transaction or occurrence as Apple's breach of contract counterclaim.

1

Apple's motion to dismiss should be denied.  The Core Wireless counterclaims are procedurally proper because compulsory counterclaims are allowed in response to a permissive counterclaim.  Otherwise, the operation of res judicata could leave Core Wireless without a remedy through no fault of its own.

In the alternative, if the Court wishes to avoid the procedural complexity of having more than one set of counterclaims, the Court should allow Core Wireless to amend its complaint to include the Core Wireless counterclaims.  The Core Wireless counterclaims were filed only eleven days after the date to file amended pleadings without leave of court and are a direct response to Apple's decision to expand the scope of the case.  Trial is scheduled for early 2015.  There would be no prejudice to Apple to allow Core Wireless to amend its complaint to include its counterclaims, and there would be manifest injustice to allow Apple to proceed on its breach of contract counterclaim but not allow Core Wireless to do likewise.  To the extent the Court wishes to resolve the issues in this manner, Core Wireless asks the Court to treat this brief as a motion for leave to amend the pleadings by adding the Core Wireless counterclaims.

## II.      LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Wolcott v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011). "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).  "[A] motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."

2

*Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citation and internal quotation marks omitted).

## III.   LEGAL ARGUMENT

### A.   The Core Wireless Counterclaims Are Procedurally Proper

"That a plaintiff may counterclaim in his reply is established both in the case law and the texts." *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,* 50 F.R.D. 415, 418 (D. Del. 1970).  Indeed, as Apple itself admits, "[a] counterclaim-in-reply is a permissible pleading when it is a compulsory reply to a permissive counterclaim." *Feed Mgmt. Sys. v. Brill,* 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007) (allowing counterclaim in reply); (Apple's Motion to Dismiss or Strike Plaintiff Core Wireless's Counterclaims in Reply (hereafter "Apple's Motion") (Dkt. No. 124) at 5).  Apple argues, without support, that its breach of contract claim is compulsory to Core Wireless's charge of patent infringement.  It is not.

By amending its answer to assert a permissive breach of contract counterclaim Apple opened the door to the adjudication of issues that were not put in dispute by Core Wireless's original complaint.  *See, e.g., Southeastern Industrial Tire Co. v. Duraprene Corp.,* 70 F.R.D. 585, 587-88 (E.D. Pa. 1976) ("By filing a permissive counterclaim defendant has voluntarily exposed itself to a counterclaim in reply and thus waived the protection that it might otherwise have been afforded by the Rule 15(a) limitations on the ability to amend.") (allowing leave to amend to assert counterclaim in-reply in original pleading).  The Core Wireless counterclaims arise out of the same transaction or occurrence as Apple's breach of contract counterclaim.  Thus, if Core Wireless were to bring these claims in a future action, Apple would certainly argue they were compulsory to this action and barred by res judicata.  *See* Fed. R. Civ. P. 13(a).  And, had Apple filed its breach of contract claim in a separate venue, Core Wireless would certainly have had the opportunity to file its counterclaims.  The different procedural posture of this case does not change the fact that Core Wireless must be given a full and fair opportunity to respond to Apple's breach of contract claim, including by asserting its own counterclaims that arise out of the same transaction or occurrence as Apple's claim for breach of contract.

### 1.       Apple's Breach of Contract Cause of Action Is a Permissive Counterclaim

In the Fifth Circuit, to determine if Apple's counterclaim is compulsory, the court is required to apply the "logical relationship" test.  "There is a logical relationship between a potential counterclaim and the principal claim when 'the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.,* 436 Fed. Appx. 297, 299 (5th Cir. 2011) (citation omitted) (finding claims not compulsory). Because Apple's breach of contract cause of action relies on different facts and legal rights than Core Wireless's original claims, it is a permissive counterclaim.

First, the operative facts supporting Core Wireless's infringement claims relate to the functionality of Apple's accused products.  By contrast, Apple's breach of contract claim relies on issues of ETSI licensing policies, members' commitments to abide by those policies, and Core Wireless's patent enforcement efforts.  Specifically, Apple's counterclaim relies on evidence of Core Wireless's negotiations and correspondence with Apple both before and after initiation of this lawsuit.  (*See* Apple's First Amended Answer, Defenses and First Amended Counterclaims to Core Wireless's Third Amended Complaint, (hereafter "Apple's Answer and Counterclaims") (Dkt. No. 107) at ¶ 113).  Moreover, Core Wireless's claims arise under the patent laws of the United States, whereas Apple's do not arise under federal law.[1]  Because the claims rely on different operative facts and law, Apple's breach of contract claim is not compulsory to Core Wireless's charge of patent infringement.

Indeed, in a case quite similar to the present one, a court in Washington, applying the logical relationship test, determined that Motorola's patent infringement claims (based on Microsoft's alleged use of standard-essential patents) were not compulsory counterclaims to Microsoft's breach of contract claims (based on Motorola's alleged breach of its FRAND

---

[1] Breach of contract claims are typically state law claims.  Whether the appropriate state law is that of Texas, as Core Wireless maintains, or of California, which appears to be Apple's position, Apple's counterclaim is not based on U.S. federal law.

obligations).  *Microsoft Corp. v. Motorola, Inc.,* No. C10-1823 JLR, 2011 U.S. Dist. LEXIS 73827, at *22-23 (W.D. Wash. May 31, 2011) ("The facts underlying the contract case relate to Motorola's dealings with SDOs and Motorola's licensing and enforcement practices … [and] arise under state law… [whereas] Motorola's patent infringement case arises under patent laws of the United States").  Similarly, here, because the law and facts are distinct, and the claims do not rely on the same aggregate set of operative facts, Apple's breach of contract claim was not a compulsory counterclaim to Core Wireless's claims of patent infringement.[2]

> **2.    The Core Wireless Counterclaims Are Properly Asserted in Response to Apple's Breach of Contract Counterclaim**

Core Wireless has asserted three counterclaims in response to Apple's breach of contract claim: two for breach of contract and one for unjust enrichment.  Because the three claims are logically related to Apple's breach of contract counterclaim and because substantially the same evidence will support or refute these three claims and Apple's breach of contract counterclaim, these claims are  compulsory counterclaims to Apple's counterclaim and are therefore properly asserted in reply to Apple's permissive breach of contract counterclaim.  *See Feed Mgmt. Sys.,* 518 F. Supp. 2d at 1096 (D. Minn. 2007) (allowing counterclaim in reply).  The Core Wireless counterclaims should be allowed to go forward to avoid the potential prejudice of res judicata against Core Wireless.  *See e.g., T. J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338, 370 n. 69 (5th Cir. 1980) (finding district court exercised "perfect" discretion in allowing late assertion of compulsory counterclaim because "[t]o disallow a compulsory counterclaim would enable the opposing party to bar recovery in a later suit by interposing a plea of res judicata").

As discussed above, Apple's breach of contract counterclaim relies on interpretation of ETSI licensing policies, "Nokia['s]… contractual commitments with ETSI, [and] ETSI's members (including Apple)" (Apple's Answer and Counterclaims at ¶ 110), and the negotiations between Apple and Core Wireless both before and during this lawsuit (*Id.* at ¶¶ 112-113).  Similarly, the

---

[2] This is not to say, however, that this dispute *should* be litigated in a separate forum.  As the Washington court found when it nevertheless consolidated the cases, there may be justification, for example, the interests of judicial economy, for trying the two cases together.  *Microsoft Corp.,* 2011 U.S. Dist. LEXIS 73827, at *23-24.

Core Wireless counterclaims rely on interpretation of ETSI licensing policies, Apple's ETSI membership, its contractual commitment with ETSI and ETSI members (including third parties), and the negotiations between Apple and Core Wireless at the filing of, and during this lawsuit. (*See* Core Wireless's Answer and Counterclaims to Apple's First Amended Counterclaims (hereafter "Core Wireless's Answer and Counterclaims") (Dkt. No. 115) at ¶¶ 6-48).

Apple argues that it is Core Wireless that is expanding the scope of the action, and not Apple, because the Core Wireless counterclaims involve all of the standard-essential patents in Core Wireless's portfolio, and not just the 14 patents asserted in the amended complaint.  But Apple's counterclaim cannot be so neatly cabined.  Apple's arguments regarding purported failure of Core Wireless to offer a FRAND license do not apply solely to the 14 asserted patents, but equally to every standard-essential patent in Core Wireless's portfolio.  And Core Wireless's claim that it was Apple, and not Core Wireless, that failed to live up to its ETSI obligations likewise applies to every standard-essential patent in the Core Wireless portfolio.  Apple's counterclaim thus raised breach of contract issues with respect to every standard-essential patent in the Core Wireless portfolio.  Core Wireless was obliged to counterclaim on all of its standard-essential patents or face the risk of being foreclosed to do so in a separate action.  *See e.g., T. J. Stevenson,* 629 F.2d at 370 n. 69.

### 3.   In the Alternative, Core Wireless Requests Leave To Amend its Complaint

First, Apple cites no authority for its proposed order for dismissal with prejudice, and such dismissal would be manifestly unfair.  Apple also suggests that Core Wireless should not be permitted to amend the complaint with its three counterclaims because it argues that these claims should have been asserted before the Court's deadline for amending pleadings.[3]  However, these

---

[3] Though unclear, this appears to be the basis for Apple's alternative request to strike the pleading. In addition to disputing the timeliness of Core Wireless's filing, Apple argues that Core Wireless is unduly expanding the scope of the case.  In this circuit, however, "motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *United States v. Coney,* 689 F.3d 365, 379 (5th Cir. 2012) (quotation omitted).  Because Core Wireless's counterclaims are directly related to Apple's counterclaim, a motion to strike is inappropriate.

claims are not so intertwined with the originally asserted claims that Core Wireless was required to assert them in its initial action.  Like Apple's breach of contract counterclaim, the Core Wireless counterclaims were permissive at the beginning of this action because of their tenuous relationship with the patent claims, and there was no obligation on the part of Core Wireless to bring them in this action.  They only arguably became compulsory after Apple expanded the scope of the case by bringing its own permissive breach of contract claim, thus requiring Core Wireless to bring its own related breach of contract and unjust enrichment claims against Apple or face the prospect of losing the claims through the operation of res judicata.

If the Court finds that Core Wireless's claims are more appropriately, or more simply, asserted in an amended complaint, Core Wireless asks the Court to grant Core Wireless leave to amend its complaint to include the Core Wireless counterclaims.  The Core Wireless counterclaims were filed only eleven days after the deadline in the Court's docket control order, and such claims were only asserted in response to Apple's last minute permissive counterclaim. Apple has not been prejudiced by this brief delay, especially since trial is not set to commence for another year and a half.  Core Wireless will, however, be prejudiced if its claims are barred.  Thus, justice requires that Core Wireless be given the opportunity to assert its counterclaims.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Underwriters at Interest on Cover Note v. Nautronix, Ltd.*, 79 F.3d 480, 484 (5th Cir. 1996) ("it is an abuse of discretion for a trial court to deny a plaintiff's motion to amend when the denial of that motion could unduly prejudice the plaintiff's action as a result of res judicata implications.")

**B.     The Core Wireless Counterclaims Meet The Pleading Threshold**

**1.     Core Wireless Properly States a Claim for Breach of Contract**

Accepting all allegations in the complaint as true, Core Wireless has properly pleaded its counterclaims for breach of contract because (1) Apple and Core Wireless have a contract for which Apple is required to pay FRAND royalties and (2) Apple has a contract with ETSI for which Core Wireless is an intended third party beneficiary.

### a. Apple Has a Contract With Core Wireless to Those Patents That Have Been Declared Essential to ETSI

Apple itself admits that it is a party to license agreement(s), express or implied, to those patents that have been declared essential to an ETSI standard.  (*See* Apple's Answer and Counterclaims at p. 275, ¶ 110 ("Nokia entered into contractual commitments with …ETSI's members (***including Apple***)") (emphasis added); *see also id.* at p. 253, Third Affirmative Defense ("Apple has the authority to practice these patents as a consequence of one or more of the following grounds: license (e.g., express and/or implied authority…).").  Under this contract, Core Wireless is required to offer its patents to Apple on FRAND terms, and Apple is required to negotiate a FRAND royalty in good faith with Core Wireless and ultimately pay a FRAND royalty rate.  *See Ericsson*, 2013 U.S. Dist. LEXIS 110585, at *87-88 ("RAND licensing also includes an obligation to negotiate in good faith. This obligation is a two-way street. As potential licensees in a RAND negotiation, Defendants possessed an obligation to negotiate in good faith and earnestly seek an amicable royalty rate. They failed to do so.") (holding that the jury properly determined a RAND license rate).

Additionally, as pleaded in the Core Wireless counterclaims, Apple has argued that an agreement is formed by virtue of "the [ETSI] IPR policies at issue [that] require participants claiming to own essential IPR to commit to license those IPR on FRAND terms to any implementer of the standard" and Apple accepted the license "when Apple began to implement the [ETSI] standard."  (Core Wireless's Answer and Counterclaims at ¶ 15). According to Apple, such license agreements are subject only to agreement on the terms of a FRAND royalty as compensation for Apple's licensed use.  (*Id.*) Apple similarly has stated in another litigation that it considers itself to be licensed to patents that have been declared standard essential because of the commitment to license such patents on FRAND terms.  Specifically, in *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-1846 (N.D. Cal. Nov. 8, 2011) Apple stated that "Apple is licensed to Samsung's declared-essential patents," because "the [ETSI] IPR policies at issue here require participants claiming to own essential IPR to commit to license those IPR on FRAND terms to any implementer of the standard." (Core Wireless's Answer and Counterclaims at ¶ 16).

The Core Wireless asserted patents have likewise been declared essential to the GSM/GPRS and/or UMTS standards.  Apple entered into an agreement with Standard Essential Patent owners to negotiate a FRAND royalty in good faith.  Thus, as Apple has acknowledged, by electing to practice the standards, it considers itself licensed to Core Wireless essential portfolio. (*Id*. at ¶¶ 17-18).

Apple breached its license with Core Wireless to Core Wireless's Standard Essential Patents, and its agreement to negotiate a FRAND royalty in good faith, by (1) refusing to negotiate a FRAND royalty with Core Wireless, (2) refusing to timely respond to Core Wireless's FRAND royalty offer, and consequently (3) refusing to pay a FRAND royalty for Core Wireless's Standard Essential Patents. (*Id*. at ¶ 19).  Accordingly, accepting all of Core Wireless's allegations as true, Core Wireless states a plausible claim for relief, and Apple's motion to dismiss should be denied.

### b. Apple Has a Contract With ETSI for Which Core Wireless Is an Intended Third Party Beneficiary

Apple is a member of ETSI.  "For standards [such as ETSI] developed under the 3GPP umbrella, participants, such as [Apple], were required to follow the IPR Policy of the organizations in which it held membership." (Core Wireless's Answer and Counterclaims at ¶ 35.) As a member of ETSI, therefore, [Apple] was bound to follow the ETSI IPR Policy in connection with all of its relevant activities." (*Id*.)  Further, as Apple has also admitted, "ETSI members participating in 3GPP are required to comply with the ETSI IPR policy." (*Id*.)  The ETSI IPR Policy is set forth in Annex 6 of its Rules of Procedure.  Clause 3.2 of the policy states (emphasis added):

> IPR holders whether members of ETSI and their AFFILIATES or <u>third parties</u>, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.[4]

By its membership in ETSI and its implementation of the ETSI standards, Apple is required to comply with this ETSI IPR Policy, including the requirement to adequately and fairly reward the Standard Essential Patent owner for the use of its patents in the implementation of

---

[4] ETSI IPR Policy Annex 6 at 1, attached as Exhibit 11 to Core Wireless's Answer and Counterclaims.

GSM/GPRS and/or UMTS standards. (*Id*. at ¶ 37).[5]  Core Wireless acquired the asserted Standard Essential Patents from an ETSI member, Nokia, on or around September 1, 2011, and therefore, became one of the "third parties" addressed in Clause 3.2 of the ETSI IPR Policy and an intended third party beneficiary of Apple's acceptance of this ETSI IPR Policy. (*Id*. at ¶ 38).

Apple breached its duty to ETSI by its (1) refusal to negotiate a FRAND royalty with Core Wireless, (2) refusal to timely respond to Core Wireless FRAND royalty offer, and (3) refusal to pay a FRAND royalty for Core Wireless's Standard Essential Patents.  (*Id*. at ¶ 39).  Accordingly, accepting Core Wireless's allegations as true, Core Wireless pleads all the elements of a breach of contract and states a plausible claim for relief.  Apple's motion to dismiss should be denied.

### 2. Apple Is Incorrectly Asserting That Core Wireless Has To Prove Infringement, Validity and Enforceability for Each Patent in its Portfolio

It is not necessary for the court to adjudicate fully all infringement, validity and enforceability issues related to each of the hundreds of standard essential patents in the Core Wireless portfolio in determining a proper FRAND rate for the portfolio, and it would be impractical for a court to do so.  In the recent *Microsoft Corp. v. Motorola, Inc.*, CASE NO. C10-1823JLR, 2013 U.S. Dist. LEXIS 60233, *82-115, *159-190 (W.D. Wash. Apr. 25, 2013) case, Judge Robart determined a FRAND rate for a portfolio of patents without fully adjudicating infringement, invalidity and enforcement issues for each of the patents in the Motorola portfolios. In the *Microsoft* case, the court determined a FRAND rate for two portfolios containing 40 patents, spread across multiple patent families, and many more foreign counterparts.[6]  The primary evidence of the applicability of the patents to the Microsoft products at issue consisted of declarations submitted by Motorola's experts regarding the essentiality of the Motorola patents to

---

[5] *See Ericsson,* 2013 U.S. Dist. LEXIS 110585, at *87-88 ("RAND licensing also includes an obligation to negotiate in good faith. This obligation is a two-way street. As potential licensees in a RAND negotiation, Defendants possessed an obligation to negotiate in good faith and earnestly seek an amicable royalty rate. They failed to do so.").

[6] Motorola contended only 11 of the 24 standard essential patents in the second portfolio were used by Microsoft's accused product, so the court analyzed only those 11 from the second portfolio.  *Microsoft*, 2013 U.S. Dist. LEXIS 60233, at *160.

the standards, and the court's own technical review of the patent specifications in light of those declarations. *Id.*, at *82-115, *159-190.  Based on experts' declarations, the court determined whether the patents in the portfolios were essential to the standards practiced by the accused Microsoft products, and whether they were implemented by Microsoft. *Id.*  This level of technical analysis was sufficient to allow the Court to perform its FRAND rate analysis.

In this case, which is analogous to the *Microsoft* case, the portfolio contains over 1,400 standard essential patents issued in over 50 different countries, containing over 100 issued United States patents spread across over 100 patent families.  Fourteen of those patents are already in litigation here, and full technical analysis for those patents is ongoing.  Much of that technical analysis will be applicable to all the standard essential patents in Core Wireless's portfolio.  The Court can alternatively fashion whatever reasonable evidentiary procedure it sees fit, which may include asking for evidence of the sort obtained by Judge Robart in the *Microsoft* case.

It cannot be the case that the Court must have a full trial on infringement, validity, and enforceability of each patent in the vast Core Wireless portfolio before adjudicating a FRAND rate for the portfolio.  With over 1,400 such patents at issue, such a trial (or, more likely, series of trials) would be wildly impractical.  To require such an evidentiary standard would potentially allow intransigent infringers such as Apple to force Core Wireless to spend several years going through a complete patent trial for 14 of the 1,400 patents to obtain a FRAND license on only those 14 patents, and then commence another several-year lawsuit for the next 14 patents in the portfolio, and so on until the entire portfolio of 1,400 patents was fully adjudicated and a FRAND royalty set for the entire portfolio.  The patents in the portfolio would long ago have expired and the technology at issue would long ago have ceased to have any technical importance before Core Wireless would be able to obtain the proper compensation for its full patent portfolio.  This outcome may be desired by Apple, but it does not comport with elementary ideas of justice and fair compensation for a patent owner whose valuable portfolio is based on the expenditure of billions of dollars and years of fundamental research in an important technical field.

Apple makes an argument that in the *Microsoft* case, "the product supplier sought to enforce the FRAND commitments by the patent holder, not the other way around" and that "Core

11

Wireless is turning that case on its head." (Apple's Motion at 10).  Apple provides no explanation why the reasoning of the *Microsoft* case depends on whether it was the patent owner or the accused infringer who brought the breach of contract claim, and indeed, it is only fair that the obligations of any party who has voluntary agreed to the policies of a standards-setting organization should be adjudicated at the request of either party.[7]  Otherwise, patent owners would have no practical means of vindicating their rights under ETSI's policy that "IPR holders … be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS."[8]  As discussed above, if the IPR holders were prevented from bringing such breach of contract claims against those like Apple who use standard essential patents but refuse to take, or even negotiate, a FRAND license with the IPR holders, infringers could avoid paying the appropriate FRAND rate for a large portfolio indefinitely through a series of lengthy and expensive litigations, effectively benefiting from using the patented technology without ever having to pay fair compensation.

Apple further argues that "[s]tudies have repeatedly shown that there are already high levels of over-declaration of patents as standard essential" and in one study there was a "finding that only 28% of patents that are claimed to be essential to WCDMA are actually essential." (Apple's Motion at 8).  Core Wireless's patents would certainly not fall into this category.  Nokia, the original owner of these patents, was one of the earliest participants in the standard setting bodies and its engineers were the leaders on many of those bodies and corresponding committees. Nokia was extremely careful in designating its patents as standard essential.  But even if only 28% of the Core Wireless patents were standard essential, that would still make for over 300 standard essential patents in Core Wireless's portfolio for which Apple would need to pay the appropriate FRAND royalty.

---

[7] *See Ericsson,* 2013 U.S. Dist. LEXIS 110585, at *86-87 ("If two parties negotiating a RAND license are unable to agree to the financial terms of an agreement, it is entirely appropriate to resolve their dispute in court.").

[8] *See* ETSI IPR Policy Annex 6 at 1, attached as Exhibit 11 to Core Wireless's Answer and Counterclaims.

### 3.    Apple Has Not Addressed All of Core Wireless's Forms of Relief in its Motion

Although Core Wireless has stated a plausible claim for breach of contract, Apple takes issue with only one form of relief sought by Core Wireless.  (*See* Apple's Motion at 8-11 (disputing appropriateness of relief sought in ¶ K – determination of FRAND royalty)).  Core Wireless, however, has asked for additional forms of relief seeking judgment that Apple has breached its obligations to Core Wireless and ETSI, adjudication that Apple is not a willing licensee to Core Wireless's standard essential patents, and seeking damages in the amount to be shown at trial or relief, none of which have been addressed in Apple's motion. (Core Wireless's Answer and Counterclaims ¶¶ H, I, J, L).  Accordingly, Apple's motion to dismiss should be denied for at least these four forms of relief.

### C.    Core Wireless States A Claim For Unjust Enrichment

Core Wireless's unjust enrichment claim is based on Core Wireless's obligation to provide its standard essential patents on FRAND terms, which gives Apple an incremental benefit over and above the benefit the public received when the patented technologies were published.  As admitted by Apple in its opening brief, the Federal Circuit has held that "federal law does not preempt an unjust enrichment claim …where the wrongdoer is alleged to have unjustly obtained an incremental benefit beyond the benefit of engaging in conduct governed by the Patent Act." (Apple's Motion at 12).  Here, the undue advantages obtained by Apple because of Core Wireless's FRAND obligations fall squarely within this category.

In *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306 (Fed. Cir. 2003), the Federal Circuit summarized federal preemption as follows: "States may not offer *patent-like protection* to intellectual creations which would otherwise remain unprotected as a matter of federal law."  However, in that case, the Federal Circuit found that "[t]he right involved [in the case] and compensated for under a theory of unjust enrichment …is not 'patent-like' at all," because "the [plaintiffs'] claim of unjust enrichment is a legal claim to remedy the breach of contract implied in law for disclosure of their confidential manuscript in exchange for a promise not to disseminate the idea without the [plaintiffs'] consent." *Id*.

The remedy in *Univ. of Colo. Found.* is comparable to the remedy here.  There exists a contractual or quasi-contractual relationship between Apple and Core Wireless, and as both parties plead, Apple obtains an incremental benefit over and above the benefit the public received when the patented technologies were published and issued because Apple benefits from the "FRAND promises [that] traveled with the Core Wireless Asserted Patents when they were transferred to Core Wireless." (*See* Apple's Answer and Counterclaims at ¶ 3; Core Wireless's Answer and Counterclaims at ¶ 20).  These FRAND promises are not available to the general public that implements the patents *outside the scope of the technology standards* at issue; the U.S. Patent Act places no obligation on the patent owner to license her patents to the general public.  In addition, Nokia, through its ETSI declarations, gave Apple and standard implementers notice of which patents cover their products.[9] All the above benefits are derived from the contractual or quasi-contractual relationship among Apple, Core Wireless, and ESTI.  Just as *Univ. of Colo. Found.*, the unjust enrichment claim here is not patent-like because it "is a legal claim to remedy the breach of a contract implied in law" for, among other things, FRAND promises and patent declarations "in exchange for a promise" to negotiate in good faith and pay FRAND royalties in consideration for those incremental benefits. *See Univ. of Colo. Found.*, 342 F.3d at 1306.  Core Wireless's unjust enrichment claim is unlike those in the cases cited by Apple. (*See* Apple's Motion at 12-13).  None of those cases involved a contract or quasi-contract creating comparable incremental benefits such as the contractual or quasi-contractual relationship between Apple and Core Wireless.

Apple further argues that Core Wireless's unjust enrichment counterclaim fails under state law[10] because "Core Wireless does not make any allegation that Apple obtained any 'benefit'

---

[9] Apple's benefits obtained from these declarations are not awarded by patent law. Normally, manufacturers would have to conduct their own patent search and freedom to operate analysis. Because thousands of complicated patents are involved in the wireless industry, this cost would be enormous without patent declarations.  A standard essential patent owner discloses and declares its standard essential patents to avoid this cost for the industry and at the same time subjects itself to potential challenges in post-grant procedures worldwide and even declaratory judgment actions.
[10] Apple is also incorrect that Core Wireless was required to plead which law governs. *See Taylor v. Cmty. Bankers Sec., LLC,* CIVIL ACTION H-12-02088, 2013 U.S. Dist. LEXIS 86485, at *10 (Continued...)

from Nokia or Core Wireless by fraud, duress, or taking an undue advantage[, or] it would be 'unconscionable' for Apple to retain such alleged benefit."  However, Core Wireless pleads unequivocally that, for example, Apple has gained profits by virtue of its "(1) refusal to negotiate a FRAND royalty with Core Wireless, (2) refusal to timely respond to Core Wireless FRAND royalty offer, and (3) refusal to pay a FRAND royalty for Core Wireless's Standard Essential Patents." (*See* Core Wireless's Answer and Counterclaims at ¶¶ 19, 31-32, 39-41, 47).   On the other hand, Core Wireless, relying on Apple's expressed and/or implied promises to ETSI and standard essential patent owners, has performed its contractual obligations both to ETSI and Apple by negotiating in good faith and offering a FRAND royalty rate to Apple.  (*Id*. at ¶¶ 20-30). The benefits obtained by Apple here are clearly "undue" and "unconscionable." (*See id.* at ¶¶ 19, 31, 39-40, 47-48).

Finally, Core Wireless's unjust enrichment claim is not barred by the statute of limitation. In Texas, a claim for unjust enrichment accrues and the statute of limitations begins to run "when facts come into existence that authorize a claimant to seek a judicial remedy."  *Mayo,* 354 F.3d at 411.  In this case, Core Wireless acquired the patents-in-suit on September 1, 2011, the date before which Core Wireless could not seek a judicial remedy.[11]  Therefore, it has only been about one year and ten months since the statute of limitation began to run.

## IV.    CONCLUSION

For the foregoing reasons, Core Wireless asks the Court to deny Apple's motion to dismiss the Core Wireless counterclaims in its entirety.

---

(...Continued)

(S.D. Tex. June 20, 2013) ("Before the court may evaluate whether the receiver has pled plausible claims for relief to pass muster under Rule 12(b)(6), the court must first determine the governing law for each claim."). To make it clear, Core Wireless alleges that Texas law should be applied according to Texas's choice of law rules, because Texas has "the most significant relationship" to this claim.  *See Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 403-405 (5th Cir. 2004); Core Wireless's Opposition to Apple's Motion to Transfer. (Dkt. No. 39). Even if the Court finds California law governs, it would not affect the result because, as Apple admits, "[t]he law in Texas is similar to that in California." (Dkt. No. 124 at 14).

[11] Further, Apple has also obtained unjust benefits since February 29, 2012, after the litigation started, by refusing to negotiate with Core Wireless.

Dated:  August 19, 2013                    Respectfully Submitted,

                                By:       */s/  Henry C. Bunsow*
                                          Henry C. Bunsow (California State Bar # 60707)
                                          Denise M. De Mory (California State Bar #168076)
                                          Brian A.E. Smith (California State Bar # 188147)
                                        Craig Y. Allison (California State Bar # 161175)
                                          **BUNSOW DE MORY SMITH & ALLISON LLP**

                                          55 Francisco Street, 6th Floor
                                          San Francisco, CA  94133
                                          Telephone:  (415) 426-4747
                                          Facsimile:  (415) 426-4744
                                          Email:  hbunsow@bdiplaw.com
                                          Email:  ddemory@bdiplaw.com
                                          Email:  bsmith@bdiplaw.com
                                          Email:  callison@bdiplaw.com

                                          Wesley Hill
                                          State Bar No. 24032294
                                          E-mail: wh@wsfirm.com
                                          T. John Ward, Jr.
                                          State Bar No. 00794818
                                          E-mail: jw@wsfirm.com
                                          **WARD & SMITH LAW FIRM**
                                          P.O. Box 1231
                                          1127 Judson Rd., Ste. 220
                                          Longview, Texas 75606-1231
                                          Telephone:  (903) 757-6400
                                          Facsimile:  (903) 757-2323

                                          **ATTORNEYS FOR PLAINTIFF**
                                          **CORE WIRELESS LICENSING S.A.R.L.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail.


Dated:  August 19, 2013

_/s/ Henry C. Bunsow_
Henry C. Bunsow