# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., | ) ) ) |
| Plaintiff, | ) **CIVIL ACTION NO. 6:12-CV-100** ) ) |
| vs. | ) **JURY TRIAL DEMAND** ) |
| APPLE INC., | ) ) |
| Defendant. | ) |

**CORE WIRELESS LICENSING S.A.R.L.'S SUR-REPLY IN SUPPORT OF ITS OPPOSITION TO APPLE INC.'S MOTION TO DISMISS OR STRIKE PLAINTIFF CORE WIRELESS' COUNTERCLAIMS-IN-REPLY**

To succeed in its motion to dismiss, Apple must show that, assuming all facts in the Core Wireless counterclaims to be true, the counterclaims are in some way legally deficient or not procedurally proper. Apple has made no such showing. Apple filed a counterclaim injecting a breach of contract theory regarding Core Wireless' FRAND obligations on the last day to amend pleadings without leave of court. By doing so, Apple opened the door to Core Wireless' counterclaims, which show that it was Apple, and not Core Wireless, that breached its FRAND obligations. The Core Wireless counterclaims are proper because they are compulsory counterclaims based on the same set of operative facts that Apple pleaded in its own counterclaim. Apple does not dispute that, had Core Wireless limited its counterclaims to just the patents-in-suit, the counterclaims would have been procedurally proper. But there is no way to limit the Core Wireless counterclaims to just those particular fourteen patents. The legal and factual bases for the Core Wireless counterclaims apply equally to all of the other patents in its extensive portfolio, and it was necessary for Core Wireless to include all of them, or face the risk that Apple would argue in the future that the counterclaims were barred by res judicata.

In addition, nothing in any of Apple's briefing addresses the practical failure and injustice that would be worked should Apple's view of the world prevail. Apple wishes to wait until the fourteen patents-in-suit are fully adjudicated and shown to be infringed, valid, and enforceable before it will even consider an appropriate FRAND rate, and only for the patents-in-suit. Apple will then argue (as it already has) that the FRAND rate owed for the fourteen patents-in-suit should be minuscule because of the many other standard-essential patents that were not part of the lawsuit (including the dozens of other Core Wireless patents that could not be part of the initial patent action for purely practical reasons). Then Apple believes it is free to do nothing until Core Wireless brings suit on the next fourteen patents, then the next fourteen, and on and on over the course of many years, until some uncertain day in the distant future when Core Wireless has managed to adjudicate fully each and every patent in its entire portfolio against Apple.

Core Wireless is the owner of one of the most extensive and valuable patent portfolios in the field of cellular technology, a portfolio that was created at the cost of billions of dollars of

research.  Apple is saying that an effective adjudication within a reasonable amount of time of the FRAND rate owed for using that extensive portfolio is simply impossible, and that owners of large patent portfolios of standard-essential patents like Core Wireless have no effective way of vindicating their rights.  That cannot be the law, and Apple has pointed to nothing that says it is.

**I.      THE CORE WIRELESS COUNTERCLAIMS ARE PROCEDURALLY PROPER**

Apple does not deny that a party such as Core Wireless may properly bring compulsory counterclaims in response to its adversary's permissive counterclaims.  Apple brings its motion under the incorrect premise that its counterclaim is compulsory and Core Wireless' are not.

First, the law is clear that Apple's breach of contract claim is not compulsory.  In Apple's reply, it makes no attempt to distinguish controlling precedent cited by Core Wireless—*Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.,* 436 Fed. Appx. 297 (5th Cir. 2011).  In *Ormet*, the Fifth Circuit found the claim was not compulsory because "the two claims at issue . . . ar[o]se from different sets of operative facts."  *Id*. at 300 (emphasis added).  Here, Apple's breach of contract claim is based on operative facts that are different from Core Wireless' patent infringement claims.  The basis for Core Wireless' patent infringement claims is Apple's implementation of Core Wireless' patents, while the basis for Apple's breach of contract claim is the contractual relationship between Core Wireless, Apple, and ETSI.  The only nexus between these two types of claims alleged by Apple is that the "calculation of a reasonable royalty would require consideration of FRAND terms for those patents."  Apple's Reply, at 1.  But this small overlap in issues related to damages does not make the breach of contract counterclaim "logically related" to the patent infringement claims and does not make Apple's counterclaim compulsory.  *Ormet*, 436 Fed. Appx. at 300 (*citing Plymouth Youngle Tape (Shanghai) Co. v. Plymouth Rubber Co.,* 683 F.Supp.2d 102, 110 ("Although these claims have some factual overlap" with the plaintiff's claims, "they are not 'logically related'")).

Apple has made no substantial argument that the Core Wireless counterclaims are not compulsory.  A reading of the allegations in Apple's counterclaim and the Core Wireless counterclaims shows that they are logically related and are part of the same set of operative facts

2

– the interactions (or lack of interactions) between the parties regarding licensing the Core Wireless patents, the appropriate FRAND rate for the Core Wireless patents, and each party's compliance (or lack of compliance) with its obligations to the standard-setting organization, ETSI. Apple provides a single example of an allegation in its counterclaim that purportedly applies to the patents-in-suit but not to the entire Core Wireless portfolio – the allegation that Core Wireless failed to make a FRAND offer for the patents-in-suit. *See* Reply at 2. But whether Core Wireless has the obligation to offer a portfolio-wide rate or a patent-specific rate is disputed and should be determined by the Court.

Apple makes a false comparison between the Motorola patent portfolio and the Core Wireless portfolio in an attempt to argue that the Core Wireless counterclaims would impose a much greater burden on the Court than the *Microsoft v. Motorola* case[1] cited by Core Wireless. In particular, Apple states that "[t]he portfolios at issue in [the *Microsoft v. Motorola*] case involved only 40 patents, whereas Core Wireless is seeking to introduce adjudication of a 1,300 patent portfolio—over 30 times as large." Reply at 2. In fact, the Motorola portfolio consisted of around 40 U.S. patents and several hundred foreign equivalents. The Core Wireless portfolio comprises around 100 issued U.S. patents; the remaining patents are foreign equivalents. Thus, Apple is incorrect that Core Wireless' portfolio is 30 times larger as the Motorola portfolio.

## II. CORE WIRELESS' BREACH OF CONTRACT CLAIMS

Core Wireless has pleaded actionable breach of contract claims. An actionable breach of contract claim includes four elements: "(1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach." *Petras v. Criswell,* 248 S.W.3d 471, 477 (5th Cir. 2008). Apple fails to show that any elements are absent in Core Wireless' pleading.

---

[1] *Microsoft Corp. v. Motorola, Inc.,* No. C10-1823 JLR, 2011 U.S. Dist. LEXIS 73827 (W.D. Wash. May 31, 2011).

Core Wireless pleads two breaches of contract in its counterclaims. The first contract is between Apple and Core Wireless, which derives from Nokia's contractual commitments with ETSI's members including Apple. The second contract is between Apple and ETSI, because Apple is an ETSI member and is bound by ETSI's IPR Policy. Both contracts require Apple either to pay a FRAND royalty for Core Wireless' Standard Essential Patents or to negotiate a FRAND royalty with Core Wireless in good faith. The existence of these two contracts is properly pleaded by Core Wireless and admitted by Apple in both the present case and the previous Samsung case. Core Wireless' performance and Apple's breaches are set out in the detailed description of negotiations between Core Wireless and Apple. *See* Core Wireless Counterclaims, ¶¶ 19-31, 34, and 39. Core Wireless' damages are also properly pleaded. *See id.* ¶¶ 32-33 and 41-42. With all facts in the counterclaims admitted, Core Wireless has stated the claims to relief that are "plausible on [their] face," which is all that is required at the pleading stage. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Apple, by requiring Core Wireless to show "proof that its patents are infringed and not invalid" at the pleading stage, misunderstands the standard of pleading and the burden of proof. A pleading is sufficient if it has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal,* 556 U.S. 662, 678 (2009). Here, Core Wireless has pleaded that the patents in the portfolio are standard essential and Apple has been implementing those standards. *See* Core Wireless Counterclaims, ¶¶ 7, 8 and 15-17. The level of proof required to support these allegations is not an issue at the pleading stage. Core Wireless pointed out how issues of proof were handled at trial in the similar Microsoft v. Motorola case, but there is no authority requiring Core Wireless to meet an evidentiary burden in its initial pleading of the counterclaims. The case *Lear v. Adkins,* 395 U.S. 653 (1969) cited by Apple does not support its argument. There, the Supreme Court merely held that the licensee could challenge the validity of the licensed patents. *See Lear,* 395 U.S. at 623. This does not change Apple's burden of proof of

4

invalidity, since a patent is presumed to be valid. 35 U.S.C. § 282, *see also Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. at __, 131 S. Ct. 2238 (2011).

### III. CORE WIRELESS' UNJUST ENRICHMENT CLAIM

Apple fails to distinguish the present case from *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.,* 342 F.3d 1298 (Fed. Cir. 2003) cited by Core Wireless. Just as in *Univ. of Colo. Found.,* Apple received incremental benefits over and above the benefit received by the public, including Core Wireless' FRAND commitment. The general public, if implementing Core Wireless' patents outside the scope of the relevant wireless standards, would not enjoy a FRAND royalty rate and would potentially be subject to a risk of injunction. Apple obtained this benefit by its refusal to negotiate a FRAND royalty with Core Wireless and by requiring Core Wireless to enforce individually more than one hundred standard essential patents. Core Wireless' unjust enrichment claim is not barred by the statute of limitations. Core Wireless has made no allegations that any conduct related to its unjust enrichment claim occurred before July 2, 2011, two years before the filing of the Core Wireless counterclaims, and Apple provided no evidence of any such allegations in that time frame in its reply brief. Contrary to Apple's statements in its reply, the correspondence cited by Apple from counsel for Core Wireless deals does not provide any evidence that on the issue of unjust enrichment but merely describes the basis for Core Wireless' claim of a common interest privilege.

### IV. CONCLUSION

For the foregoing reasons, Apple's motion to dismiss the Core Wireless counterclaims should be denied.

5

Dated: September 9, 2013  Respectfully Submitted,

By: ___*/s/ Henry Bunsow*___
 Henry Bunsow (California State Bar # 60707)
 Denise M. De Mory (California State Bar #168076)
 Brian A.E. Smith (California State Bar # 188147)
 Craig Y. Allison (California State Bar # 161175)
 **BUNSOW DE MORY SMITH & ALLISON LLP**
 55 Francisco Street, 6th Floor
 San Francisco, CA 94133
 Telephone: (415) 426-4747
 Facsimile: (415) 426-4744
 Email: hbunsow@bdiplaw.com
 Email: ddemory@bdiplaw.com
 Email: bsmith@bdiplaw.com
 Email: callison@bdiplaw.com

 Wesley Hill
 State Bar No. 24032294
 E-mail: wh@wsfirm.com
 T. John Ward, Jr.
 State Bar No. 00794818
 E-mail: jw@wsfirm.com
 **WARD & SMITH LAW FIRM**
 P.O. Box 1231
 1127 Judson Rd., Ste. 220
 Longview, Texas 75606-1231
 (903) 757-6400 (telephone)
 (903) 757-2323 (facsimile)


 **ATTORNEYS FOR PLAINTIFF**
 **CORE WIRELESS LICENSING S.A.R.L.**

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail.

Dated: September 9, 2013

                                                                 */s/ Henry Bunsow*
                                                                   Henry Bunsow