**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **CORE WIRELESS LICENSING S.A.R.L,** | ) )  **CIVIL ACTION NO.  6:12-CV-100** |
| **Plaintiff,** | ) ) ) **JURY TRIAL DEMAND** |
| vs. | ) ) |
| **APPLE INC.,** | ) ) |
| **Defendant.** | ) ) |

**CORE WIRELESS LICENSING S.A.R.L.'S OBJECTIONS TO
MAGISTRATE LOVE'S CLAIM CONSTRUCTION ORDER AND
MOTION FOR RECONSIDERATION OF THE SAME**

## TABLE OF CONTENTS

**PAGE NO.**

I. INTRODUCTION ..................................................................................................................1

II. TERMS FOR WHICH CORE WIRELESS SEEKS RECONSIDERATION ............................2

    A. '143 Patent ...................................................................................................................2

        1. Terms 20a and 20b – Examples of "Channel Selection Parameters" From the Specification Should Be Explicitly Included in the Structure ................................2

        2. Terms 18, 20a, 20b, 21a, 21b, 22 – The "Control Unit" Structure Should Not Fall Within the Rule of *WMS Gaming* ...................................................................5

    B. '277 Patent ...................................................................................................................6

        1. Term 12 - "one or more core networks" ...............................................................6

    C. '860 Patent ...................................................................................................................8

        1. Terms 6a, 6b and 7 of the '860 Patent ...................................................................8

        2. Term 4 of the '860 Patent .......................................................................................9

        3. Terms 1 and 3 of the '860 Patent ...........................................................................9

    D. '959 Patent .................................................................................................................10

        1. Term 9 - "dynamic configurations" .....................................................................10

III. CONCLUSION .....................................................................................................................10

## TABLE OF AUTHORITIES

PAGE NO.

**CASES**

*Asyst Techs., Inc. v. Empak, Inc.*,
    268 F.3d 1364 (Fed. Cir. 2001) .................................................................................... 10

*In re Katz Interactive Call Processing Patent Litigation*,
    639 F.3d 1503 (Fed. Cir. 2011) ...................................................................................... 5

*Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) .................................................... 1

*WMS Gaming, Inc. v. International Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) ...................................................................................... 5

**STATUTES**

28 U.S.C. § 636(b)(1)(A) ................................................................................................................ 1

**RULES**

Fed. R. Civ. Pro. 72(a). .................................................................................................................. 1

**I.      INTRODUCTION**

In order to preserve the issues for appeal, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Rule 72(b), Plaintiff Core Wireless respectfully objects to, and requests reconsideration of, certain portions of Magistrate Judge Love's Memorandum Opinion and Order on Claim Construction (the "*Markman* Order").  *See* Dkt. No. 245.[1]  For certain claim terms, Core Wireless asks that the Court's construction be withdrawn, and for other terms, asks that the Court modify the construction because, unless withdrawn or modified, the construction of these terms is clearly erroneous and contrary to law.  *See* Fed. R. Civ. Pro. 72(a).

As a preliminary matter, the *Markman* Order construed selected claim terms for U.S. Patent Nos. 6,792,277 ("the '277 Patent"); 7,383,022 ("the '022 Patent"); 7,599,664 ("the '664 Patent"); 6,978,143 ("the '143 Patent"); 6,788,959 ("the '959 Patent"); 6,674,860 ("the '860 Patent"); and 7,804,850 ("the '850 Patent").  At the time the Court issued its order, however, the '277 Patent, the '959 Patent and the '860 Patent had been dismissed without prejudice,[2] and certain claims of the '143 Patent that were construed were no longer in suit.[3]  Accordingly, at the time the *Markman* Order issued, there was no case or controversy over these claim terms.  "The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties."  *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008).

---

[1] Concurrently with the filing of this brief, Core Wireless is also filing an unopposed motion for leave to extend the page limit for this brief to ten pages.

[2] On March 4, 2014, the parties jointly moved for dismissal without prejudice of U.S. Patent Nos. 6,674,860, 6,697,347, 6,788,959, 6,792,277, 7,415,045 and 7,817,679.  *See* Dkt. No. 180. On March 10, 2014, the Court granted the motion and dismissed from the case "All causes of action in Core Wireless's Third Amended Complaint [Dkt. No. 61] involving the Dismissed Patents, and all causes of action in Apple's First Amended Answer and Counterclaims [Dkt. No. 107] for declaratory relief involving the Dismissed Patents."  *See* Dkt. No. 186.

[3] Claim terms 20b, 21a, 21b, and 22, as identified in the *Markman* briefing [Dkt. No. 108-1], are claim terms that appear in claims 18 and 19 of the '143 Patent, which are no longer in suit.  On March 7, 2014, in accordance with the Docket Control Order, Core Wireless identified claims 17 and 21 of this patent as the elected claims to pursue in this case.  *See* Exhibit 1.

Further, courts must be cautious not to render "an advisory opinion as to claim construction issues that do not actually affect the infringement controversy between the parties." *Id.* Because the magistrate's order amounts to an advisory opinion with respect to the construction of terms for the '277 Patent, the '959 Patent and the '860 Patent, and certain terms in the '143 Patent, Core Wireless objects to the construction of those terms. In accordance with Local Rule CV-72(b), Core Wireless asks that the construction of these terms be vacated. In order to further preserve its right to substantively object to these constructions, however, Core Wireless also lodges its objections to the substance of the constructions related to these terms below.

## II.    TERMS FOR WHICH CORE WIRELESS SEEKS RECONSIDERATION

### A.    '143 Patent

#### 1.    Terms 20a and 20b – Examples of "Channel Selection Parameters" From the Specification Should Be Explicitly Included in the Structure

| Terms 20a, 20b [*see* Dkt. No. 108-1] | Court's Construction [Dkt. No. 245] | Core Wireless's Proposed Modification |
|---|---|---|
| **Term 20a - "means for comparing said threshold value of the channel selection parameter to a current value of the channel selection parameter for basis of said channel selection"** ('143 patent, claim 17) | **Function:** Not disputed<br><br>**Structure:** "A control unit 803 wherein the control unit 803 is programmed to control the comparison of the threshold value of the channel selection parameter to the current value of the channel selection parameter in accordance with the algorithm shown in Fig. 6, step 650, and described in 6:20-39; 7:17-20; and 7:24-28 of the '143 specification; and statutory equivalents thereof" | **Structure:** "A control unit 803 wherein the control unit 803 is programmed to control the comparison of the threshold value of the channel selection parameter to the current value of the channel selection parameter in accordance with the algorithm shown in Fig. 6, step 650, and described in 6:20-39; 7:17-20; and 7:24-28 of the '143 specification; and statutory equivalents thereof. <u>Examples of channel selection parameters are provided at 4:1-34; 5:62-67; 6:20-21.</u>" |
| **Term 20b - "means for comparing a current value of the last channel selection parameter sent to the mobile station to said calculated value of the channel selection parameter"** ('143 patent, claim 19) | **Function:** Not disputed<br><br>**Structure:** "A control unit 803 wherein the control unit 803 is programmed to control the comparison of the current value of the last channel selection parameter sent to the mobile station to said calculated value of the channel selection parameter, in accordance with the algorithms shown in Fig. 6, steps 650, and described in 6:20-39; 7:17-20; and 7:24-28 of the '143 specification; and statutory equivalents thereof." | **Structure:** "A control unit 803 wherein the control unit 803 is programmed to control the comparison of the current value of the last channel selection parameter sent to the mobile station to said calculated value of the channel selection parameter, in accordance with the algorithms shown in Fig. 6, steps 650, and described in 6:20-39; 7:17-20; and 7:24-28 of the '143 specification; and statutory equivalents thereof. <u>Examples of channel selection parameters are provided at 4:1-34; 5:62-67; 6:20-21.</u>" |

Core Wireless asks for clarification regarding the Court's construction for the two "means for comparing…" terms to confirm that the corresponding structures for these terms include all examples contained in the specification, including the following examples from the specification that were originally proposed by Core Wireless in its claim construction brief: "Examples of [channel selection parameters] are provided at 4:1-34; 5:62-67; 6:20-21."[4] The structure in the Court's claim construction for these two terms includes the step 650 from Figure 6 and the following specification cites: 6:20-39; 7:17-20; and 7:24-28, but does not expressly refer to the additional examples of comparison parameters cited by Core Wireless. To the extent the Court's construction is not intended to include all the examples of channel selection parameters contained in the specification, Core Wireless objects to the Court's construction and requests that these additional examples be explicitly included in the construction.

The Court's construction of the corresponding structure for this limitation includes a citation from 6:20-39 that expressly includes the "amount of data to be transferred" and the "size of data packet," as channel selection parameters that can be used for comparison. *See* below.

> Described below is an example in which the ***channel selection parameter is the amount of data to be transferred***. When a data packet, or service data unit SDU, arrives during the RACH/FACH mode from the RLC layer to the MAC layer, ***the MAC compares the size of the SDU to the maximum allowed size.*** If the size of the RLC packet is greater than the maximum allowed size on the RACH, the MAC layer requests transfer resources in the form of a dedicated channel from the RRC layer. The RRC layer takes care of the packet resource allocation signaling across the radio interface and informs the MAC layer about the traffic channel (DCH) parameters it can use and, if necessary, configures the physical layer (Ll). If the size of the RLC packet is smaller than the maximum allowed packet size, the MAC layer schedules the sending of the data on the RACH autonomously. If the decision is to allocate a DCH, the MAC layer informs the RRC layer which takes care of the capacity request signaling across the radio interface, step 680.

'143 patent at 6:20-39 (emphasis added).

---

[4] Originally, Core Wireless proposed the language "Examples of ***threshold values*** are provided at 4:1-34; 5:62-67; 6:20-21" in its claim construction (emphasis added). (Dkt. No. 118-1 at 15-16, terms 20a and 20b). However, in order to make it clear that these channel section parameters can have both a "threshold value" and a "current value," Core Wireless replaces the proposed language "threshold values" with the "channel selection parameters."

3

Elsewhere in the patent, the specification cites additional specific examples of channel selection parameters, *see, e.g.*, 4:1-13:

> The decision about whether to use a common or a dedicated channel may be based on a plurality of channel selection parameters such as:
>     size of data packet; amount of data in RLC buffers or information obtained from higher layers about the amount of data to be transferred,
>     bit rate required,
>     allowable transfer delay,
>     priority or importance of the data to be transferred,
>     channel load,
>     power level required for the transfer on the RACH, and
>     maximum packet size transferable on the RACH.

'143 patent at 4:1-13. These specific examples are also found in at least one of the claims of the '143 patent:

> 7. A method according to claim 1, characterized in that one or more of the following parameters are used in the channel selection:
> size of data packet,
> maximum allowed data packet size on the RACH,
> bit rate required,
> allowed transfer delay,
> priority of data to be transferred,
> load on the transfer channel, and
> transmit power level required on the RACH.

'143 patent at claim 7.

It is the understanding of Core Wireless that the examples given at 6:20-39 and included in the Court's construction are sufficiently broad to subsume and encompass other, more specific examples given in the patent, such as those at 4:1-13. To the extent that this understanding is incorrect, and the Court had the intention of limiting the corresponding structures in such a way as to exclude those additional examples found at 4:1-13 or elsewhere from its identified corresponding structures, Core Wireless objects to the construction and asks for reconsideration from the Court to include explicitly those additional examples cited by Core Wireless in its proposed claim construction. If that were the intention of the Court, such a limiting construction would be incorrect because the portions of the specification cited by Core Wireless (such as 4:1-13) clearly provide examples of channel selection parameters and thus properly should be included within or as part of the corresponding structures identified by the Court.

4

### 2. Terms 18, 20a, 20b, 21a, 21b, 22 – The "Control Unit" Structure Should Not Fall Within the Rule of *WMS Gaming*

Core Wireless objects to the Court's opinion that the rule of *WMS Gaming, Inc. v. International Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) "is applicable to the 'control unit' because the 'control unit' 'controls' as directed by 'special software.'" (Dkt. No. 245 at 16.). The "control unit" is not a general purpose computer/processor. Processors of the type disclosed in the specifications of the '143 patent are specially designed for use in a cell phone, and are not general purpose processors.

Further, the statement in the '143 patent that "the control unit that controls the other blocks executes the block control functions according to special software, thus realizing the above-described block functions according to the invention" does not mean that the "control unit" must be a "general purpose processor." '143 patent at 7:25-28. This is a technical, not a legal, statement, and has nothing to do with the holding of *WMS Gaming*. The word "special" means that the control unit controls the functions of sending, receiving, and comparing differently, not that it has to be programmed in a special way. In fact, the examples in the specification show that the control unit controls these functions in the ordinary way. *See* '143 patent at 7:1-3 ("A control unit controls the reception blocks mentioned above in accordance with a program stored in the unit."); *id.* at 7:5-6 ("Controlled by the control unit 803, block 833 performs signal processing…"); *id.* at 7:12-13 ("The control unit 803 controls also these processing and transmission functions."); *id.* at 7:14 ("The control unit 803 controls the reception blocks…"); *id.* at 7:18-19 ("control unit 803 which also controls the transmission blocks …").

Even if the disclosed control unit were held to be a general purpose processor, however, the holding of *WMS Gaming* would not be applicable here. In a case decided after *WMS Gaming*, the Federal Circuit held that when a means-plus-function term does not recite a specific function that would need to be implemented by a computer programmed for a special purpose, there is no need to identify algorithms or any structure other than the processor itself. *See In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)

5

("'processing,' 'receiving,' 'and 'storing' . . . can be achieved by any general purpose computer without special programming. As such, it was not necessary to disclose more structure than the general purpose processor that performs those functions."). Examples of such non-specific functions that did not require identifying algorithms included "processing," "receiving," and "storing." *Id*. These examples are identical or very similar to the functions of the means elements of the disputed terms of the '143 patent, which include "receiving," "sending," "storing," and "comparing." It is therefore not necessary for the Court to identify algorithms for these corresponding structures. Identification of the control unit is sufficient structure.

    **B.**     **'277 Patent**

        **1.**     **Term 12 - "one or more core networks"**

Core Wireless objects to the Court's opinion concerning the claim term, "one or more core networks." The Court's Claim Construction Order has concluded that the term "one or more core networks" can cover the case in which a single core network has only one type of service. *See* Dkt. No. 245 at 7. Core Wireless objects for the following three reasons:

First, the Court reasons that "the use of the term 'core network' in the specification conforms to the plain meaning, such that the invention could operate with a single core network." *Id*. In support of this conclusion, the Court points to portions of the specification such as "successive control signallings can also be carried out to the *same core network*" ('277 patent at 10:50-52) and "[t]he idea underlying the invention is that the connection between the access network and the terminal is not released between substantially successive control signallings between *at least one core network* and the terminal" ('277 patent at 2:62-65). However, these particular statements in the specification do not specify one way or the other whether the same core network in those cases is providing at least two different types of services. Indeed, the primary issue for this claim term is whether a single core network can provide at least two services, when the term is used in those very statements that the Court has cited.

Second, the Court relies on the notion that "'any telecommunications system' necessarily includes systems with only a single-service core network" (Dkt. No. 245 at 7), and because "the

6

invention [of the '277 patent] is suitable for use in *any telecommunication system* wherein a need exists to carry out a plurality of substantially successive control signallings between a terminal and a telecommunications network" ('277 patent at 3:59-63), the Court concludes that whether a single core network has one service or two services is not an inherent limitation of the term. Core Wireless, respectfully disagrees that "any telecommunications system *necessarily* includes systems with only a single-service core network," particularly given that there is nowhere in the intrinsic record that supports this statement. To the contrary, the specification does contemplate telecommunication systems in which a single core network includes multiple services for which the invention of the '277 is indeed suitable for (*See, e.g.*, '277 patent at 4:11-14.).

Third, the Court reasons that "the specification expressly provides that a core network may be responsible for only a single type of service: circuit switched or packet-switched" based on an example telecommunication system in the specification where there are two separate core networks ("CN1" for circuit-switched services and "CN2" for packet-switched services). Dkt. No. 245 at 7. However, this example does not bear on the case in which a telecommunication system has only one core network, which is where the instant claim construction issue is centered on.

In the context of the '277 patent, when a telecommunication system has only one core network, the core network necessarily has more than one service. The invention does not cover maintaining a connection to a single core network with a single service. The '277 patent explains that this was in the GSM prior art and distinguished it from the invention. The patent explicitly states that the purpose of the invention was to solve the problem of successive connections to multiple core networks or services. '277 patent at 3:66-4:16. The patent states that the invention can be applied in two circumstances: first, when "an access network [is] connected to at least two core networks," and second, "with only one core network integrated to be responsible for several different services, such as circuit- and packet-switched connections." *Id.* Furthermore and most notably, nowhere in the intrinsic record is there any suggestion of a

7

single core network including only one service in a single core network telecommunication system that is covered by the invention of the '277 patent. Therefore, Core Wireless respectfully requests that the Court reconsider its opinion regarding the claim term "one or more core networks" and construe it as follows:

> In a telecommunication system with only one core network, the one core network is integrated to be responsible for several different services, such as circuit- and packet-switched connections.

### C. '860 Patent

#### 1. Terms 6a, 6b and 7 of the '860 Patent

| Terms 6a, 6b, 7 [*see* Dkt. No. 108-1] | Court's Construction [Dkt. No. 245] | Core Wireless's Proposed Modification |
|---|---|---|
| "**means for receiving said decryption key or data needed to construct said decryption key from the mobile station related to a location update procedure**" ('860 patent, claim 12);<br><br>"**means for receiving said decryption key from the mobile station related to a location update procedure**" ('860 patent, claim 14); and<br><br>"**means for receiving a decryption key or data needed to construct said decryption key from the mobile station together with a key or data needed to construct the next decryption key**" ('860 patent, claim 13) | **Functions**: not disputed<br><br>**Structure**:<br>(1) Bus adapter DATA-I/O 120 of an intelligent module SIM 140 as shown in Figure 10 and described in the '860 Patent at 8:56-58; or<br><br>(2) Logical blocks 313, 314 of an intelligent module (such as a smart card or SIM) as shown in Figure 3 and described in the '860 Patent at 3:66-4:3; 8:24-27; 6:59-61; and<br><br>(3) Statutory equivalents thereof. | **Structure**:<br>(1) Bus adapter DATA-I/O 120 of an intelligent module ~~SIM~~ (such as a smart card or SIM) 140 as shown in Figure 10 and described in the '860 Patent at 8:56-58 <u>and 3:66-4:3</u>; or<br><br>(2) Logical blocks 313, 314 of an intelligent module (such as a smart card or SIM) as shown in Figure 3 and described in the '860 Patent at 3:66-4:3; 8:24-27; 6:59-61; and<br><br>(3) Statutory equivalents thereof. |

Core Wireless does not object to the construed function for each of these terms, and generally does not object to the Court's structure, which is the same for each of these terms. The Court explicitly rejected Apple's attempts to limit the claims of the '860 to an "intelligent module SIM," [Dkt. No. 245 at 28] and the Court referenced this reasoning in construing these claim terms. [*Id.* at 31]. Accordingly, Core Wireless interprets the first structure identified above as not being limited to a SIM. To the extent the Court intended to limit this structure to a SIM, Core Wireless objects as that construction would be inconsistent with the Patent and the

8

Court's own reasoning and requests the modification noted in the table above to change the "intelligent module SIM" to "intelligent module (such as a smart card or SIM)," and to include the referenced citation from the specification.

### 2. Term 4 of the '860 Patent

| Term 4 [Dkt. No. 108-1] | Court's Construction [Dkt. No. 245] | Core Wireless's Proposed Modification |
|---|---|---|
| "**means for receiving from the mobile station encrypted information related to a service**" ('860 patent, claim 12) | **Function:** not disputed.<br><br>**Structure:** "Bus adapter DATA-I/O 120 of an intelligent module SIM 140 as shown in Figure 10 and described in the '860 Patent at 8:56-58; and statutory equivalents thereof. | **Structure:** "Bus adapter DATA-I/O 120 of an intelligent module ~~SIM~~ (such as a smart card or SIM) 140 as shown in Figure 10 and described in the '860 Patent at 8:56-58 and 3:66-4:3; and statutory equivalents thereof. |

On a similar vein, Core Wireless objects to Term 4 and requests that it be construed consistent with the remaining claims. The Court agreed with Core Wireless that the terms are not limited to a SIM. Prior to the hearing, Core Wireless agreed to withdraw its contention that the logical blocks embodiment be included in the construction of this term; however, Core Wireless maintained its objection to Apple's "intelligent module SIM" language. Modification as noted above is necessary to avoid legal error.

### 3. Terms 1 and 3 of the '860 Patent

| Term 1 and 3 [Dkt. No. 108-1] | Court's Construction [Dkt. No. 245] | Core Wireless's Proposed Modification |
|---|---|---|
| "**means for receiving on a broadcast channel information related to a service**" ('860 patent, claim 9)<br><br>"**means for receiving said decryption key or data needed to construct said decryption key together with a key or data needed to construct the next decryption key on a channel assigned to said mobile station in connection with a location update procedure**" ('860 patent, claim 9) | **Function:** not disputed.<br><br>**Structure:** "Antenna 901, a duplex filter 902, an RF receiver 911, a detection modulator 912, a decoding block 913, and a control unit 903, as shown in Figure 9 and further described in the '860 Patent at 8:15-21; and statutory equivalents thereof." | **Structure:** "Antenna 901, a duplex filter 902, an RF receiver 911, ~~a detection modulator 912, a decoding block 913, and a control unit 903,~~ as shown in Figure 9 and further described in the '860 Patent at 8:15-21; and statutory equivalents thereof."<br><br>Alternatively:<br><br>**Structure:** "Antenna 901, a duplex filter 902, an RF receiver 911, a detection <u>de</u>modulator 912, a decoding block 913, and a control unit 903, as shown in Figure 9 and further described in the '860 Patent at 8:15-21; and statutory equivalents thereof." |

9

For Terms 1 and 3, as identified in Dkt. No. 108-1, Core Wireless objects to inclusion of the additional components identified above that are not part of the receiving means. *See Asyst Techs., Inc. v. Empak, Inc.,* 268 F.3d 1364, 1370 (Fed. Cir. 2001) ("Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations."); *see also* Core Wireless' Opening Claim Construction Brief [Dkt. No. 122 at 26]. Further, Apple proposed including a structure called "a detection modulator 912" and the Court included this language in its adopted construction. This must be considered a typographical error as the patent never refers to a "detection modulator"; rather, block 912 in the patent is a detection **de**modulator. *See* Figure 9 and '860 patent at 8:19-20 ("The signal is then detected and demodulated in block **912**"). Accordingly, Core Wireless objects to the inclusion of the additional components. Alternatively, Core requests that "detection modulator" be replaced with "detection demodulator."

### D. '959 Patent

#### 1. Term 9 - "dynamic configurations"

| Term 9 [*see* Dkt No. 108-1] | Court's Construction [Dkt. No. 245] | Core Wireless's Proposed Modification |
|---|---|---|
| "**dynamic configurations**" ('959 patent, claims 1, 3, 4, 8, 10, 11, 15, 19) | "a configuration that is not a priori known to the mobile station and so must be communicated from the base station to the mobile station." [Dkt No. 245 at 24] | "Predefined configurations communicated to the mobile station on System Information Block (SIB) type 16." |

The Court adopted its own construction of this term; however, Core Wireless maintains that the patent specification defines dynamic configurations to be predefined configurations communicated to the mobile station on System Information Block type 16. *See* '959 patent at 1:66-2:1; *see also* Core's Opening Brief Dkt. No. 122 at pg. 22-23.

### III. CONCLUSION

For the reasons discussed above, Core Wireless respectfully requests that the Court withdraw its construction for claims no longer in suit, and requests that the above modifications be made to the Court's order.

Dated:  August 5, 2014	Respectfully Submitted,

By:   */s/ Henry C. Bunsow*
Henry C. Bunsow (California State Bar # 60707)
Denise M. De Mory (California State Bar #168076)
Brian A.E. Smith (California State Bar # 188147)
Craig Y. Allison (California State Bar # 161175)
**BUNSOW, DE MORY, SMITH & ALLISON LLP**
351 California Street, Suite 200
San Francisco, CA  94133
Telephone:  (415) 426-4747
Facsimile:  (415) 426-4744
Email:  hbunsow@bdiplaw.com
Email:  ddemory@bdiplaw.com
Email:  bsmith@bdiplaw.com
Email:  callison@bdiplaw.com

T. John Ward, Jr. (Texas Bar # 00794818)
Wesley Hill (Texas Bar # 24032294)
**WARD & SMITH LAW FIRM**
1127 Judson Road, Suite 220
Longview, Texas 75601
Telephone:  (903) 757-6400
Facsimile:  (903) 757-2323
Email:  jw@wsfirm.com
Email:  wh@wsfirm.com

*Attorneys for Plaintiff*
**CORE WIRELESS LICENSING S.A.R.L.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, Federal Express and/or U.S. First Class Mail.

Dated:  August 5, 2014

*/s/ Henry C. Bunsow*
Henry C. Bunsow