1

1        UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF TEXAS
2              TYLER DIVISION

3   CORE WIRELESS LICENSING    |  DOCKET 6:12CV100
     S.A.R.L.                   |
4                               |  AUGUST 1, 2014
     VS.                        |
5                               |  9:32 A.M.
                                |
6   APPLE, INC.                 |  TYLER, TEXAS

7   ----------------------------------------------------------

8          VOLUME 1 OF 1, PAGES 1 THROUGH 46

9      REPORTER'S TRANSCRIPT OF HEARING RE BENCH TRIAL

10         BEFORE THE HONORABLE JOHN D. LOVE
            UNITED STATES MAGISTRATE JUDGE

11  ----------------------------------------------------------

12

13  FOR THE PLAINTIFF:    J. WESLEY HILL
                          WARD & SMITH LAW FIRM
14                        1127 JUDSON ROAD, SUITE 220
                          LONGVIEW, TEXAS  75606

15
                          HENRY CHARLES BUNSOW
16                        BUNSOW, DE MORY, SMITH & ALLISON
                          351 CALIFORNIA STREET, SUITE 200
17                        SAN FRANCISCO, CA 94104

18

19
     FOR THE DEFENDANT:   ERIC M. ALBRITTON
20                        ALBRITTON LAW FIRM
                          POST OFFICE BOX 2649
21                        111 WEST
                          TYLER, TEXAS  75601

22
                          JOSEPH J. MUELLER
23                        WILMER, CUTLER, PICKERING,
                          HALE & DORR - BOSTON
24                        60 STATE STREET
                          BOSTON, MA 02109

25

2

1  COURT REPORTER:          CHRISTINA L. BICKHAM, CRR, RMR
                            FEDERAL OFFICIAL REPORTER
2                           300 WILLOW, SUITE 221
                            BEAUMONT, TEXAS  77701
3

4

5      PROCEEDINGS RECORDED USING ELECTRONIC RECORDING;
    TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1              (OPEN COURT, ALL PARTIES PRESENT.)

2              THE COURT:  All right.  Ms. Morris, you may

3   call the case.

4              DEPUTY CLERK:  The court calls Case

5   Number 6:12cv100, Core Wireless versus Apple.

6              THE COURT:  Announcements.

7              MR. BUNSOW:  Good morning, your Honor.  Wesley

8   Hill and Henry Bunsow on behalf of Plaintiff Core

9   Wireless.

10             THE COURT:  Good morning.

11             UNIDENTIFIED SPEAKER:  Good morning, your

12  Honor.

13             MR. ALBRITTON:  Good morning, your Honor.

14             Eric Albritton and Joe Mueller for Apple.

15  We're ready.  Along with us is (indiscernible), in-house

16  counsel for Apple.

17             THE COURT:  All right.  Thank you.

18             UNIDENTIFIED SPEAKER:  Good morning, your

19  Honor.

20             THE COURT:  Good morning.

21             All right.  Well, we're here -- I wanted to --

22  in light of -- as the course of this case has developed,

23  at various times I've discussed with counsel issues

24  related to these RAND -- how the RAND interaction between

25  the parties occurred and what the parties' positions are
```

4

1   with regard to that and RAND rates, RAND royalties.

2   We've discussed that at various times during the course

3   of the litigation.

4          It was brought into more focus to some degree,

5   although perhaps less focused perhaps in some ways, by

6   the letter briefing procedure.  There were a number of

7   letter briefs devoted to what the court should do with

8   this issue or that issue related to contractual

9   obligations and RAND rates and how that all -- all that

10  interaction should take place as far as the court making

11  determinations.

12         I determined that I was not going to make

13  those -- determine those issues as a matter of summary

14  judgment, leading to a question that I had and that I

15  wanted to explore with the parties.  We've discussed at

16  various times how these issues should be resolved, what a

17  jury would resolve, what perhaps the court's role would

18  be, discussed that at various times and, as I say,

19  brought into greater focus in some respects by the letter

20  briefing procedure.

21         I wanted to go ahead and discuss, before this

22  case got too far down the road to trial, the possibility

23  of the court making some determinations, appropriately of

24  course, not taking away anything from the jury but making

25  appropriate determinations which, A, might help the

1  parties get to a resolution in this matter; B, might make

2  the trial more streamlined and straightforward for the

3  parties and for the jury.

4          Obviously what I've received from the parties

5  preceding today is one party taking the position, Core,

6  that a bench trial would be appropriate in certain

7  respects, Apple taking the position that it would not be.

8  So, we don't have agreement on it.  I understand that.  I

9  think part of my questions today will be what do I do, if

10  anything, with that disagreement.

11          So, I wanted to ask some questions; and then I

12  may have some follow-up orders on things I'd like the

13  parties to submit to me for my review as this case gets

14  closer to trial.

15          So, I don't need any sort of -- I've read your

16  briefs.  I don't need anything along those lines, but I'm

17  going to ask some questions.  And if any of the parties

18  would like to say anything before we get started -- I

19  don't know.  Any change of position, anything like that

20  before I delve into questions, Mr. Bunsow?

21          MR. BUNSOW:  No, your Honor.  I just agree

22  with you.  I think the thinking on this has been evolving

23  not only in this case but in a lot of other cases.

24          THE COURT:  Right.

25          MR. BUNSOW:  This issue is present in a lot of

6

 1  other cases.

 2          THE COURT:  Right.

 3          MR. BUNSOW:  And what we submitted to you

 4  Sunday night is our latest.  Thank you.

 5          THE COURT:  All right.  Thank you.

 6          Mr. Mueller, anything you'd like to say?

 7          MR. MUELLER:  Not right now, your Honor.

 8          THE COURT:  All right.  Well, I guess let me

 9  ask Apple.  Mr. Mueller, why don't you go ahead and go to

10  the podium and just let me ask you a few questions.

11          And, again, this is just an exploration of --

12  I've explored this several times with you, I know.  I

13  don't want to beat a dead horse; but it is a, I think,

14  evolving process as far as how the courts handle this,

15  what's appropriate, what's not.  And, so, this is just

16  kind of, I think, educating for me and for probably you

17  guys as you look at these things in this case and perhaps

18  other cases.

19          So, let me ask this, Mr. Mueller.  I

20  understand from the brief you submitted Apple's position

21  is that Apple does not believe that what I wanted to

22  explore today -- that is, the possibility of a bench

23  trial on certain, just as kind of an umbrella catchall

24  phrase, RAND rates, RAND issues, perhaps contractual

25  obligations, that type of thing, would not be

 1  appropriate.

 2          Now, my question to you, Mr. Mueller, I guess,

 3  first has to do with the concept of could the court give

 4  you -- what becomes apparent to me in reviewing these

 5  materials that the parties continue to submit is this is

 6  very important.  I don't want to say -- it's

 7  determinative in some respects, I think.  Maybe not.  But

 8  I'll say the importance of it that keeps being advanced

 9  and argued and put front and center makes me think that

10  this is very important.

11          So, would some determinations from the court

12  be helpful in, A, helping you and Core settle the matter?

13  I mean, it's possible that this could turn out very

14  favorable to Apple.  You know, I know there's always the

15  risk it could go south.  It could go your way.  But would

16  a non -- not taking anything away that should be resolved

17  by the jury, but whatever the court can resolve -- and

18  maybe there's nothing the court can resolve.  Maybe

19  that's just the way it is.  And this is an evolving

20  situation in the courts, and maybe there is nothing the

21  court could really do and it all should just go to the

22  jury.  And that's fine.

23          But I guess my question is:  Would there be a

24  possible favorability to Apple, and also would it help

25  possibly Apple resolve the matter without the need of a

8

1  full-blown infringement-validity-damage jury trial?

2         MR. MUELLER:  So, if I could take that in

3  parts, your Honor.  Our major position is advanced in the

4  briefing -- and we believe it's the right answer -- is

5  that a pre-jury trial bench trial wouldn't advance the

6  merits and actually could lead to some inefficiencies,

7  and let me explain why.

8         You're a hundred percent right that the FRAND

9  issues in this case are important issues to the parties.

10 They're important issues beyond this case, and there's a

11 lot happening in the law.  So, there's no question these

12 are important issues.  And there is also an important

13 role for the court to play, and I'll get to that in a few

14 moments.

15        But I would say equally important in this case

16 are the basic patent merits.  And even though there are

17 FRAND issues in this case and those issues are

18 significant, the starting point for this case are the

19 patent allegations made by Core Wireless and our defenses

20 to those allegations; and this is not a case in which we

21 are -- you know, the parties are inevitably going to move

22 towards rate setting.  You know, we feel very strongly

23 that their allegations are wrong and that we're going to

24 prevail on liability.  And if we do, this is a moot

25 point.  All of these FRAND questions, the rate-setting

August 1, 2014, Hearing re Bench Trial

9

1  issues, you name it, will not be live issues if, as we

2  hope and expect, we prevail on the merits.

3        So, in that sense this is like every other

4  patent case that your Honor has.  The merits are

5  critical, and we think that we need to proceed towards

6  those merits on the current schedule and try the case.

7        Depending on what happens in that merits

8  phase, we think there could be some other proceedings --

9  and I'm happy to talk to you about our thoughts on ways

10  those could be framed -- that follow the merits

11  proceeding.  But the merits proceeding is the threshold

12  hurdle that the parties need to clear; and if they can't

13  clear that hurdle, the case is over.  And we think they

14  can't.  So, that's the first thing.

15        The second thing is the role of the court.

16  There's a couple pieces to that.  Before the jury trial

17  takes place -- and we hope it takes place as scheduled,

18  in January -- we've asked your Honor and we've moved for

19  *Daubert* and that will be heard and that's a very

20  important motion that we think raises some critical

21  issues for framing the case for the jury on FRAND

22  damages.

23        We will request from your Honor jury

24  instructions that reflect the law in this area, and that

25  also is going to be quite important for structuring the

1  trial for the jury.  So, those are all important

2  functions that we will ask your Honor to play for that

3  jury trial in January.

4           But there's more as well.  Once that jury

5  trial ends, if there were any liability -- and again, we

6  hope and expect there will not be -- there would be some

7  additional questions.  One would be whether your Honor

8  thought there was no reasonable defense such that the

9  first prong of the willfulness test were met and there

10 could be some follow-on willfulness proceeding.

11          Second would be patent unenforceability.  Now,

12 Core Wireless mentioned this in its briefing; and we

13 agree with them that unenforceability of a patent is an

14 issue for the court.  We think the evidence on that will

15 substantially go in as part of the jury trial on the

16 technical merits.  There may be some additional evidence

17 that your Honor would need to hear as part of a separate

18 follow-on proceeding that could occur immediately after

19 and wouldn't take very long at all.  But much of the

20 evidence would go in as part of the patent merits trial,

21 and that would be an issue for your Honor as well.

22          So, the short of it is there are some

23 important functions for the court to play before the jury

24 trial.  There are some issues the court would need to

25 decide, perhaps, after the jury trial.  But our position

1   is the jury trial needs to go first, both to see if this

2   is even a live issue; and there is a second reason as

3   well, your Honor.  And the second reason is the valuation

4   of the patents from a RAND perspective, issues like

5   unenforceability, willfulness for sure.  All of those

6   issues will be substantially instructed for all of us by

7   the evidence that goes in at the trial, and the notion

8   that we could do some one-day proceeding this fall to set

9   a FRAND rate we don't think is practically possible.

10          There's many aspects of the FRAND rate-setting

11  process that turn entirely, or heavily, on the technical

12  evidence.  So, for example, were there available

13  alternatives to the technologies that they say the

14  patents covered, a hugely important issue for determining

15  how much those patents are worth.  If there were five

16  ways to do it and there's no performance benefit to the

17  one that the patents covered, that's going to mean a much

18  lower value.  You know, perhaps they could show a lack of

19  non-infringing alternatives; that might go in the other

20  direction.  We would have to see.  The point is the

21  technical evidence is very important for setting a FRAND

22  rate.

23          They mentioned the *Microsoft* case, the

24  *Innovatio* cases.  Those were substantial proceedings.

25  The *Microsoft* case was an over-one-week bench trial.

1  *Innovatio* was collectively like ten days worth of

2  testimony, including heavy testimony on the technical

3  issues in the case.

4          So, we're not going to be able to do a short

5  proceeding to set a FRAND rate and thereby help the jury.

6  We think the proper course is to put the technical

7  evidence in, have the jury -- if there is any liability

8  at all -- decide damages, FRAND-instructed damages.  And

9  then if there's any remaining damages afterwards, that

10  technical evidence and that trial record would inform the

11  issues.

12          That's what happened in the *Ericsson* case,

13  your Honor, where the jury heard the liability issues,

14  the jury set FRAND damages; and then after that, there

15  were some follow-on proceedings.

16          But we think both from the perspective of

17  deciding whether these are even live issues at all and

18  also the perspective of having the full record necessary

19  to conduct the valuation analysis and the perspective of

20  having the jury decide the issues the jury needs to

21  decide, we go forward on the merits trial.  We do it as

22  scheduled.  And the only question in our view is how do

23  we structure any follow-on proceedings.

24          THE COURT:  And, so, Mr. Mueller, I think I

25  know the answer to this question; but your position is

13

1   there is not a role or a need for the court to be

2   involved -- I understand your position -- pretrial but

3   also post trial.  In other words, Apple's position is

4   that all of this should be resolved by the jury.

5              MR. MUELLER:  That's basically correct, your

6   Honor, in this sense.  The jury should decide the damages

7   like in any patent case.  Now, they should have, we

8   believe, instructions that reflect --

9              THE COURT:  Appropriately instructed, right.

10             MR. MUELLER:  Appropriately instructed.

11             We think they can decide the FRAND

12  properly-instructed damages.

13             We also think the contract claims, which we

14  would suggest could be staged after the patent merits

15  trial, for reasons that I'm happy to explain -- but that

16  breach of contract is a jury claim.  Any damages on those

17  claims, both on our claims or their claims, are jury

18  questions; and a properly instructed jury could decide

19  those issues as well.

20             THE COURT:  All right.  Well, just to wrap

21  this up, I don't think it would be the court's preference

22  to stage the infringement allegations and the breach of

23  contract allegations.  I think it would be the court's

24  preference to -- if we're going to try it to the jury,

25  we're going to try it to the same jury.

14

1          What's your position on that?

2          MR. MUELLER:  So, I'd say this on that, your

3 Honor.  We could do and would suggest the most efficient

4 course would be to have that patent merits trial.  If

5 there's no liability, I can't imagine how the contract

6 claims they've brought could possibly go forward at that

7 point.  The gist of the claims is that Apple is not

8 negotiating in good faith for the patents-in-suit.  If

9 there is no infringement or they are invalid, that claim

10 would seem to be dead.  So, there's no need for the jury

11 to decide it if that's their finding.

12          If, however, they were to find liability on

13 one or more of the patents, the jury could be held over

14 to decide those contract issues in a short second stage.

15 Now, here's the reason why we think that's appropriate,

16 your Honor.  There's going to be -- and you'll hear more

17 about this, I'm sure, over the next few months -- some

18 very tricky evidentiary questions on the contract claims

19 in particular; and Core Wireless alluded to some of them

20 in their briefing.

21          I take it that they intend to put in front of

22 the jury certain correspondence they've marked Rule 408.

23 And there is a dispute, I think -- or at least

24 uncertainty -- as to which of the correspondence between

25 the parties and discussions between the parties would be

15

1  408 protected which might be subject to a mediation

2  privilege pursuant to the court's mediation proceedings.

3  There are some very difficult issues along the

4  admissibility lines.

5          In addition, there's prejudice issues.  You

6  know, we think the jury should decide liability with a

7  focus on the patent claims being applied to the accused

8  products and the prior art, period, and not have, you

9  know, tainting their view of those core merits any side

10 issues involving correspondence between the parties.

11 That's exactly what Rule 408 is intended to prevent.

12         And, so, these evidentiary questions which are

13 difficult don't need to be addressed in the patent merits

14 phase; and they may be moot entirely if we went on

15 liability.  But if we didn't, we could hold the jury over

16 and do a short follow-on proceeding on any residual

17 contract claims.  And, again, that's very similar to what

18 happened in the *Ericsson* case.  The jury was held over

19 after the initial determination.

20         THE COURT:  All right.  Thank you.

21         Okay.  Let me hear -- Mr. Bunsow, let me ask

22 you a couple of questions.  There's obviously no

23 agreement among the parties as far as a pretrial

24 proceeding here; so, if the court does not proceed with a

25 pre-jury trial bench trial, I believe you've indicated to

 1  me in earlier proceedings that your position -- and

 2  perhaps it's evolved -- would be that a jury trial would

 3  be appropriate on these FRAND issues that we've been

 4  talking about.

 5          My question, I guess, is -- as to Mr. Mueller,

 6  the same thing I'm going to ask you -- is there a post

 7  jury trial role/function for the court to play on these

 8  FRAND issues or damage issues; or should it, if you don't

 9  get a pretrial bench trial, just go to the jury?  What's

10  your position on that?

11          MR. BUNSOW:  So, I think what Mr. Mueller is

12  suggesting is really putting the cart before the horse in

13  this particular situation.  They alluded in their filing

14  of yesterday to some comments that I made previously.

15  I've got that transcript.  But if you look at it, what I

16  was talking about was the portfolio situation.  We're

17  litigating eight patents in this case.  Does that mean we

18  have a follow-on trial of eight more and we have a

19  follow-on trial of eight more?  This was on the motion

20  whether or not to go forward with our counterclaim for a

21  portfolio license.  That's what those comments were

22  directed to.

23          And our thinking is evolving on this.

24  Absolutely.  But as we look at the trial, I think you

25  have to say, "Okay.  What does this trial look like?"

1  Mr. Mueller wants a determination on the merits and a

2  January trial.  I agree.  Let's get a determination on

3  the merits of the patent issues in a manageable trial in

4  January.

5          The question is what is the potential impact

6  of, in particular, the ETSI contract issue; so, let me

7  give you an example.  Apple claims that, for a couple of

8  reasons, we did not comply with our ETSI obligation and,

9  therefore, the patents are unenforceable.

10          Why have a jury trial, present that evidence

11  to the jury when it's a legal determination, and then try

12  to decide that post jury trial when it's exactly the type

13  of issue that can be decided by the court in advance

14  based on the interpretation of the ETSI rules?  I mean,

15  that's a legal determination.  There are no factual

16  disputes about that.  We did what we did when we did it.

17  No factual disputes whatsoever.

18          And the question is, for the court, under the

19  ETSI rules what's the result of that.  Do we lose our

20  right to enforce the patents or not?  A jury can't decide

21  that.  A jury is not going to be tasked with deciding

22  what the ETSI language means.  That's exactly the

23  antithesis of what jury trials are all about.  So, that's

24  the first thing that we believe should be decided before

25  any jury trial and can be done by the court in a very

1 efficient way and clear that out and help make the jury

2 trial manageable.

3       The contrary -- the other side of that, of

4 course, is our claim that Apple has not complied with its

5 obligations as a member of ETSI and that that has two

6 impacts.  Most dramatic for the jury trial is that it

7 does not allow Apple to claim a FRAND royalty rate

8 anymore.  So, it has a direct impact on the damages

9 consideration by the jury.  Is the jury going to be told

10 at trial that they're limited to a FRAND determination?

11 That's what Apple would have the court do.

12       But if we do a post-trial hearing on Apple's

13 FRAND and ETSI obligations, that will nullify the jury

14 verdict if we win and it turns out that Apple is not

15 entitled to FRAND damages.

16       So, those two issues should be decided in

17 advance of trial.  They should be decided so that the

18 court can frame the issues appropriately for the jury

19 clearly.

20       We have gone on to explain why other aspects

21 of -- other issues in the case should be decided as well,

22 primarily because there are simply no disputed factual

23 issues about them.  But, you know, we all agree that the

24 FRAND issues are important.  Apple has pleaded that the

25 FRAND issues are determinative on liability.  We have

1 pleaded that the FRAND and ETSI issues are determinative

2 on at least damages and possibly remedies, opening Apple

3 up to potential injunctive relief, which is also for the

4 court.  So, it makes no sense to us to present all of

5 that in the context of what is otherwise a

6 straightforward patent infringement case when it should

7 be decided in advance by the court.

8             You can't do it afterwards because you would

9 have to reset what the jury had already done.  So,

10 basically if you decide afterwards that Apple is not

11 entitled to a FRAND determination, then we're going to

12 have to have another damages trial.  You'd have to set

13 aside the jury verdict and have another damages trial.

14             So, that's why we've proposed that the court

15 take these legal issues.  They're very focused.  I think

16 they're very manageable, and I think we could do it in

17 one day with the appropriate briefing.

18             THE COURT:  Well, I understand that's your

19 position and I appreciate that and it's something to look

20 at.  But what do I do with the fact that Apple doesn't

21 agree to a pretrial determination such as you're talking

22 about?

23             MR. BUNSOW:  Well, two answers to that.  First

24 of all, these are pure legal determinations for the

25 court; and I don't think Apple has any say in that.  If

1  it's a legal determination for the court, then you can

2  scream for a jury trial all you want; you're not entitled

3  to a jury trial, constitutionally or otherwise.

4         THE COURT:  Well, and that seems to be where

5  the disconnect is between the parties here; and maybe

6  that's what I need to get you to specifically brief is.

7         MR. BUNSOW:  Sure.  So, let's look at what the

8  jury trial would look like as Apple proposes it.

9         THE COURT:  What I need to understand from

10 you, Mr. Bunsow, is you say they're legal issues.  If

11 they're purely legal issues that's for the court to

12 resolve, specifically identify what those are and then

13 let me get Apple to respond to that.

14         MR. BUNSOW:  Sure.

15         THE COURT:  If it's as you're saying, that

16 they're not entitled to a jury trial on this, and it's as

17 you described, then perhaps I agree that a pretrial

18 determination of those issues would be appropriate such

19 that the jury can appropriately assess damages such that

20 we would not have to come back and have another jury

21 trial, depending on what the court found.  So, identify

22 for me specifically what the legal issues are here and

23 let me get Apple to respond to that.

24         MR. BUNSOW:  Okay.  So, on Apple's claim it's

25 based on the explicit wording of the ETSI regulations.

1  Nokia and Core are both members of ETSI.  They made

2  declarations, including the patents-in-suit, at

3  particular times.  So, what the court will be asked to

4  decide is what those regulations mean legally.  That is

5  not a question to be submitted to the jury.  The

6  regulations say what they say; and to what extent they

7  impose legal obligations is for the court, not for the

8  jury.  This is just like interpreting a statute, for

9  example.

10         On the flip side of that is Apple's obligation

11 as a member of ETSI, which is also specifically

12 determined with reference to the ETSI regulations.  So,

13 the court will be asked, as a matter of law, to determine

14 the nature and extent of Apple's obligation as a member

15 of ETSI who seeks to take advantage of the FRAND benefit

16 that comes with that membership.

17         So, these obligations are based on the ETSI

18 written documents that have been in place for many years

19 and the interpretation of those written documents.  Those

20 are not factual issues.  Those are not disputed issues.

21 Those are issues of law.

22         THE COURT:  All right.  Let me have

23 Mr. Mueller respond to that.

24         MR. MUELLER:  Sure.  There may be some room

25 for agreement on these issues if what I heard as the

1  legal issues that would be presented to your Honor -- if

2  I understand that correctly.

3          Now, I'm not sure this would require a bench

4  trial; and, in fact, I don't think it does.  But if we're

5  talking about some pure questions of law, these, in fact,

6  may be some of the things that we had in our briefing in

7  different parts -- I know there's a lot of briefing that

8  went in to your Honor -- in the letter briefing on

9  requests for summary judgment.  And we might be able to

10 pull out of that certain issues that seem to be at the

11 crux of what they are seeking and have, you know, some

12 form of summary judgment hearing essentially on the legal

13 questions, on the legal questions alone.

14         That may be something that we can all agree to

15 and have your Honor conduct it and, you know, rule on

16 that before the January trial.  So, let me see if I can

17 take my best crack at distilling what was said.

18         I think there were two arguments made as to

19 the implications of Core Wireless' contract claims for

20 the jury trial; and they were, first, that if they are

21 right about the ETSI obligations, that could somehow

22 result in them being released from their FRAND

23 commitments for damages purposes and that the jury would

24 no longer need to be instructed on the FRAND

25 obligations.

23

1       We think as a matter of law, that's just
2   clearly wrong.  No case has ever said that.  I'm not
3   aware of a shred of authority to support that; and we
4   would be very happy to have your Honor decide that legal
5   question before the jury trial, whether the ETSI
6   obligations could somehow be discharged in the way that
7   they are suggesting.  That is a legal question, we agree,
8   and certainly one we would be happy and pleased to brief
9   to your Honor.

10       The second was injunctions, the notion that
11  somehow their contract claims could result in their being
12  able to seek an injunction.  We think as a matter of law,
13  there is absolutely no way, as a nonpracticing entity
14  asserting FRAND-committed patents that didn't even
15  request an injunction in their pleadings, they should be
16  allowed to seek an injunction.  And, again, we would be
17  happy to deal with that on the briefs to your Honor as a
18  matter of law.

19       So, those are two concrete legal issues --
20  whether they could be discharged from their FRAND
21  commitment for purposes of damages and whether they could
22  conceivably seek an injunction -- that we would be, as I
23  said, pleased to brief to your Honor and have your Honor
24  decide as a matter of law before the jury trial.

25       The other issue that was mentioned was

August 1, 2014, Hearing re Bench Trial

24

1  unenforceability as a consequence of our contract claims.

2  I think actually it's a consequence of some of our

3  equitable defenses that we've pleaded.  And we agree

4  those are issues for your Honor.  I don't think, however,

5  they could be dealt with before the jury trial because

6  they deal with the patents being untimely disclosed to

7  standard-setting organizations; and there is just factual

8  evidence that would need to come in as part of the

9  technical testimony.

10         For example, there's going to need to be

11  testimony on working groups at ETSI that considered

12  various proposals and the chronology by which they did

13  so.  Those are very much factual questions that

14  your Honor would need to have a record on before

15  rendering a judgment on unenforceability.  Also note

16  those are our defenses, and we're not asking your Honor

17  to decide those now.

18         I think with respect to the claims they've

19  presented, the two arguments I heard as to how those

20  claims could impact the jury trial are, first, releasing

21  them from their FRAND commitment and, second, this

22  possibility of seeking an injunction.  And we think as a

23  matter of law, both of those positions are incorrect and

24  positions that your Honor could resolve prior to the jury

25  trial.

25

1        So, if those are the issues on the table, we

2   agree; but I think the appropriate vehicle would be some

3   form of dispositive motion briefing as opposed to a bench

4   trial.

5        THE COURT:  Okay.  Mr. Bunsow, response?

6        MR. BUNSOW:  Well, it sounds like we've got

7   partial agreement; and that's a step in the right

8   direction.  As to the Apple defense of unenforceability,

9   it is based entirely on supposed late disclosure.  There

10  is no dispute as to when disclosures were made.  As we

11  pointed out in our memorandum to the court, this is not a

12  new theory by Apple.  They have tried it in two other

13  cases, and They have lost it in both of those other

14  cases.

15       So, I think my concern expressed earlier that

16  we should not go through a full-blown jury trial when we

17  have a legal issue of enforceability, yea or nay, that

18  could be decided by the court, only to give Apple another

19  bite after the jury trial on whether or not they're

20  liable.

21       So, all three of those issues should be

22  decided before the trial, including Apple's, as

23  Mr. Mueller conceded, equitable defense.  It's an

24  equitable defense.  Equitable defenses are tried to the

25  court.  That's *Hornbook* law.

1           So, I think if --

2           THE COURT:  Well, Mr. Bunsow, to the point,

3    though, that Mr. Mueller has raised several times -- and

4    I think the typical practice from the court, of course,

5    would be, as to unenforceability, that that be developed

6    during the course of the trial, that record.

7           Now, that testimony that is not appropriately

8    submitted in front of the jury, that could be heard on a

9    post-trial basis as a supplement to the record developed

10   at the jury trial with this being outside the presence of

11   the jury; and then the court can make determinations

12   based upon that.  I think that's typically appropriate.

13          So, I think that to the extent we're talking

14   about developing things that would typically be done in a

15   jury record, I think that's their point.  So, I guess,

16   you know, if we're starting to go in those areas, then --

17          MR. BUNSOW:  I understand their --

18          THE COURT:  -- perhaps that would not be the

19   best route to go.

20          MR. BUNSOW:  I understand their point and I

21   understand your point and I've been there, done that.

22   And typically this arises with an inequitable conduct

23   defense, and inequitable conduct defenses are very

24   factually intensive.  And that record is developed

25   during the course of the trial in terms of who said what

1    to the Patent Office and when and all those sorts of

2    things.

3              But this is different.  This is an accusation

4    by Apple that a disclosure that was not made by a

5    particular time renders the patent unenforceable.  This

6    is a pure legal issue, again, based on the ETSI

7    regulations just like our claims are based on the ETSI

8    regulations, in fact, maybe even more so because they

9    deal directly with disclosure obligations which are

10   clearly set forth in the ETSI obligations.

11             So, it's really a very narrow legal issue.

12   It's not the type of factual issue that comes up in an

13   inequitable conduct defense where evidence will be taken

14   outside the jury during the course of the trial.  It's

15   really much different than that, and I think you have to

16   look at the evidence that -- the supposed evidence that

17   will be presented.

18             So, what is Apple going to present to the jury

19   in terms of its unenforceability defense?  Well, they're

20   going to present copies of the ETSI rules.  Now, that's

21   not something for the jury to interpret.  They're going

22   to present presumably Mr. Palmer to say, "I'm an expert

23   in French law, and these rules mean thus-and-so."  That's

24   not a determination for the jury.

25             Those are determinations for the court, and

1  all of these ETSI obligations should be determined in the

2  same package because the court is going to have to dig

3  into those ETSI rules to determine any of them anyway.

4  They're all legal issues.  They should all be determined

5  at the same time in advance of the trial.  It's very

6  different than the inequitable conduct enforceability

7  type of defense.

8          MR. MUELLER:  Just a couple of words, your

9  Honor?

10          THE COURT:  Okay.  Yes.

11          MR. MUELLER:  Just briefly, your Honor, a

12  couple of points.  The unenforceability record on these

13  untimely disclosure issues would be something that would

14  need to be factually developed as part of the full trial.

15  That said, there could be some piece that would be heard

16  outside the jury's earshot but it certainly can be done

17  as part of a jury proceeding and I've actually tried

18  these types of questions before to juries and there was

19  no procedural impediment to doing so.

20          But I definitely take Mr. Bunsow's point that

21  there could be some piece of that that your Honor should

22  hear separate from the jury; and we think that's true for

23  other claims in the case as well, that the first jury

24  trial -- the jury trial in chief, so to speak --

25  shouldn't have all of the issues be part of it.

1          I mentioned this earlier, your Honor.  But the

2    contract claims, even if those were to ultimately be

3    decided by the jury, those raise evidentiary questions

4    that the jury in deciding the first merits case shouldn't

5    hear.  And if I could be more concrete, they are claiming

6    that the course of correspondence between the parties and

7    offers made and received -- some of which were made

8    pursuant to mediation, some of which were made pursuant

9    to Rule 408 -- should come in and be heard by the jury.

10          Now, to the extent Apple were to make an

11    offer, that could color the jury's view of the merits and

12    be highly prejudicial to their consideration of the core

13    liability issues.  We don't think that's appropriate.  We

14    think the jury should decide the patent merits based on

15    the patent merits and not be tainted by evidence that

16    they shouldn't hear.

17          So, I do think that there is going to need to

18    be some staging of the proceedings; and perhaps as part

19    of that, we could have any unenforceability evidence that

20    only your Honor should hear received by your Honor after

21    the jury has heard the merits case and decided the merits

22    issues.

23          I don't think this would result in anything

24    cumbersome or hard to pull off.  We're talking about an

25    extra day or two tacked onto the end of the jury trial

1  where either they would be held over after they rendered

2  their initial verdict for one more day's worth of

3  testimony and/or your Honor would hear some additional

4  testimony bearing on the bench issues.  But that would

5  set up a process whereby we would first get a full record

6  and a decision on the threshold issues, which could end

7  the whole thing.  It could all be over at that point.

8  But if it's not, the residual jury issues, including

9  those that relate to evidence that really shouldn't be

10  heard as part of the first trial, or the residual bench

11  issues, could be efficiently and quickly taken up at the

12  end; and we think that's the best way to do it.

13          THE COURT:  Okay.  Thank you.

14          Anything else?

15          MR. BUNSOW:  I just want to make a practical

16  point, your Honor.  What Apple is proposing is decide all

17  of Core's issues that may impact Apple -- whether they're

18  entitled to FRAND, what their relief might be, whether

19  they've breached their obligation -- in advance of the

20  jury trial.  We're in favor of that.

21          But Step 2 is let's put all of Apple's

22  defenses in with the patent merits.  Let's mix it all up

23  in with the patent merits so that the jury not only has

24  to consider a very technical patent case but now has to

25  consider ETSI regulations, timing of disclosures.

1  Mr. Mueller alluded to meetings and technical discussions

2  and all of those sorts of things.  That has the risk of

3  overwhelming a jury determination on the merits.  We're

4  all in favor of a jury determination on the merits.  It's

5  impractical.

6          The third problem is until Apple's equitable

7  defense of unenforceability is determined, there is

8  likely no chance of resolving this case.  That is

9  something that they have been pushing.  They've pushed it

10  in two other cases, unsuccessfully in those two other

11  cases.  It was held against them in those two other

12  cases.

13          They're trying to make a law that they can

14  latch onto in terms of ETSI disclosures for this case and

15  for other cases.  Fair enough.  You know, I'd be doing

16  the same thing.  But the fact of the matter is the ETSI

17  rules are subject to legal interpretation.  There are no

18  factual disputes about the disclosures.  They occurred

19  when they occurred.  They're matters of record.  They're

20  matters of ETSI record.  There is no dispute about that.

21  So, that needs to be determined as well.

22          There is no way that the jury should decide

23  those, and it makes no sense to burden the jury record

24  with it.  It will just muck up the jury case, for lack of

25  a better phrase.  Thank you.

1          THE COURT:  All right.  Thank you.

2          MR. MUELLER:  May I be heard?

3          Respectfully, your Honor, we agree the first

4 jury trial should be kept as simple as possible.  And to

5 the extent that there's pieces of the unenforceability

6 case that could be sequenced after they render their

7 verdict on the core merits, we're in favor of that, your

8 Honor.  We very much want to have an understandable

9 patent merits case decided first.

10          THE COURT:  Well, let me say this.  You know,

11 I am in no way trying to take anything away from a jury.

12 I think, you know, juries and this jury that will be

13 impaneled in this trial will do an excellent job.  They

14 are going to try their best.  They are perfectly -- they

15 handle complex cases around this country every day.  They

16 are perfectly capable of doing it.

17          I'm also not intending and not desiring to

18 take anything away from a jury that should be decided by

19 a jury.  That's fine.  That is the way our system works

20 and the way it's going to work here in this case.

21          All I'm just exploring are the possibility of

22 somewhat streamlining things for counsel, the parties,

23 and the jury; looking at the possibility, if there are

24 legal issues, of perhaps handling those in a pretrial

25 manner or also exploring post-trial manner to, as I say,

1  help streamline that trial; also perhaps help the parties

2  resolve the matter without the expense perhaps of a

3  full-blown jury trial which, again, if that's what the

4  parties want, that's perfectly fine and we'll try it and

5  you'll have your answer.

6           So, that's all I'm trying to do.  I'm

7  perfectly confident in a jury.  They can handle it.  They

8  handle complex civil and criminal cases all over the

9  country every day, and they'll do it absolutely fine

10 here.

11          I'm also not trying to take any jury issue

12 away at all.  We're going to try this case to a jury.

13 That's fine.  The two goals are perhaps helping resolve

14 things one way or the other and getting some answers,

15 some structure to what the jury is being asked to do

16 without perhaps, you know, putting things in that they

17 just -- it's not for them to decide.  Not that they

18 couldn't decide it; it's just not for them and would help

19 them and help the counsel to structure their cases more

20 clearly for the jury.

21          All right.  I'm going to take about a five- or

22 ten-minute recess and then we'll come back and I may have

23 some orders for you to comply with.  We'll be in recess

24 about ten minutes.

25          (Recess, 10:15 a.m. to 10:34 a.m.)

August 1, 2014, Hearing re Bench Trial

34

1          (Open court, all parties present.)

2          THE COURT:  All right.  What I'm going to do

3  is -- in the discussion this morning there appears to be,

4  I believe, some agreement here that there are certain

5  perhaps, I'll say, "narrow" issues that the court can --

6  perhaps needs to resolve, it appears, you know,

7  characterized as "legal issues."

8          What I'm going to order the parties to do

9  is -- based on what we've talked about today is to meet

10  and confer and by August 15th submit to the court issues

11  the parties can agree to -- agree that are legal issues.

12  Set those out for me.  Here's the issue for the court.

13  Okay?  That's one.  I want you to submit that by

14  August 15th.

15          Number 2, I want you to submit to me basically

16  your findings, your conclusions the court needs to make

17  on that issue, obviously characterized as you believe the

18  court should resolve it, proposed findings and

19  conclusions.  So, here's the issue.  Here's Core's

20  findings and conclusions how it should come out, and

21  here's Apple's.  Here is the next one.  Set those out for

22  me.

23          What I would also like you to do is, on the

24  same date -- now, the extent of this -- there may be some

25  flexibility on this; but what I want is with those issues

August 1, 2014, Hearing re Bench Trial

35

1   submitted, with the proposed findings and conclusions

2   submitted, that each party submit to me their jury

3   instructions and the verdict form that is related to

4   those issues.

5            Now, that may not have to be at this point.  I

6   believe the jury instruction deadline is October 31st.

7   It may not have to be -- it's not your full jury

8   instructions.  It's not -- perhaps doesn't have to be

9   your full RAND instructions, but how it would look if --

10  say the court resolves the legal questions in Core's

11  favor; and, so, then Core will propose these jury

12  instructions.

13           Now, I know if the court resolved it against

14  you, it might be different; but I just want to see what

15  each side's proposed instructions are based on an

16  affirmative -- a favorable finding on this particular

17  legal issue.

18           Now, if you can, I would like to see your full

19  FRAND instructions and verdict form.  Now, August 15th

20  may be -- I'll give you some more time on that, but I'd

21  like to go ahead and see this as soon as possible.

22           I think what I will do is this.  I'll give you

23  the option to give me those jury instructions and verdict

24  form by August 15th that pertain to these legal issues.

25  If that's more limited than full FRAND instructions,

36

1   that's fine.  But I'd like the full FRAND instructions by

2   the end of this month, by August 31st.  I think that

3   would help me go ahead and start looking at it and get

4   my mind oriented on where the parties are going with

5   this.

6            Now, I know this is somewhat kind of up in the

7   air; and I'm not locking anybody into anything.  But I

8   think for y'all to sit down and identify some legal

9   issues you can agree to, tell me what each party's

10  position on those are, and also go ahead and sit down and

11  see where you can agree on FRAND issues and where you

12  can -- y'all sit down and look at that and let me look at

13  it, I think would be helpful.

14           Now, I think we've narrowed -- I brought y'all

15  here today to discuss this FRAND obligation, FRAND

16  issues.  I think we've narrowed it substantially to maybe

17  some legal issues that the court may be able to resolve

18  and might help the parties.  But I think we're sort of at

19  an early stage here, and I just want to get those

20  identified after you talk.  I want to get your positions

21  on those particular issues, and then I want to get your

22  jury instructions based on where you think the court

23  should go on those legal issues.

24           All right.  Any questions from the plaintiff?

25           MR. BUNSOW:  I believe that at least as we sit

1 here today, we have a situation where Core is amenable to

2 having some of those issues determined that Apple wants

3 determined.  Apple is not amenable to having ETSI issues

4 determined that Core wants to have determined.  It puts

5 us in a bit of a situation.

6          THE COURT:  Well -- and here's what I'm

7 saying.  I want the parties to see if they can agree on

8 something.  If you can't agree on it, then, you know,

9 we'll deal with it down the road.  But I'm talking about

10 things you can agree on.

11          Now, there's going to come a point, if there

12 are legal issues, the court is going to have to resolve

13 them some way.

14          MR. BUNSOW:  Right.

15          THE COURT:  And that's going to be pretrial or

16 post trial, somewhere along the way.  I want to just, you

17 know -- I don't know how this will turn out.  I don't

18 know what the court's next step will be.  I will say that

19 I am wanting to resolve these so-called "legal issues" on

20 a matter where I give the parties -- I want live

21 testimony on these.  I want to see the experts.  I want

22 to give you an opportunity to present to me -- if there

23 is a fact witness that's got some bearing on this issue,

24 I want to hear from them.

25          So, I don't know what the next step will be;

August 1, 2014, Hearing re Bench Trial

38

1  but I want y'all to try to agree -- and, Mr. Bunsow, if

2  you feel that's the way this is going and you don't want

3  to agree -- but I will say it may be beneficial for each

4  side to sit down and, no matter when you think it needs

5  to be resolved, if it's a legal issue, identify it.

6            MR. BUNSOW:  Right.

7            THE COURT:  And, you know, if you think

8  it's -- you just tell me, "Legal issue:  Core says

9  pretrial; Apple says post trial."

10           MR. BUNSOW:  Right.

11           THE COURT:  Just give me that and then give me

12 what your -- "and the court should resolve this this way

13 because one, two, three."

14           MR. BUNSOW:  Right.

15           THE COURT:  Apple says, "No.  You should

16 resolve it this way because one, two, three.  This

17 evidence shows this.  This evidence shows this.  This

18 evidence shows this."

19           MR. BUNSOW:  Right.

20           THE COURT:  And then I'll look and see how to

21 approach it from there.

22           MR. BUNSOW:  That's fair.  We're happy to

23 engage in the process, and we just want to make sure it's

24 a two-way street.

25           THE COURT:  Okay.  All right.

39

1        Mr. Mueller?

2        MR. MUELLER:  Just briefly, your Honor.

3        I think we're going to be able to reach some

4  common ground on these issues.  You know, we're certainly

5  going to do our best to find issues that we can bring

6  before your Honor to resolve.  And I think I've heard

7  today some candidates, and we'll continue to mull over

8  some others as well.

9        Just a couple quick logistical questions if I

10  could, your Honor.  On the 13th -- I'm sorry -- the 15th,

11  the date the 15th, those submissions, as I understand it,

12  would be limited to those areas where we decide jointly

13  that your Honor should decide certain questions and, on

14  those issues we agree on, put in proposed findings of

15  fact and conclusions of law and perhaps our suggestions

16  on our process for adjudicating them.  But we would not

17  also be including issues that we have not reached

18  agreement on; is that right?

19        THE COURT:  Yes.  My intention had been for

20  y'all to agree on issues.  Now, you know, I mean, at the

21  risk of expanding this, you know, it may be that if one

22  side says, "Well, here's a legal issue that should be

23  resolved by the court" and the other side says "No," it

24  may be good for me to see that, too.

25        You know, I think that the way -- I think what

40

1  we'll do is we'll limit this to issues the parties can

2  agree on at this point.  Now, again, I think, you know,

3  if there are other issues that the parties have

4  disagreement on, then the court is going to have to

5  resolve that at some point.  I think most likely that

6  will be done as a matter of what will be submitted to the

7  jury, a matter of jury instructions and jury questions;

8  and then that may have to be resolved on a post-trial

9  basis if the court decides it's a legal issue.

10  Conversely, if we get down to it at pretrial and there is

11  an issue the parties can't agree on, the court may have

12  to make a determination on it pretrial.

13          But I think -- the focus of what I'm trying to

14  get at here is what y'all have talked about today.  There

15  seemed to be some agreement, and I want y'all to try to

16  agree and submit those -- as I say, identify those if

17  it's pretrial or post trial.  Let me know the parties'

18  positions on that, but just that statement and then how

19  the parties think it should come out.

20          MR. MUELLER:  Fair enough.

21          And in that submission on the 15th, would it

22  be appropriate if we did it in sort of letter briefing

23  format to your Honor?

24          THE COURT:  No, do it as a filing.  I want it,

25  you know, a joint submission pursuant to the court's

1  order of August 1st.  And then, as I say, just identify

2  agreed legal issues.  Tell me what stage each party

3  thinks or, if there is agreement, when it should be

4  resolved and then just a brief, "Here is the way the

5  court should come out on it, and here is why."

6           And I want it, you know, really pared down.

7  This is just a notice to the court.  It's not your

8  evidentiary briefing and not your evidentiary submission.

9  But I just want to get a brief sort of proposed, "Here is

10 the way the court should find, and here is briefly why."

11           MR. MUELLER:  Understood.

12           Last question, your Honor.  So, for the end of

13 the month, I understand, your Honor, that we should be

14 submitting FRAND jury instructions and verdict form.  And

15 just so we're clear, as we envision the jury instructions

16 that would be given at the merits trial, those would bear

17 on damages.  There's a separate and, I think, more

18 complicated question about what to do with these contract

19 claims.  You know, for reasons that we've explained in

20 prior briefing -- I won't belabor them today -- we don't

21 think there is any, you know, legal theory that supports

22 some of what they're pleading.

23           But in any event, it's a much more complicated

24 set of issues.  There is the evidentiary questions we

25 talked about, including the mediation and 408 issues.  I

42

1  would respectfully suggest, your Honor, that we limit the

2  31st to the jury instructions that would be appropriate

3  in the patent merits and damages trial; and then we could

4  take up, perhaps in the October 3rd submission, any other

5  issues.

6          THE COURT:  I think that's fine.  I mean, I'm

7  just wanting to, you know, get sort of a general feel and

8  flavor for how each party is presenting this, where the

9  disputes are.  It doesn't have to be comprehensive.  You

10  know, there are probably some issues the court is going

11  to have to resolve down the road.

12          But I want on the 15th jury instructions that

13  pertain to what we're talking about, these legal issues;

14  and then the 31st is a more broad damages submission.

15  Again, I'm not locking anybody in.  I just want to see

16  where the parties are going on this.

17          MR. MUELLER:  Understood.  Thank you, your

18  Honor.

19          THE COURT:  All right.

20          MR. BUNSOW:  May I just make one point, your

21  Honor?

22          When you first described the 15th and the

23  31st, what I thought you were doing was saying let's use

24  the submission on the 31st to see what the jury trial

25  would look like if these issues are included in the jury

43

1    trial.  And I think that's a useful exercise because I

2    think it would be very enlightening to see what these

3    issues look like if they are going to be presented to the

4    jury.

5            What I just heard Mr. Mueller suggest is that

6    the filing on the 31st would not include those issues,

7    and I don't think that's a useful exercise.  Why would we

8    submit merits-based damage instructions?  I mean, you can

9    look at the form book and get those.

10           What I want to see is what Apple's

11   instructions look like when they're saying that the

12   patents are unenforceable, what ours look like when we

13   say that Apple is not entitled to a FRAND rate anymore.

14   I think those would help the court.

15           MR. MUELLER:  If I could, your Honor, I think

16   what I understood was on the 15th we'd spell out here's

17   the issue.  Here's why we think we're right.  Here's why

18   they think they're right, and then here's the implication

19   of that issue in terms of the structure of the

20   proceedings to follow.

21           That may take the form of jury instructions.

22   For unenforceability I don't think there would

23   necessarily be a jury instruction, but we could still

24   spell out here is the implication of it.  And I think

25   that would be a useful exercise.  You know, we would say

44

1   here is the issue, here is our position, and here is the

2   affect if we're right, if they're right.

3            THE COURT:  Well, look, all I'm saying is I

4   just want -- on the 15th if you can agree to some legal

5   issues, I want you to identify those; and then I want the

6   jury instructions, how they would look based upon the

7   court's determination, say in Core's favor on those

8   issues or in Apple's favor, what would it look like.  On

9   the 31st I'm broadening that out to more of just a

10  generalized here's how it would -- each side is going to

11  propose jury instructions look.

12           I'll leave it to y'all on, you know, the

13  specifics of that.  I'm not trying to get down to that

14  level of detail at this point.  But I do think the more,

15  the better for the court to understand and for the

16  parties to understand.  I think everybody knows what each

17  party's position is.  It's just a matter of articulating

18  that in a jury instruction.

19           So, yes, I mean, I want those submitted to

20  the -- I mean, if Apple's position is these need to be

21  developed in a jury trial record, you submit those

22  instructions the way you're going to propose them, the

23  way they're going to look.  So, don't hold back.  The

24  31st is the full breadth.

25           Now, if there is some reason why you don't

45

1  want to submit something, you know, we'll take that up;

2  but --

3          MR. MUELLER:  Yeah.  And that makes perfect

4  sense, your Honor.  The only point I was making is on the

5  31st, as I understand your Honor, that would be the jury

6  instructions -- the full set of FRAND-related jury

7  instructions for this merits trial; and I think there

8  still are substantial questions that are going to take

9  longer than that to figure out about any follow-on

10 proceedings on contract claims and the rest.  That's all

11 I'm saying.

12         THE COURT:  If that's Apple's position -- I'm

13 just talking about if Apple's position is we should be

14 resolving some things in a staged proceeding, then, you

15 know -- well, Mr. Mueller, actually, you know, I really

16 don't -- I think just submit everything on these damages

17 issues.  Just submit it all.  Okay?

18         MR. MUELLER:  Thank you, your Honor.

19         THE COURT:  All right.  I mean, if you think

20 it's a staged proceeding, submit both stages.  I want to

21 see it all.

22         MR. MUELLER:  Great.

23         THE COURT:  All right.  Anything else?

24         MR. MUELLER:  No, your Honor.

25         THE COURT:  Anything else from the plaintiff?

46

1           MR. BUNSOW:  Thank you, your Honor.

2           THE COURT:  All right.  Thank you, and we're

3  adjourned.

4           (Proceedings concluded, 10:50 a.m. )

5  COURT REPORTER'S CERTIFICATION

6           I, court approved transcriber, hereby certify

7  on this date, August 11, 2014, that the foregoing is a

8  correct transcript from the official electronic sound

9  recording of the proceedings in the above-entitled

10  matter.

11

_Christina Bickham_
   CHRISTINA L. BICKHAM,     CRR,     RMR

13

14

15

16

17

18

19

20

21

22

23

24

25