1                    IN THE UNITED STATES DISTRICT COURT

2                    FOR THE EASTERN DISTRICT OF TEXAS

3                              TYLER DIVISION

4    CORE WIRELESS LICENSING,       )(

5    S.A.R.L.                       )(    CIVIL DOCKET NO.

6                                   )(    6:12-CV-100-JRG-JDL

7    VS.                            )(    TYLER, TEXAS

8                                   )(

9    APPLE INC.                     )(    MARCH 4, 2015

10                                  )(    10:14 A.M.

11                        PRE-TRIAL HEARING

12          BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

13                 UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16   FOR THE PLAINTIFF:  (See sign-in sheets docketed in
                          minutes of this hearing.)
17

18   FOR THE DEFENDANT:  (See sign-in sheets docketed in
                          minutes of this hearing.)
19

20   COURT REPORTER:     Shelly Holmes, CSR-TCRR
                         Official Reporter
21                       United States District Court
                         Eastern District of Texas
22                       Marshall Division
                         100 E. Houston Street
23                       Marshall, Texas  75670
                         (903) 923-7464
24

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)

1                          I N D E X

2

3    March 4, 2015

4                                          Page

5        Appearances                        1

6        Hearing                            3

7        Court Reporter's Certificate      74

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              COURT SECURITY OFFICER:  All rise.

 2              THE COURT:  Be seated, please.

 3              Good morning, counsel.  This is the time set for a

 4   pre-trial hearing in the matter of Core Wireless Licensing

 5   versus Apple Inc.  This is Civil Action 6:12-CV-100.

 6              Let me first call for announcements.  What says the

 7   Plaintiff?

 8              MR. WARD:  Good morning, Your Honor.  Johnny Ward for

 9   the Plaintiff.  We're ready.  With me, Henry Bunsow --

10              MR. BUNSOW:  Good morning.

11              MR. WARD:  -- Craig Allison, Denise De Mory, Brian

12   Smith, Robin Curtis, and Dino Hadzibegovic, and Wes Hill, as

13   well.

14              THE COURT:  All right.  Thank you, Mr. Ward.

15              What says the Defendant?

16              MR. ALBRITTON:  Good morning, Your Honor.  Eric

17   Albritton for Apple.  Along with me is Joe Mueller, Kate

18   Saxton, Cindy Vreeland, Tim Syrett, Carrie Seares, and Andy

19   Song, who is in-house at Apple, and we're ready to proceed,

20   Your Honor.

21              THE COURT:  Thank you, Mr. Albritton.

22              MR. ALBRITTON:  Thank you, Your Honor.

23              THE COURT:  You'll have to forgive me, I'm still

24   getting used to this bench up here.

25              Let me give you some basic housekeeping matters that I
```

1   think are worthy of emphasis, and then we'll talk about the

2   remaining live disputes -- live pre-trial disputes that need to

3   be resolved.

4          As everyone should know, jury selection is next

5   Monday, the 9th.  I anticipate selecting the jury and then

6   proceeding into the actual trial with -- hopefully we will get

7   two or three hours of actual testimony on the record Monday

8   afternoon.  I would hope that given the 16 hours per side that

9   each side has been allotted that we can finish the evidence on

10  Monday, the 16th, with time to work through the charge issues

11  so that Tuesday, the 17th, we can begin with final instructions

12  to the jury, closing arguments, and deliberations.

13         Each side has been allocated 40 minutes a side for

14  voir dire.  As Mr. Albritton and Mr. Ward will tell you, my

15  policy is that each side may use up to three minutes at the

16  beginning of their voir dire for a high level factual overview

17  of their contentions.  Those three minutes are not to be

18  exceeded, and those three minutes are not to lapse into

19  argument.  If I believe you've become argumentative, I will

20  call you on it in front of the panel.  After that, you should

21  proceed into typical voir dire questioning of the panel, either

22  generally or individual members.

23         My plan is to seat eight jurors, and each side will be

24  afforded four preemptory challenges.  As I say, I've allocated

25  16 hours per side for presentation of evidence.  That does not

1  include the voir dire, the opening statements, or the closing

2  statements.  With regard to opening, each side will have 20

3  minutes per side.  And with regard to closing, each side will

4  have 40 minutes per side.

5       With regard to openings and closings, you may split

6  your time with co-counsel, if you like.  That's your call.  The

7  only rule you need to keep in mind is with regard to closing.

8  If Plaintiff elects to split their time, they'll need to use at

9  least half of their time in their first closing argument.

10 Plaintiff can't get up and give a two-minute closing and then

11 have 38 minutes left for the final summation.

12      If you want a warning on your time, ask me for it when

13 you go to the podium, and I'll be happy to give that to you.

14      One thing that is a matter of -- of personal

15 preference, but I mention this at most trials, this is going to

16 be a hard-fought trial.  There's no question in my mind about

17 it.  And by the time we get to closing arguments, there will be

18 a considerable amount of time, effort, toil, and sweat that's

19 been put into this trial.  I view the closing arguments by

20 counsel as the pinnacle of the process.  I do not want counsel

21 moving around, shuffling papers, whispering back and forth.  I

22 don't want anything that would cause a disruption in either

23 side's closing arguments.  I also want you to caution your

24 witnesses, your corporate people, and anybody under your

25 control that might be in the gallery to do the same.  I want as

1  much solemnity as possible during closing arguments.  And I can

2  assure you, those that will be giving them will appreciate

3  that, as well.

4         I assume we may have an easel and a chart here for

5  demonstratives.  I don't see it in the courtroom, but I assume

6  we'll have one when the trial starts.  Typically, I -- I like

7  counsel to ask for leave to use that so I have some idea of

8  what they're doing before they do it.

9         With regard to placement at the podium, typically, I

10  follow what's called the arm's length rule.  If you're within

11  the length of your arm from the podium, you're okay.  If you

12  wander beyond that, you're outside your proper place at the

13  bar.

14         My practice, also, is that I will endeavor to be

15  present in chambers by 7:30 each morning.  My plan is to bring

16  in the jury and start trial each day at 8:30 each morning.

17  That hour is for your benefit, to let me know if there are any

18  disputes that have arisen overnight or other problems that have

19  presented themselves so that I can give you some guidance and

20  not waste your defined trial time in court taking up issues

21  that I can take up beforehand with you.  That -- that's there

22  for your use.  If you have issues that need to be presented to

23  me, then you need to let my clerks know, and I'll bring you

24  into chambers, and we'll take those up.  But that hour each

25  morning before trial starts is going to be available to you.  I

1  won't be unhappy if you don't need it, but if you do need it,

2  it will be there.

3       Also, through the remainder of the pre-trial today, we

4  are going to get through the remaining exhibit disputes so that

5  we should come into court Monday with a defined universe of

6  pre-admitted exhibits.  And each side will be entitled to draw

7  from and use any of those pre-admitted exhibits during the

8  trial without using the time to lay a predicate or otherwise

9  make a formal offer.  If it's on the pre-admitted list, it's

10  there for you to use before the jury at your discretion.

11       Those items that are used before the jury as a part of

12  the trial from the list of pre-admitted exhibits become a part

13  of the record.  Those items on the list of pre-admitted

14  exhibits which the Court's already dealt with regarding issues

15  of admissibility that are not used before the jury or made a

16  part of the trial are not a part of the record.

17       To keep things straight, what I will do each morning,

18  beginning with Tuesday morning, before we bring the jury in, I

19  will ask each side to go to the podium and read into the record

20  that list of pre-admitted exhibits that they used during the

21  preceding day's portion of the trial.  And that way we'll keep

22  a running tally in the record of what's been used from the

23  pre-admitted list, and it's consequently a part of the record.

24  And as I say, those that are not and remain unused from the

25  pre-admitted exhibit list are not considered a part of the

1    record.  Buy we'll do that each morning.  You need to be

2    prepared before I bring in the jury at 8:30 to do that from the

3    podium before that.

4          I know your local counsel and those of you who have

5    appeared before me know this, but for the benefit of everyone

6    else, I don't permit counsel or witnesses to refer to

7    individuals by first name only.  I find it creates confusion in

8    the record, and I find that it's not consistent with the

9    decorum required for a United States District Court.  So

10   instruct your witnesses and in your own presentations, refer to

11   Dr. John Smith as Dr. John Smith, Dr. Smith, John Smith, but

12   don't call him John.  If you do, I will probably say something

13   about it to you and your witnesses.  And if your witnesses do

14   it, I will assume that you failed to follow my directive to

15   instruct those witnesses, so be mindful of that.

16         I'm going to tell the jury that they are not permitted

17   to have their cell phones in the jury box.  They can keep them

18   in their cars.  They can keep them in the jury room.  But

19   they're not entitled to bring them into the courtroom.  I'm

20   going to tell the jury that the lawyers in the trial team are

21   entitled to have electronic devices because it's a part of

22   their functioning during the trial.  But if you choose to have

23   devices that make noises, make sure they don't make noises in

24   this courtroom.  If they sound or ring or otherwise cause a

25   disruption, my typical practice it to confiscate them.  So just

1   be on notice that I'm not going to tell the jury they can't

2   have their cell phones and then let your lawyers' cell phones

3   start ringing in the courtroom.  Certainly you can have them,

4   but be sure they're on silent or that they don't disrupt the

5   proceedings in any way.

6           Also, I assume that there will be or may be

7   confidential or proprietary information that needs to be used

8   during the process or the con -- conducting of the trial.  The

9   Court is not adverse to sealing the courtroom in those

10  instances when it's warranted.  I do like to know in advance so

11  that I'm not surprised.  I do like you to try and group those

12  types of information such that we're not sealing, unsealing,

13  sealing, unsealing, and going back and forth with people

14  jumping up and down to leave and coming back in and then

15  leaving again immediately thereafter.  So if you will, let me

16  know when you anticipate doing that.  Try to do it in a way

17  that keeps the disruptions to a minimum.  But otherwise, that's

18  your call, in my view, as to what is proprietary and

19  confidential and needs to be protected by sealing of the

20  courtroom.

21          My practice is not to allow wholesale redactions of

22  the record after the trial.  The only thing that might possibly

23  be redacted from the transcript are going to be the unlikely

24  event that a Social Security number comes in or a driver's

25  license's number comes in, or something of that very basic

1  nature.  If it's in the transcript, you're not going to redact

2  it unless it falls into one of those basic categories.  So your

3  ability to protect the public from knowing your proprietary

4  information is with the sealing process.  So at least I want to

5  put everybody on notice of that.  I'm not trying to encourage

6  you to overuse the sealing process, and trials are by their

7  very nature inherently a public process.  But I want everybody

8  to understand what the rules of the road are.  And as I say, to

9  the extent you can let me know that's coming beforehand, I

10 would appreciate it.

11        All right.  With those housekeeping matters, I'll ask

12 if either side has any questions about any of those things I've

13 touched on?

14        MR. BUNSOW:  No questions here, Your Honor.

15        THE COURT:  All right.

16        MR. MUELLER:  No questions, Your Honor.

17        THE COURT:  All right.  Then let's move on to some of

18 the remaining issues that need to be resolved on a pre-trial

19 basis.

20        First of all, I have a proposed set of final jury

21 instructions of 158 pages.  There is no way under the sun I'm

22 going to read 158 pages to this jury.  I'm going to direct that

23 both sides meet and confer and submit a new and revised joint

24 submission on proposed jury instructions no later than Friday

25 of this week, by -- by 3:00 p.m. Central time Friday this week.

1          I understand there are some disputes about the

2    Ericsson issues.  You're free to put the disputed issues

3    side-by-side in your joint submission, but this, obviously, was

4    submitted some time ago.  The case has narrowed since then.

5    There may be some new things that have arisen, but I think it

6    would be beneficial to the Court and the parties to revisit the

7    joint submission on final instructions, and so I'm going to

8    direct that you meet and confer and submit a new proposal in

9    that regard, hopefully something less than 158 pages.

10          And I did say Friday of this week.  That's -- that's

11    not what I intended to say.  I'll give you until Tuesday, the

12    10th, to do that.  There's no need to -- to make that as short

13    a time frame as -- as I've given you.

14          What I meant on Friday was the preliminary jury

15    instructions.  If you want to -- I'm going to have you submit a

16    new proposed set of preliminary jury instructions.  Those, I

17    would like by Friday at 3:00 p.m. this week, and those may

18    include any late arising disputes or issues that I can then

19    look at, whether I need to give the jury a preliminary

20    instruction on those.

21          So preliminary instruction submission revised and

22    resubmitted by Friday at 3:00 p.m.  Final jury instructions,

23    together with a proposed verdict form, by Tuesday at 5:00

24    p.m. -- Tuesday, the 10th, by 5:00 p.m. on the final, and the

25    verdict Friday at 3:00 p.m. on any preliminary resubmission.

 1          Let me talk to you a minute about disputed deposition

 2   clips.  My practice is that I will handle those on a rolling

 3   basis.  If -- deposition clips should be disclosed by 7:00 p.m.

 4   two days before the day you intend to use them, and if there

 5   are disputes after that disclosure, that will allow me to take

 6   up those disputes the day before the day you intend to use them

 7   so that I can handle those disputes, give you specific rulings,

 8   and you'll have time to recut those and have them available for

 9   the next day.

10          I'm assuming that there won't be any deposition clips

11   needed on Monday, but if they were, then they would need to be

12   disclosed by 7:00 p.m. on Saturday and then raised with me

13   Sunday and then played on Monday.  Assuming that won't

14   happen -- assuming you're not going to use depositions until at

15   least no earlier than Tuesday, then you disclose them on

16   Sunday, I'd have Monday to deal with the disputes, and they

17   would be presented on Tuesday.  But I'll handle all deposition

18   clips on that kind of a rolling basis.

19          Do you have a question, Mr. Bunsow?

20          MR. BUNSOW:  Yes, Your Honor.  Just to advise the

21   Court, I believe that we might very likely have deposition

22   clips late Monday afternoon --

23          THE COURT:  All right.

24          MR. BUNSOW:  -- so we -- we'll follow the procedure.

25          THE COURT:  Well, I'll be in Tyler -- I'll be in Tyler

1    Tuesday -- not Tuesday -- I'll be in Tyler Sunday evening,

2    early evening.  It may be for Monday's clips, especially since

3    they wouldn't be needed until late in the day, that we take

4    them up at 7:30 Monday morning.  But other than that one

5    exception, we'll follow the rolling basis I've given you.

6           MR. BUNSOW:  Understood.

7           THE COURT:  Okay.  All right.  Give me some idea,

8    counsel, of what we have remaining as far as disputed exhibits,

9    items that would be included on the list of pre-admitted

10   exhibits.  And when I say give me some guidance, I know there

11   are several, but what I'd like you to do is try to group those

12   for me.  As we say in East Texas, put them in different buckets

13   so I can take them up one bucket at a time.  And hopefully by

14   giving you guidance on a group of disputed exhibits with common

15   issues, we can be more efficient, rather than just taking them

16   simply one up at a time and hearing the same thing over and

17   over again.

18          What I'm going to do is take a short recess of about

19   12 -- 10, 12 minutes.  I'm going to let you visit with each

20   other about that.  Then when I come back in, I'd like to hear

21   from both sides as to what you think a logical grouping of

22   these disputed and remaining exhibits are.  Then we -- we'll go

23   into them at that point.  But we'll stand in recess for the

24   next 10 minutes.

25          COURT SECURITY OFFICER:  All rise.

1         (Recess.)

2         COURT SECURITY OFFICER:  All rise.

3         THE COURT:  Be seated, please.

4         All right.  Counsel, have you had an opportunity to

5    categorize these remaining exhibit disputes, and if so, let me

6    know what you think is the most logical and productive way to

7    proceed.  I'll hear from both sides from the podium.

8         MS. DE MORY:  Good morning, Your Honor.  We have had a

9    chance to -- to resolve a bunch of disputes, and -- and I think

10   these are the remaining buckets that the Plaintiffs still

11   intends to raise.  So we have the four issues that are raised

12   in the joint pre-trial submission that you received last

13   week -- that is, the issues related to the prior art, the

14   issues related to DX 56 and related documents, the other

15   standards-related documents, and the documents related to DX 99

16   or what we call the -- the fanfare documents.

17        In addition to that, the other remaining deposition

18   exhibit objections are to Exhibits 204 and 205, which I believe

19   can be considered together.  They're damages-related documents,

20   Qualcomm 10-Qs and 10-Ks and then a third -- another

21   third-party document.

22        And then the last or sixth bucket is documents

23   relating to our witness, Toskala, and they are a book -- some

24   books written by him, as well as his CV.

25        I'm sorry, there's one more.  And the last one is

1   invention disclosures.  And those are Exhibits 19 through 24.

2         THE COURT:  Yeah, let me hear from the Defendant next.

3         MR. MUELLER:  And, Your Honor, Joe Mueller on behalf

4   of Apple.

5         Just two additional items I'd mention.  One is we had

6   set forth in our papers a section on our objection to revenue

7   numbers and some other financial numbers.  The parties have

8   resolved that by way of agreement, and we'll provide Your Honor

9   with a stipulation to that effect, but that's no longer a

10  contested issue.

11        THE COURT:  All right.

12        MR. MUELLER:  The second is in addition to the list

13  that Ms. De Mory provided, there's one additional document to

14  which we object, and that is an appendix to one of their

15  expert's reports which purports to give a -- a study of certain

16  issues.  And I can explain in more detail when we come to it,

17  but our position as to that is that he can provide his analysis

18  by way of testimony, not an exhibit.

19        THE COURT:  Which expert is this?

20        MR. MUELLER:  This is Mr. Buttrick, and the number is

21  PX 114.

22        THE COURT:  All right.

23        MR. MUELLER:  But aside from those issues, I believe

24  Ms. De Mory provided the appropriate buckets, and we're happy

25  to take them up one-by-one.

1          THE COURT:  All right.  Good.  Let's start then with

2     the disputed exhibits that relate to the prior art, and unless

3     there's some reason to vary it, we'll just follow the same

4     order.  I'll hear from Ms. De Mory and then Mr. Mueller.

5          MS. DE MORY:  Good morning again, Your Honor.

6          So the -- this issue of the prior art was discussed in

7     the pre-trial order.  It relates to Defendant's Exhibit 8, 34,

8     35, 224, 225, 226, and 228.  Basically, it's our position, as

9     set forth in our papers, that Defendants have not established

10    that these references are prior art under 102(b), printed

11    publications.

12         And in response to that, Defendants have raised a

13    number of arguments.  The first argument that they raised --

14    well, let me -- let me back up.  It's our position that they

15    don't constitute prior art because their experts didn't do

16    anything to show that they were prior art, and there's no

17    percipient witness testimony to show that they were printed

18    publications or publicly available.

19         In fact, if we look at the expert report of Dr. Stark,

20    Paragraphs 118 and 137, he basically says that they may -- he

21    has been informed that these references may constitute prior

22    art under 102(b).  That's it.  Nothing more.

23         As to the Walker expert report, which we'll talk about

24    in more detail, they -- I think that's sort of a late add to

25    try to make things look like printed publications.  But these

1    documents that I've listed are not discussed in that report

2    that I can find.  There are some other documents related to

3    unenforceability, but not these prior art documents.

4          And there is -- there are two paragraphs, 106, 107,

5    which we'll talk about where there is a statement that says

6    these meetings are public, but there's nothing temporal related

7    to the -- to the specific prior art documents that we're

8    looking at or no personal knowledge or nothing other than these

9    in general ETSI meetings are public.

10          So in response to our objections, which are based on

11    402 and 403, Defendant's first response is that we have a

12    stipulation on authenticity, or a stipulation that we would not

13    raise these objections or that we had some higher burden that

14    comes from the original proposed joint pre-trial order,

15    specifically Pages 15 and 16.

16          But if the Court looks at that stipulation, it begins:

17    Stipulation on the authenticity of documents.  And it is our

18    opinion that, in fact, it is a stipulation on the authenticity.

19    And it concludes with a statement that says:  This agreement is

20    without prejudice to either side's ability to object to

21    materials on the ground of relevance, prejudice, or other

22    grounds under Federal Rules of Evidence 403.  And it's our

23    position that that's exactly the objections we're raising, and

24    that those were preserved.

25          In addition to our argument on that, I don't actually

1    think that Defendants can dispute this, because, in fact,

2    Defendants objected to Plaintiff's Exhibit 64, 65, and 112 on

3    the basis of relevance and 403 -- 402 and 403, and these are

4    also ETSI-related documents that would fall into the same

5    category.  So I don't think there's actually any dispute that

6    the agreement wasn't that we preserved -- or the agreement --

7    yeah, the agreement is that we preserved both relevance and 403

8    objections.

9         THE COURT:  So, in essence, what you're telling me is

10   the agreement is just to dispose of the need to prove up

11   authenticity and business records and to avoid hearsay

12   objections?

13        MS. DE MORY:  Correct.

14        THE COURT:  No more, no less?

15        MS. DE MORY:  Correct.  And -- and I think that's

16   borne out by this.  If we look at 64, 65, and 112, which I have

17   here, and I don't think Defendants dispute our other ETSI

18   documents.  And they -- they raised the same objection.  So --

19   so that is what I believe the agreement is, as evidenced by

20   both the words and the conduct of the parties.

21        So that brings us to their second argument, which is

22   they say that it's a written document, so, therefore, it's a

23   printed publication.

24        THE COURT:  Well, let's -- let's do this.  Before you

25   get into the second argument, let me hear from the Defendant

 1    about the scope of the stipulation.

 2          MR. MUELLER:   Thank you, Your Honor.

 3          If I could perhaps just give a couple statements on

 4    the -- the big picture for the case as a whole, which I think

 5    will help with the issue at hand.

 6          So this is a case involving standards, and from the

 7    complaint through the entire two-plus years of litigation, Core

 8    Wireless has taken the position that its patents in this case

 9    cover portions of cellular standards developed by an

10    organization in Europe called the European Telecommunications

11    Standards Institute or ETSI.   And that's been their position

12    from Day 1 until the present.   That, of course, you know, is

13    their right to make that contention.   But we have the ability

14    to rebut it in part by using other documents from ETSI for

15    multiple purposes, one of which is prior art.

16          Some of the proposals made at ETSI prior to the

17    patent's filing demonstrate that the same ideas the patents

18    purport to claim were made in proposals by other folks at ETSI.

19    And so the relevance of those proposals to the case -- and now

20    we're just talking about this particular set of documents that

21    Ms. De Mory raised -- is for validity.   These bear directly on

22    the issue of validity.

23          Our technical experts unquestionably have gone through

24    these proposals in detail and have explained how those

25    proposals taught and disclosed the ideas that the patents

1    purport to claim.  So that's the relevance from a big picture

2    perspective.

3         Many months ago we negotiated a stipulation with both

4    sides, and I believe Your Honor has a copy, but I have another

5    copy.  If it'd be more convenient, I can hand one up.

6         THE COURT:  Why don't you do that.

7         MR. MUELLER:  Sure.  May I approach?

8         THE COURT:  I think it's -- yes.  I think it's here,

9    but it's just easier for you to hand it up.  Thank you.

10        MR. MUELLER:  And if Your Honor -- if I might

11   respectfully direct your attention to Page 15.

12        THE COURT:  All right.

13        MR. MUELLER:  This is the stipulation at issue, and

14   the exact language is as follows.  The first paragraph states:

15   Neither side will raise authenticity objections to any

16   proffered exhibit in the absence of good faith basis to believe

17   it is inauthentic.

18        And that's a general agreement.  But then Paragraph 2

19   specifically discusses some enumerated sets of documents, and

20   it doesn't just say authenticity, it says:  The materials

21   produced by the parties or third-parties that fall into the

22   categories enumerated below will presumptively be deemed

23   business records or otherwise admissible.  And the burden will

24   be on the party imposing admission to demonstrate that no

25   ground for admissibility exists.

1          Subcategory B states:  Standards setting organization

2   policies or other documents issued by ETSI -- that's the

3   European Telecommunications Standards Institute -- or 3GPP --

4   which is another standards setting organization.  And we -- we

5   went on jointly to list categories that would fall within that.

6   Standards specifications; FRAND, or fair reasonable and

7   non-discriminatory licensing declarations; IPR disclosures --

8   and that stands for intellectual property rights to the

9   standards organizations; standards setting technical group

10  documents, including change requests, meeting minutes, and

11  reports and other documents; and communications among working

12  group members.

13          That was the parties' agreement that these documents

14  were not only authentic but presumptively admissible as

15  business records.  And so really all that's left is to

16  establish that these have some substantive connection to the

17  case.

18          Ms. De Mory is absolutely correct that the final

19  sentence in the stipulation states that this agreement is

20  without prejudice to either side's ability to object to

21  materials on the ground of relevance, prejudice, or other

22  grounds.  I agree.  But we unquestionably meet that burden.

23          Our technical experts have, in detail, explained

24  precisely how these proposals invalidate the patents-in-suit.

25  That's the relevance.  So these are by agreement authentic and

1  admissible as business records, and they're relevant as a

2  matter of substance because of our technical expert testimony.

3  And so really the only issue here is whether the jury

4  wants to put sufficient weight on what our experts say.  That's

5  a fact issue for the jury, not admissibility question.

6  THE COURT:  All right.  What do you say in response to

7  that, Ms. De Mory?

8  MS. DE MORY:  Your Honor, the stipulation continues on

9  in Paragraph 3, and it says:  But the expert must be able to

10  explain why it's substantively relevant to -- to -- relevant to

11  the case, and then we have the final sentence that says that

12  nobody waived these objections.  And we have the Defendant's

13  objections.

14  So our objection is that this is not relevant to the

15  case if it's not prior art.  And their -- their -- their

16  invalidity expert says that it is relevant to invalidity, but

17  he says that he's informed that it may be 102(b).  If it's not

18  102(b), he has no other basis, and you haven't heard Defendant

19  say anything about any other basis for relying on that prior

20  art.  If it's not 102(b), it's not relevant.  And he has done

21  nothing to show that it's relevant.  And we preserve this

22  objection as evidenced by their objections to other ETSI

23  documents, as well.

24  THE COURT:  Well, these documents may be relevant, but

25  not as prior art.  It does seem that they go to the conduct of

1    ETSI.  But unless the Defendant can lay some kind of predicate,

2    I don't see that they're prior art.  So we may have -- we may

3    have a situation where we have exhibits that are admissible for

4    a specific purpose, but not admissible generally for any

5    purpose anybody want to make -- wants to make out of them.

6          MS. DE MORY:  And I -- and I -- that may -- that may

7    be possible, and I think that's -- the next issue is going to

8    relate to that in sum, so that may be a foretelling of your --

9    of your thoughts on the next issue.

10         But -- but I will also say that the -- you know, these

11   documents -- I believe only two of them appear in an expert

12   report relating to unenforceability, and otherwise, the

13   documents that are set forth in our Issue 2A are not referenced

14   anywhere else in any expert report or for any basis other than

15   the prior art basis.

16         And the -- the two that are referenced in the Walker

17   report, which is on -- on unenforceability, to be clear, are

18   DX 8 and DX 78.  Other than that, the other documents in this

19   list are not referenced any place else.

20         THE COURT:  All right.

21         MR. MUELLER:  Your Honor --

22         THE COURT:  Mr. Mueller.

23         MR. MUELLER:  -- if I may.  There's no dispute that

24   these documents are dated at a time that would make them prior

25   art.  There's never been a question on that.  Their experts

1    have never disputed that.  Core Wireless has never disputed

2    that.  There has never been a dispute on that question.

3          The only dispute, and it's a late arising dispute, is

4    admissibility.  And, again, that contradicts the stipulation

5    between the parties.  It also contradicts -- and this is

6    segueing a bit into the next bucket, but the general issue of

7    the admissibility of standards setting documents, which every

8    court to have confronted the issue has admitted the documents,

9    without exception.  They've provided not a single case in which

10   any Court has ever excluded this type of document in a

11   standards case.

12         So we have documents that are dated at a time period

13   that would, on their face, make them prior art.  We have

14   technical expert testimony explaining on a

15   limitation-by-limitation basis how that prior art invalidates.

16   And what's left is really a fact question for the jury as to

17   how much they weighed the issues.  And as we mentioned in our

18   briefing, Your Honor, the Federal Circuit has held that a

19   question such as public accessibility is a fact issue for the

20   jury.  The weight to be accorded to our technical experts and

21   their analysis of these agreements, fact issue for the jury.

22   But on their face, the dates make them prior art, and the

23   parties have agreed they're admissible.

24         THE COURT:  Let me ask this.  Give me, again, a list

25   of the specific exhibits that we are covering in this overall

 1    discussion, and make it slow enough that I can write it down

 2    this time, please.

 3              MS. DE MORY:  Sure.  DX 8, DX 34, 35, 224, 225, 226,

 4    and 228.

 5              THE COURT:  Okay.  Those are all Defendant's exhibits?

 6              MS. DE MORY:  Correct.

 7              THE COURT:  Do you have any disagreement with that,

 8    Mr. Mueller?

 9              MR. MUELLER:  I'm sorry, Your Honor?

10              THE COURT:  Do you have any disagreement with that

11    list?

12              MR. MUELLER:  No, I believe that -- that list is

13    correct.  And just to give Your Honor one more piece of

14    information, the case I referred to is the Kyocera case in

15    which the Court addressed whether ETSI documents, in

16    particular, this is the Federal Circuit, were sufficiently

17    assessable and, in fact, held that on the evidence in that

18    case, they were, and that's 545 F.3d 1340.

19              THE COURT:  All right.  Well, here's what I'm going to

20    do.  I'm going to pre-admit these exhibits.  However, I'm going

21    to direct that before either party publishes it to the jury or

22    uses them during the trial, that you approach the bench and

23    that will give me an opportunity in the context of that

24    particular moment to determine what purpose they're offered

25    for, whether there's a reasonable basis for it, and do my

1   gatekeeping role closer to the actual time at hand.

2          So for purposes of the list of pre-admitted exhibits,

3   they are on the pre-admitted exhibit list, but counsel will not

4   use them before the jury, unless you approach the bench first

5   and get leave from the Court.

6          All right.  Does that bring us to the second bucket?

7          MS. DE MORY:  It does.

8          THE COURT:  I tell you what, before we do that, the

9   Court needs a short additional recess.  And while I'm out, it

10  would save us a lot of time, Ms. De Mory, if you would kick one

11  of these lawyers out and sit at the end of the table so you

12  don't have to walk all the way around the room every time.

13         MS. DE MORY:  Yes.

14         THE COURT:  The Court will stand in recess for a few

15  minutes.

16         COURT SECURITY OFFICER:  All rise.

17         (Recess.)

18         COURT SECURITY OFFICER:  All rise.

19         THE COURT:  Be seated, please.

20         All right.  Let's go on to the next bucket of disputed

21  exhibits.

22         MS. DE MORY:  All right.  Your Honor, the next bucket

23  of disputed exhibits are also standard-related documents.  They

24  are listed as Issues 2B and 2C in our joint pre-trial notice

25  that you received last week, and Mr. Mueller and I have agreed

 1   that we'll discuss these together as one bucket to try to

 2   accelerate the --

 3            THE COURT:  All right.

 4            MS. DE MORY:  So -- so these are documents that we

 5   believe are already subject to a ruling by Judge Love, and I

 6   think there's some dispute about the extent of that ruling.  So

 7   that's really the genesis of this dispute.

 8            So in the pre-trial -- in the original pre-trial

 9   conference, Judge Love gave us an opportunity to object to five

10   documents with the hope that we would then resolve related-type

11   documents, and unfortunately, we haven't done that.

12            So the first -- so these are all -- again, they're

13   ETSI-related documents.  This time they're not in the bucket of

14   prior art documents, but they are in other buckets that -- that

15   Defendants intend to use them for.  So I think the first and

16   threshold issue to get over, which I think may, in fact, help

17   move us along, is what Judge Love actually did at the hearing.

18            Now, in Defendant's position in the joint pre-trial

19   submission that we gave to Your Honor last week, they focused

20   on the fact that Judge Love's ruling was allegedly on the

21   authenticity of the documents, citing Page 68 of that hearing

22   transcript, Lines 13 through 19.  And their claim was that our

23   argument was based on authenticity, and that was the reason for

24   sustaining the objection.

25            But our argument, in fact, continues on on Page 68,

1    Lines 20 and on to the top of Page 69 where we talk about our

2    objection, which is the same objection that we're going to talk

3    about today.

4         I have a copy of Judge Love -- Love's transcript if

5    you'd like to see that.

6         THE COURT:  If you don't mind, hand that up because I

7    don't have that in front of me.

8         MS. DE MORY:  Sure.  Sorry.  I apologize.  It's got

9    some highlighting in it which is mine, but it's Page 68 and 69.

10        THE COURT:  All right.

11        MS. DE MORY:  Okay.  So there's the lines cited there

12   that go through Line 20, which is what Apple pointed to in

13   their pre-trial submission.  But then we go on to say, which is

14   the genesis of our objection today, which is that Apple --

15   Defendants are using these documents to try to prove

16   non-infringement.  And we have a fundamental relevance

17   objection to their use as non-infringement documents.

18        And we discussed that reason with Judge Love, and

19   Judge Love goes on on Page 69 to say:  I have enough of a

20   concern about how these documents are going to be used, and I

21   think it's important to see how they're actually going to be

22   used in trial to sustain the objection on a pre-trial basis and

23   to require -- require the parties to approach if they're going

24   to use this document.

25        And in his actual order, which is Docket No. 355, it's

a sealed document, but he lists as his response to DX -- our

objection to DX 56, sustained on a pre-trial basis, but subject

to reurging at trial.

So I think we've already all been given pretty clear

instructions on what's supposed to happen with regard to these

exhibits, but nonetheless, we have a dispute because we

couldn't reach agreement on that pre-trial.

So it's our position that everything that falls into

the categories of 2A -- or 2B and 2C are -- fall into this

category as to which they -- they are sustained and that there

should be an approach before they're used.  And to read those

into the record, it's a long list, but it's DX 52, 56, which

has already been ruled on, DX 57, DX 59, DX 61, DX 62, DX 237,

DX 28, DX 33, DX 81, DX 82, DX 83, DX 84, DX 100 through 105,

DX 106, DX 122, DX 132, DX 133, DX 147, DX 149, DX 166, DX 182,

DX 232, and DX 233.

So that's our primary position, and that -- you know,

as I -- as I pointed out in that transcript, the genesis of our

objection and our primary objection was the use of this to

prove non-infringement.

So to talk -- I would transition to that issue.  It's

our position that -- so these are a bunch of standards

documents where Defendants are going to say one of two things.

They're going to say either somebody else put this stuff into

the standard so your patent can't cover it, or you -- or Nokia,

1    who was the inventor of the patents, Nokia put something into

2    the standard or tried to propose something to the standard that

3    was rejected, so, therefore, the patent can't cover the

4    standard.  So it's a sort of circuitous route to try to prove

5    non-infringement, to say these patents can't be essential.

6    Either somebody else actually put it into the standard, or

7    Nokia tried to put something into the standard, and it was

8    rejected, so, therefore, the patents can't cover the standard.

9            There are many problems with that.  It's a side show.

10   We're going to have to prove that these proposals do or do not

11   correspond to the standard, and then we're going go to have to

12   pro -- prove what happened in the actual standard setting body,

13   what proposal got accepted, what proposal didn't.  There is no

14   testimony on that, so we're just going to be -- have these

15   documents with all this conflicting evidence.

16           And the bottom line is we have to prove -- the test is

17   the claims.  So either the claims match the standard, or the

18   claims don't match the standard, just like the claims read on

19   the Defendant's products, or they don't read on the Defendant's

20   products.  This entire -- it's a -- it's a side show.  It's

21   other issues that don't actually ultimately prove the issue of

22   non-infringement.  Either Defendants can prove that they

23   don't -- we prove that they infringe, and they can raise some

24   questions about that or not.  But going down these circular

25   paths on both sides, we think is just a -- a distraction and

1   will -- you know, is definitely sort of quintessential 403

2   evidence.

3           And I think I -- I heard Mr. Mueller say with regards

4   to the last argument, there are a lot of cases in which

5   ETSI-related documents have been admitted, and we don't dispute

6   that that's the case.  But if Your Honor looks at those cases,

7   the vast majority of them are for unenforceability, antitrust,

8   breach of ETSI contract, non-infringing alternatives, so on and

9   so forth.

10          There is one case -- there is only one in their pile,

11  I believe, where the documents were used for a non-infringement

12  purpose, and it's an ITC case.  And they cited an ITC order.

13  It's certain wireless devices with 3G and/or 4G capabilities

14  and components thereof.  And I find it interesting and actually

15  important what the ALJ actually said in that order.  He said,

16  as for its relevance, the ALJ agrees that it is difficult to

17  see how the testimony of the historical development of the LTE

18  standard and speculation about a hypothetical device might

19  operation are really relevant to this investigation.  But the

20  ALJ agrees with staff that the testimony might be marginally

21  helpful in determining the issues of infringement and whether

22  the patents are standard essential.

23          So we have -- this is admitting something as marginal

24  relevance, but before an ALJ, not before a jury.  Not trying

25  all these collateral issues where we have documents that just

1    don't meet the -- the appropriate standards to show

2    non-infringement, and so it's our position that they should be

3    excluded under 403.

4            THE COURT:  Let me hear the Defendant's response.

5            MR. MUELLER:  Thank you, Your Honor.

6            So, again, if I could just say a few words about the

7    big picture context for these particular documents and then

8    zoom in on the details.

9            Again, this is a standards case, and the contention is

10   that the five patents in this suit cover some section of

11   portions of ETSI cellular standards.  The documents that we're

12   now referring to are not just relevant to validity, as the

13   first category was.  These are relevant for four independent

14   bases:  Invalidity, non-infringement, damages, and

15   unenforceability.

16           Again, every court to have confronted these types of

17   documents has admitted them.  I've personally participated in

18   several of these cases, and there's never been a problem

19   admitting these types of documents.  They've always been

20   understood by all sides to be part of the relevant factual

21   context for the fact finder to decide.

22           There's been not a case cited to Your Honor by Core

23   Wireless excluding any document of this type, not one case.

24           Second, the parties agreed by stipulation -- again,

25   the stipulation is before Your Honor -- that exactly these

1   categories of documents -- they were listed by name in the

2   stipulation -- are presumptively business records and

3   authentic.  And the burden would be on the challenging party to

4   demonstrate otherwise.

5         With due respect to Core Wireless, their argument

6   today would eviscerate the stipulate they made.  That

7   stipulation referred explicitly to working group meetings and

8   proposals made by parties at ETSI.  It was the manifest purpose

9   of that stipulation to resolve that issue and to proceed

10  forward on that basis.  And they're now effectively reneging on

11  the stipulation.

12        Third point, Judge Love did, in fact, deal with one

13  document at -- at the pre-trial conference in December, as well

14  as some deposition testimony from a percipient witness, and

15  that part wasn't mentioned, but I think it's significant.  The

16  witness is a gentleman named Mr. Bergman who worked at

17  Ericsson, and he testified in his deposition to what happened

18  at some of the meeting minutes -- or some of the meetings at

19  issue in this case.  And he discussed proposals that were made.

20        And DX 56 was the particular document that Core

21  Wireless focused on at the pre-trial conference.  And we'll

22  attribute this to inadvertence, but the -- the characterization

23  of that document to Judge Love was simply not correct.  The

24  statement to him was, quote, the record is far less clear than

25  that.  In fact, the Ericsson witness, I just read his testimony

1    yesterday, basically said, I don't know what this document is,

2    I didn't recognize it, end quote.

3           That was a representation to Judge Love.  Well, the

4    actual testimony -- I'm going to read from the transcript, and

5    this is before Your Honor at Pages 17 and 18 of the pre-trial

6    notice.

7           Question:  Exhibit 7 is Bates numbered -- and it gives

8    the Bates number -- do you recognize Exhibit 7, Mr. Bergman?

9           Answer:  Yes.

10          Question:  Why are you able to recognize this

11   document?

12          Answer:  I wrote it.

13          Question:  And is -- what is this document?

14          This is a RAND 1 contribution toward the CPC work

15   item.

16          Question:  Was this one of the documents listed in the

17   meeting minutes that we marked as Exhibit 6?

18          Answer:  Yes.

19          Question:  Who presented Exhibit 7 to 3GPP?

20          Answer:  It was me.

21          End quote.

22          So that's the actual testimony.  Now, again, I can't

23   speak for Judge Love.  I don't know exactly what his reasons

24   were for the order, but this was what he was told at the

25   hearing, and the deposition testimony contradicts it.

1          Moreover, Judge Love admitted and overruled the

2   objections to the remainder of Mr. Bergman's deposition

3   testimony which speaks to exactly these same issues.

4          So we have on the one hand Judge Love's ruling on the

5   deposition testimony admitting it.  We have a stipulation of

6   the parties that recites by name these documents and says

7   they're business records and presumptively admissible.  And we

8   have every single Court to have confronted this issue admitting

9   them.  That's on the one hand.

10          On the other hand, we have no precedent supporting

11   Core Wireless's argument, and we have an incorrect statement to

12   Judge Love that may have resulted in the order in DX 56.

13          Now, why are these relevant?  Well, there's four

14   independent grounds.  First, again, the contention is the

15   patents cover portions of the standard.  And it is relevant,

16   perhaps not dispositive, but relevant to the jury's fact

17   finding to explore how those standards were created.

18          Now, it turns out that some of the Nokia folks, and

19   these are formerly Nokia patents in this case.  It turns out

20   that some of the Nokia folks went to meetings at ETSI and

21   proposed ideas, and they were not accepted.  Those same ideas

22   are in the patents in this case, and it's relevant to the

23   allegations of standard essentiality that the proposals made by

24   named inventors are not accepted or not made at all to working

25   group meetings.  Again, it may not be dispositive.  They have

1    arguments to overcome that.  They may say, by serendipity, the

2    standard committee organization arrived at those ideas anyway,

3    and the jury can decide.  But what is, we believe, proper is

4    for the jury to have all the facts at their hand when they make

5    that decision.

6         So the first ground on which this is relevant is

7    non-infringement.  It's directly on point to whether, in fact,

8    these patents are standard essential.  It's a brick in the wall

9    with respect to evidence that the jury may consider.  That's

10   Point 1.

11        Point 2, it's relevant to invalidity, not just for

12   anticipation, also secondary considerations of non-obviousness.

13   And here we have not only the Apple technical experts who have

14   offered opinions on what happened at ETSI, we have the Core

15   Wireless experts.  They have opined that one of the reasons why

16   these patents are non-obvious, one of the secondary

17   considerations of non-obviousness supporting the validity of

18   the patents is that the proposals were adopted by ETSI.  Well,

19   in fact, that's not correct.  And we're entitled to show that

20   using these documents from ETSI.

21        So the second reason is these documents go to the

22   question of validity.

23        Third reason is damages.  What happened at ETSI

24   directly relates to alternative technologies that were

25   available, and the incremental functional benefit, if any, for

1    the particular features at issue.  And the evaluation by the

2    folks at these meetings of the functionality at issue in this

3    case bears directly on the question of the value of that

4    technology.  That's the third reason.

5           And the fourth reason is unenforceability.  To the

6    extent that Nokia did not play by the rules at ETSI and did not

7    follow, for one thing, the disclosure rules in terms of

8    disclosing their technologies in a timely fashion, they can

9    render the patents unenforceable.

10          So there's four independent substantive reasons, each

11   of which suffices to establish the relevance of the documents

12   and all of which collectively support the case law and Judge

13   Love's decision on the deposition testimony of Mr. Bergman and

14   are further corroborated by the parties' stipulation.

15          So in light of all that, Your Honor, we would

16   respectfully submit this is evidence the jury should hear and

17   should weigh in making its decision on those four issues.

18          THE COURT:  Well, let me say this.  I think there's

19   a -- I think there's a -- you can be seated, counsel.

20          I think there's a basis for these as relevant

21   information for the jury to consider.  I think most of what

22   Ms. De Mory argued is really -- goes more to cross-examination

23   than it does to admissibility.

24          I do want to say, though, I don't necessarily agree

25   with the Defendant's characterization of the stipulation.  I

1   think the Defendants are wanting to give it much greater scope

2   than it probably has.  Clearly it deals with authen --

3   authenticity and hearsay business records, but I'm hearing

4   arguments that seem to want to push that envelope further than

5   it probably should go.

6          I'm going to pre-admit these.  I'm going to pre-admit

7   them, though, because I believe that on an underlying basis,

8   they're relevant.  If the Plaintiff's going to say the

9   Defendant infringes because it practices the standard, then the

10  Defendant's entitled to show what the standard is and how it

11  was developed, and these go to that.  And I think they're

12  relevant for that purpose.

13         I also want to say, though, I'm not sure I agree with

14  Mr. Mueller's argument on secondary considerations of

15  non-obviousness.  The failure to do something is not

16  necessarily an affirmative indication of something else.  But

17  I'm satisfied -- though, I don't agree with the Defendants

18  across the board, I'm satisfied at the end of the day these are

19  fundamentally relevant to issues that the jury will have to

20  confront.  And I'm going to pre-admit them for that basis.

21         MR. MUELLER:  Thank you, Your Honor.

22         THE COURT:  All right.  What's our next bucket of --

23  of exhibits?

24         MS. DE MORY:  Your Honor, Mr. Smith are going to

25  handle these.  They're the sort of fanfare documents about the

1     Apple products.

2              THE COURT:  All right.

3              MR. SMITH:  Good morning, Your Honor.  Brian Smith.

4              THE COURT:  Good morning.

5              MR. SMITH:  This bucket of documents, if I can

6     explain, it's on Pages 27 through Pages 30 -- 35 of the

7     pre-trial notice.

8              THE COURT:  All right.  And before you -- before you

9     go any further, Mr. Smith, I want to go back to what we just

10    left for a minute.

11             Though I -- I want to make this clear, too.  Though

12    I've pre-admitted those 2B and 2C documents, I want to also say

13    that that does not change the underlying rule that the experts

14    in this case are limited and constrained by their reports.  And

15    to the extent they have not addressed these in their reports,

16    they're not going to get up and opine about them.  The experts

17    on both sides are going to be confined to what's in their

18    reports.  So I want to make that clear as a part of the

19    pre-admission of those.  And then we'll go back, Mr. Smith, you

20    can pick up where you left off.

21             MR. SMITH:  Understood, Your Honor.  Thank you.

22             Thank you.  If I can give you the exhibit numbers of

23    this sort of bucket.  These are what we call the fanfare

24    documents.  So the --

25             THE COURT:  Give me the numbers.

1          MR. SMITH:   The numbers are DX 93, 94, 95, 96, 97,

2  127, 128, 129, and 245.

3          Now, the chronology of this dispute in front of Judge

4  Love, there was a -- Defendant's Exhibit 99, which was a video

5  of the iPad launch featuring Steve Jobs.  Apple stated its

6  intent to withdraw that exhibit and other Steve Jobs's videos

7  at that hearing.   There are a bunch of other -- the exhibits I

8  just gave you are a bunch of other either paper

9  advertisements or video advertisements for either the iPhone or

10  iPad.  One of the videos, I believe, even has an Apple designer

11  in the video.

12          We just don't believe that these documents are either

13  relevant -- well, they're certainly hearsay -- or relevant to

14  any claim or defense in the case.  We have scoured the expert

15  reports to see if any expert relies on these specific

16  Defendant's exhibits and cannot find an example of that.

17          The Apple response is that these documents are

18  relevant to damages, but the Court should know that the --

19  Mr. Lynde, the Apple damages expert, does not use the Apple

20  advertising as part of his analysis.  He doesn't talk about

21  non-accused features, but his theory is essentially he's looked

22  at a Qualcomm 10 -- first of all, he says that all the

23  functionality is performed in the baseband processor of all the

24  accused products.  He says the baseband processor is provided

25  by either Intel or Qualcomm.  He looks at a Qualcomm 10-K to

1    estimate the profit to Qualcomm and then does a calculation

2    based on that.  That's his main damages theory.  So we don't

3    believe these video advertisements are relevant for that issue.

4           The next Apple argument that it goes -- these

5    advertisements go to secondary considerations of non-obvious,

6    saying it's entitled to present its own evidence showing that

7    non-accused features actually drive consumer demand, which I

8    guess the argument would be that the reason consumers are

9    buying these products is because of these non-accused features

10   in the ads and not the cellular capability which will be what's

11   at issue in this trial.  That's fine.  I mean, if they want to

12   make that argument.

13          The problem is none of these -- we don't see where any

14   of these exhibits are going to be sponsored by either a -- a

15   witness that has knowledge or relied upon by any expert.

16          The last argument is that it goes to -- somehow goes

17   to infringement.  I don't believe that's valid either saying

18   that there's an induced infringement claim.  Certainly none of

19   our experts are relying on any of these advertisements for any

20   purpose.  So we believe these documents should be excluded.

21          THE COURT:  All right.  What's the Defendant say?

22          MR. MUELLER:  Thank you, Your Honor.  If I could just

23   step through authenticity, admissibility, relevance.

24          Authenticity, there's no dispute these are authentic

25   documents.  I don't think Mr. Smith argued that, and I haven't

1   seen anything in the papers on that.

2          The question of admissibility, there's a mention of

3   hearsay.  Well, these are admissible for a couple of different

4   reasons.  They can overcome the hearsay hurdle.  First, many of

5   these are business records.  They're maintained in the ordinary

6   course by Apple.  Others are relevant to the case for the

7   effect on the audience, and in particular whether Apple is

8   seeking to promote certain types of functionality or induce

9   folks to use it.  And so they're relevant for that purpose, as

10  well.

11         But first and foremost, these are regular documents

12  maintained in the ordinary course by Apple.

13         Now, what are they relevant to from a substantive

14  perspective?  Again, there's multiple grounds.  First is

15  damages.  And it is, of course, black letter law that the

16  patentee needs to apportion the products in some fashion to

17  isolate the incremental value of the alleged inventions.  And

18  there's been a series of Federal Circuit cases and Supreme

19  Court precedent going back to the Garretson case on that point.

20         Well, the patentee needs to do that, but that equally

21  makes it proper for the Defendant to offer evidence that

22  assists the jury in its task of determining the particular

23  value to be given to the alleged inventions in the context of

24  all the other features and functionality in the accused

25  products.

1          It's important that the jury understand the various

2    features that are in these accused products, to not put undue

3    weight on the accused functionality.  If we were just to limit

4    the jury's perspective to only the accused functionality, it

5    would have a distorting effect.  And they should be allowed to

6    hear, as part of the factual record, evidence that bears on the

7    other features and functionality in these devices to put in

8    context the accused features into a system with a legally

9    required goal of apportionment.

10         So the first reason why these are substantively

11   relevant is damages.  They provide the factual context the jury

12   is entitled to hear.

13         The second reason --

14         THE COURT:  Let me -- let me stop you --

15         MR. MUELLER:  Sure.

16         THE COURT:  -- for a minute.

17         Mr. Smith, are you raising objections as to form, be

18   it authenticity or hearsay, or is this really a fight about

19   relevance?

20         MR. SMITH:  It's main -- I mean, there is a hearsay

21   objection because we don't think they have a witness that can

22   sponsor -- I mean, everybody on their witness list, nobody is

23   going to come to trial has created any of these advertisements,

24   but it's mainly a -- a relevance objection, yes, you're right,

25   Your Honor.

1          THE COURT:  All right.  Well, I'm satisfied that they

2   are relevant, primarily for the damages issue.  The jury's

3   entitled to see what the non-accused features are to compare to

4   the accused features.

5          However -- and the jury's also entitled to some

6   context about the background of the devices that are accused.

7          I will say this.  There's a very real temptation on

8   the part of the Defendant in many trials like this to use that

9   as an open door to put on a grandiose advertisement for their

10  company and its products, and that's not what this is about.

11  This is not about Apple, the greatest company in the world with

12  the greatest products in the world.  If you're going to use

13  this evidence to talk about the non-accused features, then it

14  needs to zero in on those non-accused features.  If it goes

15  into a commercial-type presentation, I'll shut it down.

16         MR. MUELLER:  Understood.

17         THE COURT:  I think that's unfair.  You know, if the

18  Plaintiffs raised a hearsay objection, I don't -- I assume

19  these aren't covered by your ETSI stipulation, so they've got a

20  reason to do that.  And if they do, you're going to have to

21  have a sponsoring witness that can prove them up.  But on a

22  relevance basis, I think at least with the issue to damages --

23  and that's why I cut you off because I'm satisfied they're

24  relevant as to damages, so I'm not going to have you go through

25  the rest of your arguments.

1            I'm going to overrule the objection on relevance

2     grounds.  But they are going to have to be properly sponsored

3     by a witness.  So I can pre -- I will pre-admit them

4     conditioned upon them being sponsored at trial by a witness.

5            MR. MUELLER:  Understood, Your Honor.  And just to

6     give you a preview, our corporate representative in this case

7     is in marketing and will be allowed -- he will provide the

8     authentication of the documents that's required.

9            THE COURT:  If he can do that, then I don't see any

10    problems.

11           MR. MUELLER:  Thank you, Your Honor.

12           THE COURT:  So subject to the condition that they be

13    offered by a sponsoring witness with the capability and

14    knowledge to do that, I'll pre-admit the fanfare documents and

15    overrule the Plaintiff's relevance objection.

16           All right.  Where do we go next, counsel?

17           MR. SMITH:  There are just two more buckets.  This is

18    a quick one, Your Honor.  DX 217, 218, and 219 are in the

19    exhibit list.  They're physical samples of an iPhone and iPad.

20    We just haven't been provided those by the Defendant yet, but I

21    just wanted to alert Court.  I assume we can work that out

22    prior to --

23           THE COURT:  I would hope so.

24           MR. MUELLER:  Absolutely.  We'll make sure they have

25    plenty of notice and receive copies well before we even go to

1    court.

2            THE COURT:  All right.

3            MR. SMITH:  So the last bucket I think may have been

4    resolved during one of the breaks here today.  It involves DX

5    204 and DX 205.  DX 204 is a patent pool document that Apple's

6    damages expert is going to rely on.  And as I mentioned in the

7    other argument, DX 205 is the Qualcomm 10-K.  And as I

8    understand, Apple has agreed that these will not be on the

9    pre-admitted exhibit list, but may be used by their damages

10   expert.

11           THE COURT:  Is that the agreement of the Defendant?

12           MR. MUELLER:  That is, Your Honor.  And I believe what

13   Mr. Smith was saying is that the expert can refer to them as

14   hearsay, that an expert might refer to them, but we won't seek

15   the admission.  And if that's it, then we agree.

16           THE COURT:  Is that accurate in your view, Mr. Smith?

17           MR. SMITH:  Yes.

18           THE COURT:  Okay.  Then they won't be pre-admitted,

19   but based on the agreement that you've just announced, the

20   Defendant's expert will be able to refer to them in his

21   testimony.

22           What do we have left as far as disputed exhibits,

23   counsel?

24           MS. DE MORY:  We have still the Toskala books and CV,

25   and then we have the invention disclosures.

1          THE COURT:  All right.

2          MS. DE MORY:  The Nokia invention disclosures, which

3    Mr. Bunsow will handle.

4          THE COURT:  All right.  Well, let's take up Toskala

5    then.

6          MR. BUNSOW:  Good morning, Your Honor.

7          THE COURT:  Good morning.

8          MR. BUNSOW:  We frankly thought that this was resolved

9    with Apple's Motion in Limine No. 9.  Judge Love denied Apple's

10   Motion in Limine No. 9.  Basically, Apple moved Judge Love to

11   preclude Mr. Toskala from giving any opinions -- any lay

12   opinions, any opinions based on his personal knowledge.

13   Mr. Toskala is a long-standing engineer at Nokia, and was there

14   during the time that many of these patents were developed, and

15   was also a participant in the ETSI process itself, attended

16   meetings, made disclosures, and -- and the like.  So they lost

17   that Motion in Limine No. 9.

18         The exhibits that are challenged are Plaintiff's

19   Exhibits 233 through 236.  These are books that were written by

20   and edited by Mr. Toskala.  And portions -- some chapters of

21   those books relate to the technology of the patents-in-suit.

22   They show recognition of the patents and the technology.  They

23   bear on issues of validity and support Mr. Toskala's opinion.

24         The -- his bio is Exhibit 224, merely sets out his

25   long-standing experience in the industry and his work and

1    frankly will just make his testimony go that much smoother, but

2    I don't think there's a basis for objection to that.  He will

3    identify it, authenticate it, and attest to its accuracy and

4    truthfulness.

5            THE COURT:  All right.  What's the Defendant say?

6            MR. MUELLER:  Your Honor, we have no objection to

7    Mr. Toskala providing percipient factual testimony.  That's

8    exactly what we told Judge Love.

9            Our concern has been -- and I -- I want to perhaps add

10   a little bit more context to what happened at the pre-trial

11   conference.  But our concern has been that Mr. Toskala appears

12   and offers pseudo-expert opinions when he's never provided any

13   notice of those opinions as an expert.

14           At the pre-trial conference, the representation by

15   Core Wireless was, and I quote -- it's at Page 57 of the

16   transcript:  Mr. Toskala is a percipient witness.  He was at

17   Nokia for a long, long time.  He can tell -- he can give the

18   jury a lot of information about the patents, et cetera.  But

19   he's not going to offer legal opinions on validity or

20   infringement.

21           And if that's what he's going to do, we have no

22   objection, but putting into evidence books is, again, the

23   equivalent of the function of an expert.  He's not here as an

24   expert.  He can testify live to the jury as to his factual

25   experiences, but the books are hearsay, and he cannot rely on

1    the type of hearsay an expert could because he's not an expert.

2    He's a percipient witness who can relate his experiences to the

3    jury, and we have no objection to him doing that.

4          THE COURT:  All right.  Mr. Bunsow, he's not going to

5    offer expert opinions on the ultimate issues in the case?  Can

6    you confirm that for me?

7          MR. BUNSOW:  Yes, Your Honor, that's correct.

8          THE COURT:  Okay.  Well, I'm going to -- I'm going to

9    overrule the Defendant's objections.  He certainly can sponsor

10   his own books that he's written.  I see no problem with those

11   being pre-admitted, and his CV only gives background as to his

12   knowledge and experience.  So I don't see any basis to keep out

13   these matters.

14         So I'm going to -- I'm going to pre-admit what's been

15   objected to by Defendants as -- I guess this is PX 233 through

16   236 and 224?

17         MR. BUNSOW:  That's correct, Your Honor.

18         THE COURT:  All right.  That's the Court's ruling.

19         MR. BUNSOW:  The next category, Your Honor, is the

20   invention disclosure documents.  There are five Nokia Company

21   invention disclosures.  They were all identified by the

22   inventors themselves.  They formed the basis for the

23   applications that led to the patents-in-suit.  They are

24   Plaintiff's Exhibits 19 through 24.  We believe that the

25   stipulation does apply to these documents.  They are Nokia

1    documents.  There's no dispute about that.  The witnesses

2    identified them.  There's -- there shouldn't be any hearsay

3    issues or otherwise.

4         Interestingly, four of them are also on Defendant's

5    pre-admitted list.  They are Defendant's 160, 161, 183, and

6    186.  So Defendants themselves have listed them on their

7    pre-admission list, and yet object to them on our list.  The

8    only one that is not on the pre-admitted list is Plaintiff's

9    Exhibit 19, which I believe relates to the '321 patent.

10        But in any event, invention disclosures are clearly

11   relevant to the subject matter of the invention.  They are the

12   genesis of the invention.  These are clearly Nokia documents.

13   There's no objection to that.  They've been identified by the

14   inventors themselves, and they should be admissible.

15        THE COURT:  All right.  What's the Defendant's

16   position?

17        MR. BUNSOW:  Your Honor, may I stand over here?

18        THE COURT:  Certainly.

19        MR. BUNSOW:  Thank you.

20        MR. MUELLER:  And, Your Honor, on the invention

21   disclosure records, our position is simply these are hearsay.

22   Not all of them were authenticated by witnesses at depositions.

23   For example, for the '022 and '664 patents, no inventors were

24   deposed at all in this case.

25        Moreover, Core Wireless has access to at least certain

1    of these inventors and has through the litigation.  And, you

2    know, we believe that to the extent they want to offer the

3    inventors' views, they could bring the inventors to testify.

4    But to bring in records without actual inventor testimony we

5    think is improper, and we think these are hearsay.

6              THE COURT:  Do you have a response, Mr. Bunsow?  Did

7    you tell -- did you tell me that you believe these are covered

8    by the stipulation?

9              MR. BUNSOW:  I do, yes.  Clearly these are exactly,

10   from our perspective, what the stipulation was all about.  They

11   are clearly Nokia documents.  There is no dispute about that.

12   They were made at or about the time indicated.  They've been

13   identified by the inventors themselves.  And to the extent

14   there's any hearsay objection, the stipulation waives that.

15   They're business records.  They should be admissible.

16             THE COURT:  I'm going to pre-admit Plaintiff's 19

17   through 24 and overrule the Defendant's objections to them.

18             What else?  Any other remaining exhibit disputes?

19             MS. DE MORY:  Plaintiff has nothing else.

20             MR. MUELLER:  Nor does Defendant, Your Honor.  I do

21   have two, I believe, agreed upon issues that relate to the

22   evidence, if I might, Your Honor?

23             THE COURT:  These relate to exhibits in the case?

24             MR. MUELLER:  They do.  They're -- well, one relates

25   to exhibits in the case, and one relates to testimonial issues,

1   but they're agreements I just wanted to put on the record for

2   Your Honor's approval.

3          THE COURT:  All right.  Proceed.

4          MR. MUELLER:  The first one is testimonial.  Judge

5   Love has excluded, by way of his motion in limine ruling,

6   references to other litigation unless the parties can

7   demonstrate a substantive and consistency and approach Your

8   Honor to establish that before using it.  And so other

9   litigation references are presumptively under Judge Love's

10  ruling not admissible.

11         However, both sides want to make clear that to the

12  extent that they were to use a prior inconsistent statement of

13  a witness, they wanted to be able to do that while still

14  remaining true to the order in the case.  And so what the

15  parties have arrived at is a formulation of the form of

16  question they would propose to ask in that circumstance to on

17  the one hand be able to impeach a witness, and, on the other

18  hand, adhere to the ruling.

19         So what the parties have agreed to is asking the

20  witness, quote, you previously testified, correct?  In that

21  previous testimony, you were asked -- and then give the excerpt

22  from the prior testimony with any references to cases redacted

23  so there's no material indicating that case for the jury.

24         And the parties would not refer to the fact that this

25  prior testimony was made in other litigation or refer to the

1    nature of the facts in that case.

2            THE COURT:  Is that the Plaintiff's agreement, as

3    well?

4            MR. BUNSOW:  It is, Your Honor.  Just -- just to be

5    clear, what we don't want is a side show about what the other

6    case was about and --

7            THE COURT:  Absolutely.

8            MR. BUNSOW:  -- all -- all that sort of thing.

9            THE COURT:  No.

10           MR. BUNSOW:  And so the purpose of -- I'm sorry.

11           THE COURT:  And the parties' agreement is acceptable

12   to the Court to the extent it's used solely for the purpose of

13   attempting to impeach the witness.  It doesn't -- this ruling

14   doesn't obviate Judge Love's ruling on the motion in limine.

15   And with all limine orders, as you well know, it's not an

16   absolute prohibition against the use of them, it's a

17   requirement that you come to the bench and get leave of the

18   Court before you go into them before the jury.

19           MR. BUNSOW:  Understood, Your Honor.

20           THE COURT:  But I think your agreement is perfectly

21   fine.  I would -- I would make sure that there are no

22   references that aren't redacted in anything you might show on

23   the overhead projector as a part of the impeachment process to

24   that prior litigation.

25           MR. MUELLER:  Right.

1          MR. BUNSOW:  Absolutely.

2          THE COURT:  And just focus on the substance of what

3    they said then versus the substance of what they say now.

4          MR. MUELLER:  Right.

5          THE COURT:  Okay?

6          MR. BUNSOW:  There was one other agreement, Your

7    Honor, and that had to do with a -- sort of a horse trade we

8    made early this morning.  Judge Love had granted us the

9    opportunity to introduce revenue figures for Apple limited to

10   the United States.  We have agreed not to do that in return for

11   Apple waiving its objections to correspondence between Nokia

12   and Apple relating to the earlier license agreement.

13         What I suggested to Mr. Mueller is that we would put

14   together a specific joint stipulation to that effect in writing

15   and submit that to the Court.  But that's the substance of it.

16         THE COURT:  All right.  You agree with that, Mr.

17   Mueller?

18         MR. MUELLER:  I do, Your Honor.  The only thing I'd

19   add to it is on the financial piece, that we cover revenues,

20   profits, and pricing at a product level and a corporate level.

21         MR. BUNSOW:  Correct.

22         THE COURT:  All right.  Does this agreement -- is it

23   going to impact any specific documents that would need to be

24   identified by exhibit number or otherwise?

25         MR. BUNSOW:  It does.  It identified -- it impacts the

```
 1    communications, mainly email communications between Nokia --

 2            THE COURT:  Right.

 3            MR. BUNSOW:  -- and Apple, and those exhibit numbers

 4    will be in the stipulation.

 5            THE COURT:  And they'll be -- as a part of the

 6    stipulation, they'll be pre-admitted?

 7            MR. BUNSOW:  They'll be moved to the pre-admission

 8    list, correct.

 9            THE COURT:  All right.  I just want to make sure that

10    as far as my courtroom deputy is concerned, that we have a

11    comprehensive and accurate list of the pre-admitted exhibits

12    before we start the trial.

13            MR. BUNSOW:  Yes, Your Honor.

14            MR. SMITH:  There's one additional point, Your Honor.

15    For some of the financial documents, we may need to redact some

16    of those numbers because there's other parts that would remain

17    admissible -- unit numbers, for example -- and we'll work with

18    the Plaintiff to do that.

19            MR. BUNSOW:  Right.

20            THE COURT:  All right.  Well, I'm going to assume

21    you'll meet and confer regrading anything that's covered by

22    your stipulation and whether it's inside or outside of the

23    stipulation.

24            MR. BUNSOW:  Yes.

25            MR. MUELLER:  We will, Your Honor.  There's one final
```

1    agreement that I have -- we wanted to present to the Court with

2    Your Honor.  And, again, this is a joint agreement that would

3    apply to both sides, but there's a small number of exhibits for

4    which we are not re-arguing them now to Your Honor.  We do want

5    to make sure we preserve our rights on appeal.  But we also

6    don't want to interrupt the trial and keep objecting over and

7    over again or approaching the bench.

8         And so what we propose to Your Honor is that for those

9    small group of exhibits on both sides, the parties indicate on

10   the pre-admitted exhibit list the following, and this is

11   subject to Your Honor's approval.  The party -- and I'll use

12   Apple as an example -- Apple objects to these exhibits, but

13   Magistrate Judge Love overruled the objections.  Apple

14   preserves its objections, including for appeal, and per the

15   parties' agreement and the Court's approval -- if Your Honor

16   does approve -- makes these objections on a continuing basis as

17   if Apple objected to each and every instance in which the

18   exhibits and information contained therein were referred to at

19   trial.

20        THE COURT:  Well, substantively, I don't have any

21   problem with that.  It would seem to me, though, as a practical

22   matter, rather than burden the list of pre-admitted exhibits

23   with those kind of notations, it would be simply better to

24   exclude those documents from the list of pre-admitted exhibits

25   so it's clean, and then I'm happy outside of the presence of

 1   the jury, to let both sides go on the record, identify those

 2   with particularity, and I will -- I have no problem with

 3   agreeing that you'll have an ongoing objection to them so that

 4   you can build your record and preserve it the way that you've

 5   indicated without doing it in the body of the list of

 6   pre-admitted exhibits.

 7           MR. MUELLER:  Thank you, Your Honor.  We'll do exactly

 8   that.

 9           THE COURT:  Just let me know when it's convenient.

10   We'll do it for both sides at the same time outside of the

11   jury's presence.

12           MR. MUELLER:  Thank you.

13           THE COURT:  All right.

14           MR. MUELLER:  And that's all we have, Your Honor, for

15   evidentiary issues.  There are a couple other mechanical

16   issues.

17           THE COURT:  Well, I understand we have some equitable

18   things to talk about.  Let's get to that.

19           MR. BUNSOW:  We do, Your Honor.

20           THE COURT:  Or inequitable, depending on the case.

21           MR. BUNSOW:  Depending on whose -- whose side you're

22   on.

23           So we believe that Apple's equitable defenses are just

24   that, they're equitable defenses.  They're defenses for the

25   Court.  We think that there are several reasons why they should

1    not be presented to the jury, either way -- by way of evidence,

2    argument, or verdict.  In particular, they would tend to

3    confuse the jury by presenting them and then perhaps not asking

4    verdict questions about them.

5          But more importantly, they will take time, not only to

6    present but to -- to counter, and they're -- they're simply --

7    I'll call them side show issues to a large extent.  This is a

8    patent infringement case.  There are five patents.  It's going

9    to be a yeoman's job to present a five patent case to this jury

10   in the time that you've generously given us.

11         So I -- I just think that these purely equitable

12   issues, and there's no argument that they're not equitable

13   issues, they need to be decided by Your Honor in the final

14   instance anyway.  They should not be presented to the jury.

15   The jury should not be asked to render any kind of verdict on

16   them, and this case should be a main street patent infringement

17   case.

18         THE COURT:  Well, other than -- other than you

19   referring to them as side show issues, I assume they're your

20   issues that you're wanting to raise, and I assume that they're

21   being raised for the ultimate purpose of -- from the

22   Plaintiff's standpoint, being able to ask for injunctive relief

23   at some point?  Is that -- is that the basis for them, counsel?

24         MR. BUNSOW:  We are talking about the enforceability

25   defenses of Apple.  Their enforceability defenses are the

1    equitable defenses that we're addressing with this motion.

2           THE COURT:  Okay.

3           MR. BUNSOW:  And that is the supposed non-compliance

4    with ETSI obligations, the failure to disclose those types of

5    things.

6           THE COURT:  All right.  What's the Defendant's

7    response?

8           MR. MUELLER:  Your Honor, I think it might be helpful

9    to explain at a practical level exactly what we're talking

10   about here.  There's two witnesses in the case to which this

11   argument applies.  One is Plaintiff's expert, a gentleman named

12   Mr. Buttrick.  The second is Defendant's expert, who is

13   Professor Michael Walker.  Those are the two witnesses.

14          Those two witnesses have offered opinions on two

15   subjects.  One is the parties' respective breach of contract

16   claims, and both sides have made claims that the other party

17   has breached the rules of ETSI or contractual obligations

18   arising from those rules.  And there's no dispute those are

19   jury issues.  They're contract claims.  Mr. Buttrick and

20   Professor Walker will be testifying on those contract issues in

21   any event.  Those are plainly jury issues.

22          So really what we're talking about here is a segment

23   of those two witness's testimony that would deal with the rules

24   governing timely disclosure of patents to the European

25   Telecommunications Standards Institute.  And there's a series

1  of cases that we've cited to, Your Honor, where courts have

2  held that if you don't follow those rules, your patent can

3  become unenforceable as a result.  That is absolutely a

4  question that is one of equity and is ultimately in Your

5  Honor's discretion after hearing the evidence.

6         Our point is simply that Mr. Buttrick and Professor

7  Walker are going to be here anyway testifying to the jury on

8  closely related questions.  The most efficient course is to

9  have them testify on their opinions.  We're talking about 15,

10 20 minutes more of testimony, maybe a bit more on the outside.

11        At the conclusion of evidence, if Your Honor chose,

12 you could submit those questions to the jury for an advisory

13 verdict.  If Your Honor chose not to, of course Your Honor

14 could decide them yourselves, based on the record.  But from

15 an efficiency perspective, there's intertwined questions of

16 fact where jury issues go right alongside the equitable issues,

17 and -- and we simply thing it makes sense, as a matter of

18 efficiency, to try it all together.

19        Judge Love reached the same conclusion, again,

20 obviously pending Your Honor's approval.  There's been multiple

21 attempts by Core Wireless to fragment the case.  And each time

22 Judge Love has said, this makes sense to try together, and we

23 think so, too.

24        THE COURT:  Are -- are both sides satisfied that we're

25 talking about 15 or 20 minutes worth of testimony?  Is it

1   really that brief?

2           MR. BUNSOW:  Frankly, I don't think so.  If -- if

3   Apple would commit to that, that would go a long way toward

4   solving some of my concerns, but many of the exhibits that --

5   the ETSI exhibits that we've talked about this morning are the

6   subject of that testimony.  So I -- I certainly don't think

7   it's that limited.  I think it's more extensive than that.

8           THE COURT:  Mr. Mueller.

9           MR. MUELLER:  Sure.  It's -- it's in that ballpark,

10  Your Honor.  I mean, it could be a half-hour, but we're not

11  talking about a long piece of testimony.  It would be Professor

12  Walker and Mr. Buttrick testifying as to the rules, which

13  they're going to do in any event, and that goes to the contract

14  claims.  That testimony will probably take, I don't know, 15 or

15  20 minutes, in that ballpark.  In addition to that, we would

16  put in the untimely disclosure arguments, and that would be it.

17  So we have a segment of testimony that they're going to provide

18  in any event on what the rules are and how their framework is

19  set up.

20          And then the question is the incremental addition of

21  the application of those rules to timely disclosure.  You know,

22  it's in that ballpark of 15, 20 minutes, a half-hour.  I've

23  done this examination before, and it's not a very long

24  examination.

25          THE COURT:  Where -- where are Mr. Buttrick and

1   Professor Walker from?

2           MR. MUELLER:  United Kingdom.

3           THE COURT:  Okay.  Anything else from either side on

4   this issue?  When -- when in the course of the trial is it

5   expected these gentlemen will testify?

6           MR. BUNSOW:  I was just going to mention that.  I

7   believe they will be the last -- among the last witnesses.  I

8   would expect that Mr. Walker would be probably the last witness

9   that Apple puts on.  Mr. Buttrick would be testifying in -- in

10  a rebuttal capacity, so he would probably be our very last

11  witness with the possible exception of a technical expert that

12  talks about validity.  But very late in the case, I believe.

13          MR. MUELLER:  The -- the -- I'm sorry, Your Honor,

14  please.

15          THE COURT:  Go ahead.

16          MR. MUELLER:  The only thing I'd add to that is to the

17  extent that the Plaintiff presses their contract claim, we'd

18  presume they'd be offering Mr. Buttrick as part of their

19  case-in-chief.  The contract claim would be one on which they

20  bear the burden.

21          THE COURT:  Well, I'm -- I'm sensitive to the

22  practical ramifications of these witnesses from Europe and not

23  from this continent and the travel that would be necessitated

24  by hearing the equitable argument later.  And I'm also aware of

25  the fact that if a verdict comes in a certain way, it may moot

1    that altogether.

2         But it seems to me that the better course is to

3    separate that from the case-in-chief.  However, what I would

4    suggest is while these gentlemen are here in Tyler, Texas,

5    either over a lunch hour or somewhere else outside of the

6    presence of the jury, I'll hear their 30 minutes worth of

7    testimony.  And that way they won't have to travel back at a

8    later date.  And if the verdict is rendered such that this is

9    still a live equitable issue, post-verdict, I'll have the

10   benefit of that testimony already in hand.  But that way we

11   won't have to co-mingle it with the purely factual issues the

12   jury's going to be asked to answer.

13        MR. MUELLER:  Understood, Your Honor.  And just so

14   we're clear, that wouldn't affect their contract testimony.

15   This is just the equitable piece?

16        THE COURT:  It's just the equitable piece as far as I

17   see it.

18        MR. MUELLER:  Thank you, Your Honor.

19        THE COURT:  Is that understood, Mr. Bunsow?

20        MR. BUNSOW:  Yes, Your Honor.  I think that's a good

21   procedure.

22        THE COURT:  Okay.  Then before they get away, I'll

23   leave it to you gentlemen to prompt me that we all need to give

24   up half of our lunch hour one day so I can hear their

25   testimony.

```
 1            Okay.  Are there other issues of a pre-trial nature
 2   that we need to take up.  What's left?
 3            MS. DE MORY:  I think that's it.
 4            MR. BUNSOW:  That's it from the Plaintiff's side.
 5            MR. MUELLER:  We have just one final one, Your Honor,
 6   and that's the -- the issue of this injunctive relief request.
 7   For the reasons that we submitted in the papers, we don't
 8   believe that's procedurally or substantively proper.  And --
 9   and we're really just looking for -- for Your Honor's guidance
10   as to what impact that might have on the trial, if any.
11            THE COURT:  This is the unwilling licensee issue?
12            MR. BUNSOW:  Correct, Your Honor.
13            THE COURT:  Tell me what you have in mind, Mr. Bunsow.
14            MR. BUNSOW:  So what we have in mind, Your Honor, is
15   to show through testimony and documents Apple's conduct in this
16   case concerning their demand on the one hand for FRAND
17   consideration and their clear refusal on the other hand to
18   engage in good faith negotiations.
19            Just a quick insight.  It took over two years to get a
20   meeting with Apple to discuss these -- this license and discuss
21   this case.  And they knew about these patents and the fact that
22   they were standard essential and that Apple needed a license at
23   least as early as 2009.
24            We believe that as a member of ETSI, claiming rights
25   to ETSI benefits, they have an obligation to negotiate in good
```

1  faith.  And the violation of that right makes them amenable to

2  certain remedies.  This is purely a remedies question.  It

3  doesn't arise unless the jury finds that Apple was an unwilling

4  licensee.  And like all post-trial remedies, it's left to the

5  sound discretion of the Court.

6          We believe that there is authority supporting this

7  position, not the least of which is cited in our brief in terms

8  of the ITC -- I'm sorry, the FCC statements, and also Judge

9  Davis' statement in a recent case that basically ETSI is a

10 two-way street.  If you choose to a mean -- if you choose to

11 take the benefits as a potential licensee by demanding FRAND

12 consideration, then you must negotiate in good faith.

13         So it -- the remedies for a violation of Apple's ETSI

14 obligation in this case include potential injunctive relief,

15 but it also includes the potential for an enhanced

16 forward-looking royalty rate.  If we are successful in this

17 case, we expect a jury to award damages for past infringement

18 through a date certain.  We will be asking the Court for a

19 forward-looking royalty rate on the infringing products.

20         We believe in that instance, if Apple is an unwilling

21 licensee, they are no longer entitled to FRAND consideration.

22 By not being entitled to FRAND consideration, the royalty rate

23 should be significantly higher.  And that's what we'll be

24 asking the Court.

25         THE COURT:  Mr. Mueller.

1            MR. MUELLER:  So I -- I won't get into all the factual

2    evidence right now, but just a few big picture points.

3            First, this was never pleaded in the complaint.

4            Second, the corporate representative who is going to

5    be appearing at trial said at his deposition that Core Wireless

6    was not pursuing an injunction, and now they are.

7            Third, at least one expert report submitted by Core

8    Wireless was predicated expressly on their not seeking an

9    injunction.

10           Fourth, of course, money would be adequate

11   compensation, given the nature of their business.

12           Fifth, even for a company that have a product

13   business, the law is clear.  It's exceedingly difficult to

14   obtain an injunction.  And for all those reasons, we think

15   there's no credible claim here to an injunction.

16           But I think at a practical level, this falls in

17   exactly the same bucket that we just discussed with respect to

18   the unenforceability issues.

19           To the extent that the jury is not going to hear facts

20   that relate to an equitable question, they shouldn't hear facts

21   that relate to the equitable issue of the injunction.  And so

22   to the extent that Core Wireless wants to make the argument to

23   Your Honor that Apple's supposed status as an unwilling

24   licensee renders it susceptible to an injunction, that's an

25   argument they can take up outside the jury's earshot and does

1   not need to be presented to the jury.

2          To the extent the jury is going to hear facts on --

3   that might be relevant to an injunction, we have additional

4   issues we'd like to present to them.  But given Your Honor's

5   ruling on unenforceability, we would respectfully submit that

6   this, along with the other equitable issue, should be severed

7   and treated separately from the jury, and that would include

8   this unwilling licensee argument.

9          THE COURT:  Well, I assume that this testimony is

10  going to be intertwined with the other testimony regarding the

11  FRAND issues, and it may -- what -- what's opinion of --

12  what's the opinion of both counsel as to how easily separatable

13  that will be from the other testimony these witnesses are

14  getting?

15         MR. MUELLER:  Sure, Your Honor.

16         So one practical impact, I think, would be they have

17  requested that Your Honor ask from the jury an instruction on

18  Apple being an unwilling licensee.  That is not an issue that

19  is relevant to the contract claims.  It's not relevant to the

20  patent claims.  It's purely, as they have argued it -- and we

21  disagree on the merits.  But as they have argued it, something

22  that would be relevant to the Court's equitable exercise of its

23  discretion in the injunction context.

24         And so what they're effectively asking Your Honor to

25  do is to have the jury decide predicate factual questions for

1    Your Honor's equitable decision.  Well, that's exactly what

2    we're not doing on the unenforceability issues, and we would

3    submit to Your Honor the same should be true here.

4              THE COURT:  Well --

5              MR. BUNSOW:  To answer your question, Your Honor,

6    these are intertwined with the willfulness evidence,

7    willfulness proof, as well as other issues in the case.  They

8    will be presented by Mr. Lindgren in his testimony, as well

9    as other witnesses, and the -- there's no additional

10   testimony that would be presented specific to this particular

11   issue.

12             THE COURT:  Well, that being the case, I -- I'm not

13   prepared to tell you today what questions I'm going to submit

14   to the jury in the verdict.  I'm not prepared to tell you today

15   what I'm going to instruct the verdict -- the jury on.

16             I think given that this testimony is coming in

17   regardless, it seems to me the better course is for the

18   Court to carry this until the charge conference, and then I'll

19   have the benefit of the entire evidentiary record freshly

20   before me.

21             So I -- I can -- unless you tell me otherwise, I can

22   see no compelling reason why I have to give you a yes or no

23   answer on this now, and I would feel much more comfortable

24   doing it after I've heard the evidence in the case.

25             MR. MUELLER:  Understood, Your Honor.  Thank you.

1             MR. BUNSOW:  I'll just have to change my opening

2    slides a bit.

3             THE COURT:  There are worse things that could happen.

4             MR. BUNSOW:  Yes, sir.

5             THE COURT:  Okay.

6             MR. MUELLER:  Your Honor?

7             THE COURT:  Yes.

8             MR. MUELLER:  We have two additional issues -- I -- I

9    apologize.  We can take them up in whatever -- whatever order

10   you find --

11            THE COURT:  I'm -- you know, it's almost 12:20.  I'm

12   happy to stay here as long as you all want.  If you want to

13   break for lunch, I'll bring you back shortly thereafter.

14            MR. MUELLER:  Sure.  These shouldn't take long.

15            THE COURT:  Okay.

16            MR. MUELLER:  The first is the contract claims the

17   parties are presenting in this case relate to commitments made

18   to ETSI, and the ETSI intellectual property rights policy

19   states that it shall be interpreted in accordance with French

20   law.

21            The extent to which that's going to matter in this

22   case, we'll see.  But to the extent it would be helpful to Your

23   Honor, we did submit in this case an opinion from an expert on

24   French law, and we have attached that to our pre-trial notice

25   for the Court.  This is really an issue for Your Honor, not the

1    jury.  But we wanted to make Your Honor aware that if it would

2    be helpful, we could bring Professor Palmer, a professor at

3    Tulane, in to answer questions from Your Honor or Core

4    Wireless.  We could present them for examination at a break in

5    the action if that would assist Your Honor on the French law

6    issues.

7            THE COURT:  Mr. Bunsow, what's your thought on this?

8            MR. BUNSOW:  He has submitted an expert report, which

9    is a pretty easy read.  We frankly don't have anything -- any

10   objection with what he says in his expert report.  I don't see

11   any reason for testimony.

12           If Your Honor believes that there's some purpose to

13   incorporate French law into this proceeding and you have

14   questions and we're allowed to do some modest

15   cross-examination, we certainly have no objection to that, but

16   it just --

17           THE COURT:  Does the Court have a copy of this

18   report?

19           MR. MUELLER:  Yes, Your Honor.  And if -- if that

20   suffices, we agree, there's no need to bring in Professor

21   Palmer.

22           THE COURT:  All right.  Well, let's do this.  Let me

23   focus on the report, and having given that some attention,

24   if -- if that's not adequate, if the Court believes there's a

25   need for something beyond the report, I'll let you know.

```
 1              MR. MUELLER:  Thank you, Your Honor.

 2              And our final issue, the last one we have, was a

 3    little bit of a late-breaking issue that we received notice of

 4    in the last week or so, and that is we've been informed that

 5    Core Wireless wants to refer to the absence of an opinion of

 6    counsel.  We haven't received word on the exact substantive

 7    basis for it, but this is something we had never heard before.

 8    And to give Your Honor the context, we had posed

 9    interrogatories to Core Wireless --

10              MR. BUNSOW:  We've reconsidered that.  We will not be

11    bringing that up.

12              MR. MUELLER:  That's resolved.  We have nothing

13    further Your Honor.

14              THE COURT:  Okay.

15              MR. ALBRITTON:  Your Honor --

16              MR. BUNSOW:  One other procedural matter that we need

17    your blessing on, there's a witness -- an Apple witness by the

18    name of Dr. Wayne Stark.  Because of the way the patents are

19    split up among the experts, we have agreed among ourselves that

20    two witnesses -- or two -- two attorneys can do his direct

21    examination, two attorneys can do his cross-examination.

22    Obviously, the agreement is there won't be any repetition.

23    They are very discreet and distinct subject matter areas, and

24    if Your Honor has no objection to that --

25              THE COURT:  I'm aware of this request, and I don't
```

```
 1   have any problem with it as long as it's limited to Dr. Stark
 2   and there's not overlap.
 3            MR. BUNSOW:  Correct.
 4            THE COURT:  No, I'll -- I'll approve it.  And simply,
 5   we won't make a big deal out of it.  When that happens, just
 6   quietly send your second person up and carry on, and do the
 7   same thing during the cross, okay?
 8            MR. BUNSOW:  Thank you.
 9            THE COURT:  Anything else?  Mr. Albritton?
10            MR. ALBRITTON:  Thank you, Your Honor.  I just wanted
11   to -- may I speak from here?
12            THE COURT:  You may speak from there.
13            MR. ALBRITTON:  Thank you very much, Your Honor.
14            Will we have access to the jury list and the
15   questionnaires tomorrow at -- at some point from the Clerk's
16   Office?
17            THE COURT:  That's not the typical Tyler practice, but
18   as you know, that's my typical practice, and that's what we did
19   in Smartflash, so we should do the same thing.
20            MR. ALBRITTON:  Thank you very much, Your Honor.
21            THE COURT:  And I'll make sure the Clerk's Office is
22   aware.
23            MR. ALBRITTON:  Thank you very much.
24            THE COURT:  And you know -- you know the procedure on
25   handling these questionnaires?
```

1          MR. ALBRITTON:  Yes, Your Honor.

2          THE COURT:  So that they're turned back in?

3          MR. ALBRITTON:  Yes, sir.  Thank you very much, Your

4   Honor.

5          THE COURT:  All right.  Is there anything else of a

6   pre-trial nature we haven't covered?

7          MR. BUNSOW:  Nothing from the Plaintiff, Your Honor.

8          MR. MUELLER:  Nothing from the Defendant, Your Honor.

9          THE COURT:  All right.  Well, I look forward to an

10  interesting trial with both sides.  That will complete the

11  pre-trial hearing for today.  Unless something else arises, I

12  will see you Monday morning.

13         MR. MUELLER:  Thank you, Your Honor.

14         THE COURT:  The Court stands in recess.

15         (Hearing concluded.)

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4     correct transcript from the stenographic notes of the

5     proceedings in the above-entitled matter to the best of my

6     ability.

7

8

9      /s/ Shelly Holmes                        3/5/15
      SHELLY HOLMES, CSR-TCRR                   Date
10    OFFICIAL REPORTER
      State of Texas No.: 7804
11    Expiration Date: 12/31/16

12

13

14

15

16

17

18

19

20

21

22

23

24

25