# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> APPLE INC., § <br> § <br> Defendant. § | § <br> § <br> § <br> § <br> CASE NO. 6:12-CV-100-JRG <br> § <br> § <br> § <br> § <br> § <br> § |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Lift the Stay and for Dismissal and/or Summary Judgment on Core Wireless's Portfolio Contract and Unjust Enrichment Claims (Dkt. No. 440) (hereinafter, "Motion") filed by Defendant Apple Inc. ("Apple"). Plaintiff Core Wireless Licensing S.a.r.l. ("Core") opposes the Motion for Dismissal and/or Summary Judgment on Core's Portfolio Contract and Unjust Enrichment Claims. Having considered the motion, the related briefing in support of and in opposition to the same, the oral arguments presented by counsel on July 6, 2015, and the materials in the record, the Court finds that the Motion should be and hereby is **GRANTED**.

## I. BACKGROUND

### A. Procedural History

On February 29, 2012, Core filed suit against Apple alleging that Apple was infringing on U.S. Patent Nos. 6,792,277 (the "'277 Patent"), 6,697,347 (the "'347 Patent"), 7,477,181 (the "'181 Patent"), 6,788,959 (the "'959 Patent"), 7,529,271 (the "'271 Patent"), 6,266,321 (the "'321

1

Patent"), and 6,978,143 (the "'143 Patent"), (Core's Original Compl., Dkt. No. 1). On November 12, 2012, Core amended its complaint to also allege infringement of U.S. Patent Nos. 7,804,850 (the "'850 Patent"), 7,817,679 (the "'679 Patent"), 7,415,045 (the "'045 Patent"), 6,674,860 (the "'860 Patent"), 7,383,022 (the "'022 Patent"), 7,599,664 (the "'664 Patent"), and 8,259,689 (the "'689 Patent"), (Core's Am. Compl., Dkt. No. 61). In response to Apple's Amended Answer filed on June 21, 2013, Core raised counterclaims of breach of contract and unjust enrichment on July 2, 2013. (Core's Answer to Apple's Am. Answer, Dkt. No. 115 ("Core's Answer").) The Parties jointly moved to dismiss six out of fourteen patents without prejudice on March 4, 2014. (Dkt. No. 180.) During a hearing held on May 1, 2014, the Court stayed the breach of contract counterclaims as to Core's portfolio of patents, but specifically allowed the breach of contract counterclaims to move forward as to the patents that remained in the suit; the Court also stayed Core's unjust enrichment claim. *See* (May 2, 2014, Order, Dkt. No. 207, at 1; May 1, 2014, Hearing Tr., Dkt. No. 216, at 18:14–18.) The Parties jointly moved to dismiss three out of the remaining eight patents on November 6, 2014, leaving just the '321 Patent, the '143 Patent, the '022 Patent, the '664 Patent, and the '850 Patent (collectively, the "Patents-in-Suit") for the jury trial which began on March 9, 2015. (Dkt. No. 308.)

  **B. The Breach of Contract Claims**

Core's breach of contract claims originate from the Intellectual Property Rights Policy ("IPR Policy") set forth by the European Telecommunications Standards Institute ("ETSI"). *See* (Core's Response to Apple's Motion to Dismiss or Strike Core's Counterclaims-in-Reply, Dkt. No. 125 ("MTD Resp."), at 9.) ETSI is an organization that defines a set of standards that can be used on electronic devices. *See* (March 9, 2015, A.M. Trial Tr., Dkt. No. 419, at 160:20–22.)

Standards, at least as relevant to the current case, are, generally, a set of requirements that govern the operation of a device in relation to a particular feature and help facilitate interoperability between various manufacturers' devices.[1] *See, e.g.*, (March 9, 2015, A.M. Trial Tr. 160:20–22.) A particular company or organization can apply to become a member of ETSI, which confers certain benefits. For example, ETSI members can unilaterally propose that their patents be included in a particular standard and can declare their patents to be required to implement a particular standard; however, ETSI does not review whether a patent declared standards-essential by a member is actually essential to the standard. *See, e.g.*, (March 11, 2015, A.M. Trial Tr., Dkt. No. 422, at 49:8–10); (March 11, 2015, P.M. Trial Tr., Dkt. No. 423, at 60:11–18.) The parties agree that ETSI members who declare their patents to be standards-essential are obligated to license such patents at a fair, reasonable, and non-discriminatory ("FRAND") rate. *See, e.g.*, (Apple's Am. Answer, Dkt. No. 107, at ¶112–13); (Core's Answer, at ¶ 20.) Both Core and Apple are members of ETSI.

Core alleges that the licensing obligation for ETSI members cuts both ways. *See* (Core's Resp. in Opp'n Apple's Motion, Dkt. No. 446 ("Resp."), at 3.) In other words, Core argues that, as a member of ETSI, Apple was obligated to "negotiate a FRAND royalty in good faith" on the patents that Core declared standards-essential, regardless of whether the patents were valid and infringed.[2] *See* (*id.*); *see also* (July 6, 2015, Hr'g Tr., Dkt. No. 463, at 40:18–24 ("[Counsel for

---

[1] *See* ETSI, *What are Standards?*, http://www.etsi.org/standards/what-are-standards (last visited July 22, 2015) ("One dictionary definition that comes close to ETSI's interpretation is: 'a document specifying nationally or internationally agreed properties of manufactured goods, principles for procedure, etc.'").

[2] The Court notes that during oral argument, counsel for Core claimed that "[t]o the extent that patents are not infringed, there is no obligation to take a license." (July 6, 2015, Hr'g Tr., Dkt. No. 463, at 30:25–31:4.) However, in hearing held earlier in front of Magistrate Judge Love on that same day and in its briefing, Core took the position that the breach of contract claims presented did not depend on a finding of infringement and validity. *See* (MTD Resp. at 10); July 6, 2015 Magistrate Judge Love Hr'g Tr., Dkt. No. 92 in Case No. 6:14-CV-752, at 12:5–11 ("[Counsel for Core Wireless]: There is an obligation to negotiate for fair and reasonable compensation to IPR

Core Wireless]: If I might, counsel said that you're not entitled to compensation until you prove validity and infringement, and that's certainly true in an arm's length situation. We're not talking about an arm's length situation. We're talking about people who have joined an organization called ETSI and who have committed -- committed to honor the obligations that ETSI imposes.").)

Core bases this two-way obligation on clause 3.2 of ETSI's IPR Policy:

> "IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS."

(Resp. at 4–5.)

Other than the IPR Policy, Core does not point to any other contract between Apple and Core that would govern their respective licensing obligations.

## C. The Unjust Enrichment Claim

Core's unjust enrichment claim, as identified in its pleadings, appears to be based on the alleged benefit that Apple has gained from the alleged use of Core's intellectual property:

> 46. By implementing the relevant GSM and/or UMTS standards, Apple has thus has benefited from the patented contributions.
>
> 47. Apple has refused to negotiate a FRAND royalty with Core Wireless, has refused to timely respond to Core Wireless FRAND royalty offer, and has not paid a FRAND royalty for the benefit of using this patented technology.
>
> 48. As a result of the conduct alleged herein, Apple has been unjustly enriched to Core Wireless' detriment.

(Core's Answer at ¶¶ 46–48.)

---

holders. It's totally separate and distinct from findings of infringement. Apple became a member and undertook those obligations, and it has failed to comply with those obligations. It doesn't have anything to do with the ultimate result of infringement.").

**D. The Trial**

A jury trial regarding infringement of the Patents-in-Suit commenced on March 9, 2015. After the Parties completed presenting their evidence, the Court concluded that Core had not produced adequate evidence of the existence of a contract on which a breach of contract claim could be brought and intentionally declined to present the breach of contract question to the jury. *See* (March 16, 2015, A.M. Trial Tr., Dkt. No. 428, at 26:9–23.) Though Core objected to this omission during the Formal Charge Conference, (*id.* at 20:18–21:3, 26:9–13), Core has not re-raised the issue post-trial, whether through a Motion for Judgment as a Matter of Law, Motion for New Trial, or another appropriate vehicle. The jury returned a verdict of non-infringement on March 16, 2015. (Jury Verdict, Dkt. No. 399.)

**E. Issues Presented in this Motion**

In the instant motion, Apple asks the Court to lift the stay (discussed above) as to the contract claims involving the entire portfolio of patents and the unjust enrichment claim. Further, Apple asks that that Court either dismiss the contract claims or grant summary judgment in favor of Apple. (Motion at 1-2.) In doing so, Apple's argument is as follows:

(1)   Core's breach of contract claims as to Core's entire portfolio of patents rely on the same contract as Core's breach of contract claims as to the Patents-in-Suit; and

(2)   thus, the Court's ruling regarding the lack of evidence regarding a contract claim between Apple and Core on the Patents-in-Suit bars re-litigation of the breach of contract claims as to Core's entire portfolio of patents.

Apple also requests that the Court either dismiss the unjust enrichment claim or grant summary judgment in favor of Apple on that claim. (*Id.*) In doing so, Apple makes the following arguments:

(1) Core's unjust enrichment claim is preempted by the Patent Act;

(2) Core has no evidence of unjust enrichment; and

(3) Core's claim is barred by the statute of limitations.

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

In ruling on a motion under Rule 12(c), the Court may consider the pleadings themselves, and any exhibits thereto or matters incorporated by reference therein, as long as all the material allegations of fact are undisputed and only questions of law remain to be decided by the court. *See Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998) (holding that documents attached to the pleadings "thereby [become] part of [the] pleadings"). The ultimate question for the court in deciding a Rule 12(c) motion is whether, viewed in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See Hughes v. Tobacco*

*Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000).

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment can satisfy its initial burden of establishing its right to judgment by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

## III.  ANALYSIS

Core does not explicitly oppose the lifting of the stay. *See, e.g.*, (Resp.) Therefore, the Court will assume that Core does not oppose lifting the stay and will now consider the breach of contract and unjust enrichment claims.

### A.  Breach of Contract Claims

At trial, Core was given a full and fair opportunity to present its case regarding its breach of contract claims as to the Patents-in-Suit. During its case-in-chief, Core presented evidence, including presumably the evidence Core believed was most relevant to the breach of contract claims. After the close of all the evidence in the case, the Court concluded that Core had not presented a *prima facie* case of the existence of a contract. *See* (March 16, 2015, A.M. Trial Tr., Dkt. No. 428, at 26:9–23.) Because Core had not overcome this **threshold** issue, the Court did not allow Core's proposed verdict question regarding the alleged breach of contract as to the Patents-in-Suits to be submitted to the jury. *See* (*id.*) Though Core objected during the charge conference to the omission of this question, Core has not requested any post-trial reconsideration

7

of the Court's decision to dismiss the contract question at trial. Core has also not requested any other appropriate relief post-trial.

Core does not deny that the contract claims as to the rest of the portfolio, which were stayed, appear to rely on the same underlying alleged contract as those claims against the Patents-in-Suit, which went forward at trial and were subsequently dismissed.[3] *See* July 6, 2015 Magistrate Judge Love Hearing Tr., Dkt. No. 92 in Case No. 6:14-CV-752, at 9:6–13 ("[Counsel for Core Wireless]: Well, I think if you look at the fundamental underpinning of the contractual claims and where they come from, it comes from declarations made to [ETSI]; and it comes from Apple's status as a member of [ETSI] who is taking advantage of practicing the standards. That is not a patent-by-patent basis. That really is a much broader approach. It is a totally declared standard essential benefit that goes to Apple."). When prompted during a hearing held on July 6, 2015, Core was unable to point to any new potentially-discoverable evidence that would be relevant to the issue of the existence of said contract. *See* (July 6, 2015, Hr'g Tr. 33:10–13 ("[Counsel for Core Wireless]: There -- some of the evidence, admittedly, is the same. Apple's actions, for example, would -- would likely be the same. But the presentation would include the value and derivation of the portfolio.").) As noted, the only evidence that Core identified went, instead, to the issue of the potential damages if a breach was found to have occurred. *See* (*id.*)

Because the Court has already dismissed a claim based on the same alleged contract for lack of evidence of the existence of said contract, the Court finds that the contract claims as to the entire portfolio must also be dismissed.

---

[3] Once again, the Court notes that Core has not requested reconsideration of the Court's decision to omit the instructions or the question regarding Core's breach of contract claims or any other appropriate relief, such as through post-trial motions.

## B. Unjust Enrichment

Core's unjust enrichment claim was stayed by Magistrate Judge Love during the hearing held on May 1, 2014. Upon review of the initial briefing from the parties on Apple's original Motion to Dismiss (Dkt. No. 124) and the briefing from the parties on the current Motion post-trial, the Court concludes that Core's claim for unjust enrichment, as pled in the complaint, is preempted by the Patent Act and must be dismissed.

The Federal Circuit has made clear that, "[i]n the absence of an incremental benefit conferred [over and above the benefit the public received][4], any attempt to obtain a patent-like royalty for the making, using, or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1379, 1382 (Fed. Cir. 2005). Core pled that, "by implementing the relevant GSM and/or UMTS standards, Apple has thus has [sic] benefited from the patented contributions" and that Apple "has not paid a FRAND royalty for the benefit of using this patented technology." (Core's Answer at ¶¶ 46–47.) Thus, the benefit Apple received, as pled by Core, is the benefit of the use of the patented invention, rather than an "incremental benefit over and above the benefit the public received." *Ultra-Precision*, 411 F.3d at 1379. Further, Core requests that the relief include "disgorgement of wrongfully obtained profits and any other appropriate relief." (Core's Answer at ¶ M.)

The Court fails to see how the relief requested, as pled here, would not result in a "patent-like royalty for the making, using, or selling of a product in the public domain." *See Ultra-Precision*, 411 F.3d at 1382. Therefore, Core's claim of unjust enrichment based on the benefit Apple

---

[4] The Court notes that Core does not allege that Apple received a benefit from the use of any trade secret or confidential information.

received for the alleged use of the patented technology, as pleaded, is preempted by the Patent Act and must be dismissed.

## IV. CONCLUSION

During trial, the Court found that Core had not presented a *prima facie* case of the existence of a contract—let alone a breach of said contract—and thus, the Court chose not to present the question of whether Apple had breached this alleged contract to the jury. This same alleged contract is also the basis of Core's portfolio-wide breach of contract claims. At oral argument, Core was unable to indicate how any new evidence which it alleged might be discovered would impact the **threshold** question of whether this alleged contract between Apple and Core even existed. Further, the Court finds that Core's unjust enrichment claim is preempted by the Patent Act. For all of the reasons stated above, the Court finds that Core's contract and unjust-enrichment claims should be dismissed. Accordingly, Apple's Motion to Lift the Stay and for Dismissal and/or Summary Judgment on Core Wireless's Portfolio Contract and Unjust Enrichment Claims (Dkt. No. 440) is **GRANTED** and Core's contract and unjust enrichment claims are **DISMISSED WITH PREJUDICE.**

**So ORDERED and SIGNED this 11th day of August, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE