**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| CORE WIRELESS S.A.R.L., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 6:12-CV-100-JRG |
| APPLE INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Renewed Motion for Judgment as a Matter of Law as to Non-Infringement and Motion for New Trial (Dkt. No. 443 ("JMOL Mot.")) and Motion for New Trial on Non-Infringement (Dkt. No. 444 ("New Trial Mot.")) filed by Plaintiff Core Wireless S.A.R.L. ("Core").  For the reasons set forth below, the Court finds that Core's Motion should be **DENIED**.

## I.    BACKGROUND

The Court held a jury trial in this case and the jury returned a unanimous verdict on March 9, 2015, that Apple had not infringed U.S. Patent No. 6,978,143 (the "'143 Patent"), U.S. Patent No. 7,599,664 (the "'664 Patent"), U.S. Patent No. 7,383,022 (the "'022 Patent"), U.S. Patent No. 6,266,321 (the "'321 Patent"); and U.S. Patent No. 7,804,850 (the "'850 Patent"). Due to an agreement between the parties, the jury did not reach the question of validity of the patents. (Dkt. No. 399 ("Verdict").)  Core asserts that, in the approximately 29 hours of testimony and evidence presented at trial, the jury did not have sufficient evidence for its findings.

1

## II.    APPLICABLE LAW

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict, and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden* 393 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home*

2

*Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## III.    ANALYSIS

To prove infringement under 35 U.S.C. § 271, a plaintiff must show the presence of every element, or its equivalent, in the accused product or service. *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).  First, the claim must be construed to determine its scope and meaning; and second, the construed claim must be compared to the accused device or service. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

### A.    Noninfringement of the '143 Patent

Core argues that no jury could have found that Apple did not infringe the asserted claims of the '143 Patent.  (JMOL Mot. at 4.)  More specifically, Core argues that all of Apple's

noninfringement arguments boil down to whether or not the accused products perform "channel selection." *See* (*id.*)   Core alleges that Apple, in making its noninfringement arguments, improperly imported a limitation that did not appear in the claims or in the Court's Claim Construction Order. *See* (*id.*)  For example, Core argues that Apple's expert, Dr. Stark, "testified that the accused products fail to meet the 'means for sending' and 'means for comparing' limitations because the accused products do not perform 'channel selection.'" (*Id.* at 7.)  Core alleges that such an argument "fails as a matter of law because the step of or means for performing 'channel selection' is not a limitation of the asserted claims." (*Id.*)

Apple responds by arguing that the limitations of "means for sending" and "means for comparing" are means-plus-function limitations that require a particular structure. *See* (Dkt. No. 449 ("JMOL Resp."), at 9–10.)  In particular, Apple argues that the structure for the limitation was construed as including a "control unit" and that the Court's construction requires that "channel selection is advantageously performed in the control unit." (Dkt. No. 460 ("JMOL Sur-Repl."), at 2.)  Apple points out that the addition of the lines requiring such performance in the control unit was originally proposed by Core. *See* (JMOL Resp. at 9 n.4.)  Apple further asserts that because the control unit must advantageously perform the channel selection, a device which is incapable of channel selection cannot infringe. *See* (*id.* at 10.)  Testimony from Dr. Stark and Qualcomm's engineer, Mr. Kanamarlapudi, confirmed that the "baseband chips are incapable of making the required decision whether to use a common or dedicated uplink channel." *See* (3/12/2015 P.M. Tr. (Stark), Dkt. No. 425, at 58:14–59:8; 3/10/2015 P.M. (Sealed) Tr. (Kanamarlapudi), Dkt. No. 431, at 9:19–10:18.)  For example, Mr. Kanamarlapudi testified as follows:

> QUESTION: Can a mobile station switch between dedicated and common channels without a command from the network?

ANSWER: No.

QUESTION: How does the network decide what kind of channel the mobile should use?

ANSWER: It's up to the network's configuration management business.

QUESTION: Is that decided by the mobile in any way?

ANSWER: No.

QUESTION: Does the mobile have any control over what kind of channel it's going to use?

ANSWER: No.

(3/10/2015 P.M. (Sealed) Tr. (Kanamarlapudi), Dkt. No. 431, at 10:5–18.)  Finally, Apple also argues that "Apple's accused products do not perform the ***claimed function*** required by the 'means for comparing' limitation because the accused act of sending of the Event 4a measurement report is not a 'comparing . . . for basis of said channel selection.'"  (JMOL Resp. at 12 (emphasis in original).)

Apple is correct.  The claim construction requires that the structure of the "control unit" is such that "channel selection is advantageously performed in the control unit."   This means that the "control unit" must have the capability to perform "channel selection," even if that capability was not used during the actual alleged performance of the claimed method.  *See* (Dkt. No. 263 ("Claim Construction Order"), at 7–12.)  The jury was properly instructed on the law, was free to judge the credibility of witnesses, and weigh all competing evidence.   After consideration of the evidence presented at trial, including evidence that the accused products could not perform channel selection, the jury found that Apple had not infringed the patents-in-suit. *See, e.g.*, (2/17/2015 A.M. Trial Tr. (Jones), Dkt. No. 513, at 37:20–38:18.)  The Court will not supplant the judgment of the jury.  The jury acting under a preponderance of the evidence standard as to this disputed factual issue unanimously reached a reasoned and supportable

decision. The Court does not find that no reasonable jury could have found that Apple had not infringed the '143 Patent, and thus must deny the motion for judgment as a matter of law on this issue.  Consequently, Core's motion for judgment as a matter of law or, alternatively, a new trial as to the '143 Patent is denied.

### B.        Noninfringement of the '022 Patent and '664 Patent

In regard to the '022 and '664 Patents, Core argues that "Apple advanced two non-infringement theories at trial: (1) that the accused products do not infringe because there is no evidence that 'an indication of signal quality' is sent from the network to the accused devices; and (2) that the claims preclude use of an 'infinite impulse response' filter."  (JMOL Mot. at 15.) Core further argues that both of these theories fail as a matter of law.  (*Id.*)  As to the first argument, Core argues that "the accused products only need to be capable of receiving an indication of signal quality" and that "[t]here is no dispute that the source code shows that the accused products are enabled to do so" through the BEP_PERIOD2 parameter.  (*Id.* at 15–16.) In regard to Apple's second argument, Core argues that "[t]he asserted claims do not require a special kind of filter," but rather "could be of any type — finite impulse response, infinite impulse response, running average, recursive or some other type — as long as the filter length is finite."  (*Id.* at 18.)  Core further argues that the Apple's expert, Dr. Stark, "admitted on cross-examination that the 'infinite impulse response filter' in the asserted products is effectively finite."  (*Id.* at 19.)

Apple responds by arguing that two types of filters are used in wireless communication devices: "(1) ***finite length filters*** (also called finite impulse response filters), which only apply the filter to the dataset up to the length of the filter, while ignoring any data after the filter length; and (2) ***infinite length filters*** (also called 'recursive' and 'infinite impulse response filters' or

IIRs), which apply the filter to the entire dataset, regardless of the amount of data." (JMOL Resp. at 15 (emphasis in original).) Apple argues that Dr. Stark testified that a "person of ordinary skill in the art would understand the plain and ordinary meaning of the phrase a 'filter having a finite filter length' to require a *finite length filter*." (*Id.* (emphasis in original).) Apple argues that the UMTS standard "mandates the use of an *infinite length filter*" and that Core's expert, Dr. Olivier, "admitted that this filter is 'mathematically' infinite." (*Id.* at 16 (emphasis in original).) Further, Apple argues that Dr. Stark testified that the types of filters used in the accused products mean that the accused products do not infringe on the asserted claims:

> Q. Let's go to Claim 7 of the '022 patent, please. For the parts of Claim 7 that recite a finite filter length, do you have an opinion as to infringement?
>
> A. Yes.
>
> Q. What is it?
>
> A. There is no infringement because the filter that's being implemented is not a finite length filter.
>
> Q. And what type of filter is actually used?
>
> A. A recursive or infinite length filter.

(3/12/2015 P.M. Tr. (Stark), Dkt. No. 425, at 156:10–18.)

With regard to the BEP_PERIOD2 parameter, Apple argues that "BEP_PERIOD2 cannot satisfy the requirement for an 'indication of signal quality experienced by the mobile'—because . . . the UMTS standard *does not* specify how BEP_PERIOD2 is created, and the standard affirmatively provides that the BEP_PERIOD2 parameter can be used 'for a variety of reasons' having nothing to do with signal quality." (JMOL Resp. at 21 (emphasis in original).) Apple also argues that Dr. Olivier agreed with Dr. Stark "that the trial record was devoid of evidence showing a single instance in which a single network operator in the United States has ever transmitted BEP_PERIOD2 for any reason, including as an indication of signal quality."

(*Id.*)

The jury agreed with Apple on this issue.  After consideration of the evidence presented, including evidence from Dr. Clark that an infinite length filter did not meet the requirement of a "filter having a finite length," the jury found that Apple had not infringed the patents-in-suit.  *See* (3/12/2015 P.M. Tr. (Stark), Dkt. No. 425, at 156:10–18.)  The jury reached a reasoned and supportable decision, and the Court does not find that no reasonable jury could have found that Apple had not infringed the '022 and '664 Patents.  Thus, Core's motion for judgment as a matter of law or, alternatively, a new trial as to the '022 and '664 Patents is denied.

### C.    Noninfringement of the '321 Patent

Core requests a new trial regarding infringement of the '321 Patent because of alleged attorney misconduct by Apple's attorneys.  (New Trial Mot. at 3–4.)  Core alleges that Apple improperly "display[ed] a paragraph from Dr. Stark's expert report that had not been introduced into evidence during trial" that "create[d] at least confusion in the jury and at worst . . . misle[]d the jury into believing that Dr. Stark should be credited with an opinion that he did not offer.  (*Id.* at 4 (emphasis removed).)  Core further argues that Dr. Stark "admitted he had 'no opinion' as to whether or not the accused Apple products made telephone calls in the R99 mode by transmitting exactly two channels simultaneously."  (*Id.*)

Apple responds by first arguing that Core's objections are waived because Core "did not object to Apple's use of Dr. Stark's report (or to Dr. Stark's prior testimony about it) during closing arguments" and did not "object or seek a curative instruction at any other time, including during the nearly six hours of jury deliberations."  (Dkt. No. 448 ("New Trial Resp."), at 5.)  Apple also argues that is "no legitimate basis for the Court to sustain [the objection, even if timely]" because "Dr. Stark was shown and testified about [the allegedly improper] portion of

his report—without objection from Core Wireless—to confirm that he had offered an opinion that Mr. Chandler[, Core's expert,] had no proof that Apple's accused products ever operated in a two-channel R99 voice mode." (*Id.* at 6 (emphasis removed).)   Apple argues that, during closing, it "merely showed the jury the exact same portion of Dr. Stark's report and Dr. Stark's verbatim testimony about it." (*Id.* (emphasis removed).)   Apple also argues that Core's own expert "conceded that: (1) the accused Apple products transmit data on more than two channels; [and] (2) the applicants for the '321 [P]atent told the Patent Office during prosecution that it was impossible to use their two-channel invention in a more-than-two-channel system." (*Id.* at 9 (citations and emphasis removed).)   Apple further argues that "(3) the UMTS standard uses procedures for voice calls (i.e., HSPA) and PRACH transmissions (i.e., Enhanced-RACH) that do not simultaneously transmit on exactly two channels, and Mr. Chandler was unaware of any evidence showing that the accused Apple products ever operate in the older R99 (or PRACH) modes accused of infringing the '321 patent." (*Id.* (citations removed).)

As an initial matter, the Court does not find that Apple's use of Dr. Stark's report in closing was improper.  Dr. Stark had previously testified regarding the same portion of his report during redirect.  *See* (3/13/2015 A.M. Tr. (Stark), Dkt. No. 426, at 132:25–14.)  The excerpt was shown as part of a demonstrative in closing, and the jury was properly instructed by the Court that demonstratives are not evidence.  The jury heard all of this evidence and agreed with Dr. Stark's opinion that Dr. Chandler had no proof that Apple's accused products met the "two-channel" limitation.  The Court does not find that no reasonable jury could have found that Apple had not infringed the '321 Patent.  Consequently, the Court will not substitute its judgment for that of the jury  The Court does not find that new trial is warranted based on these arguments and as to this patent and denies Core's request for a new trial.

### D.       Noninfringement of the '850 Patent

Core argues that a new trial should be granted as to infringement of the '850 Patent because "Core Wireless presented unrebutted evidence that the accused products infringe when uplink discontinuous reception (UL DRX) is configured and after an inactivity threshold has expired (what Core Wireless referred to as the discontinuous mode)."  (New Trial Mot. at 27.) Core further argues that "Apple studiously ignored the infringing discontinuous mode and instead argued only that the accused devices may be capable of a different, non-accused mode of operation—the continuous mode."  (*Id.*)  Specifically, Core argues "that [Apple's] accused products had a timer called MAC Inactivity Threshold, and that the accused products transmitted data packets in at least two ways: one before the timer MAC Inactivity Threshold expires, and the other after the timer MAC Inactivity Threshold expires."  (*Id.* at 28–29 (emphasis in original).)  Core argues that the "transmissions that happen *after* the MAC Inactivity Threshold expires (in the discontinuous mode) involve the virtual transmission time interval, and are covered by the claims" and that "Core Wireless did *not* accuse the continuous mode . . . of infringement."  (*Id.* at 29 (emphasis in original).)

Apple responds that "Uplink DRX does not operate in different continuous and discontinuous modes."  (New Trial Resp. at 16.)  Apple further argues that "the suggestion that there are two separate modes is directly contradicted by the accused standard, which states that the Uplink DRX feature is always enabled, upon configuration."  (*Id.* (quotations omitted).) Instead, Apple argues that Core's expert, Mr. Chandler, inconsistently admitted that "transmissions can and do occur at intervals shorter than MAC DTX Cycle," even though he had previously asserted that "MAC DTX Cycle is a minimum time interval between subsequent new transmissions."  (*Id.* at 17 (emphasis removed).)  As a result, Apple argues that Core was "forced

to fall back to the position that the MAC_DTX_Cycle is a minimum some of the time." (*Id.* (emphasis removed).)  Apple also argues that "the jury was free to disbelieve Mr. Chandler's testimony based on his inconsistent statements." (*Id.* at 18.)

Indeed, as in any jury trial, the jury was free to take Apple's expert at his word and reject Core's expert's testimony. Further, the jury was presented with competing testimony regarding the existence or non-existence of the distinction between continuous and non-continuous mode and determined that the accused products did not infringe the '850 Patent.  *Compare* (3/13/2015 P.M. Tr. (Knightly), Dkt. No. 427, at 38:2–12) *with* (3/10/2015 P.M. Tr. (Chandler), Dkt. No. 421, at 111:24–112:23.)  The Court fails to find that no reasonable jury could have found that Apple had not infringed the '850 Patent.  The jury's verdict should not be disturbed and no new trial is warranted.  Core's request for new trial is denied.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that the jury's verdict of noninfringement should stand.  The jury's verdict is supported by adequate evidence presented at trial, and it should not be disturbed.  Accordingly, Core's Renewed Motion for Judgment as a Matter of Law as to Non-Infringement and Motion for New Trial (Dkt. No. 443), and Core's Motion for New Trial on Non-Infringement (Dkt. No. 444) should be and they are hereby **DENIED**.

**So ORDERED and SIGNED this 3rd day of November, 2015.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE